**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**AEDES DE VENUSTAS, INC.,**

        **Plaintiff,**

                                   ____ Civ. _____ (___)

**vs.**

**VENUSTAS INTERNATIONAL, LLC,**

        **Defendant.**

 

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

 

**LAW OFFICES OF JOSEPH M. HEPPT**
**521 Fifth Avenue, Suite 1805**
**New York, NY 10175**
**(212) 973-0839**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... 3

Preliminary Statement........................................................................................ 5

Statement of Facts.............................................................................................. 5

Argument ........................................................................................................... 8

    I.    Once a Plaintiff in a Trademark Case Shows Mark Ownership and Likelihood of Confusion, Irreparable Harm and Likelihood of Success Are Presumed ....................... 8

        1.    Plaintiff Owns Valid Trademark Rights in the AEDES DE VENUSTAS Mark 9

        2.    Defendant's VENUSTAS INTERNATIONAL, LLC Name is Confusingly Similar to Plaintiff's AEDES DE VENUSTAS Mark .............................................. 10

    II.    The Balance of Hardships Favors Plaintiff ....................................... 14

        1.    Without an injunction, Plaintiff will continue to suffer irreparable harm ........ 14

        2.    Enjoining Defendant from infringing Plaintiff's rights would not constitute an unfair hardship to Defendant ................................................................................. 14

        3.    The balance of hardships tips strongly in favor of Plaintiff............................. 15

Conclusion ...................................................................................................... 16

# **TABLE OF AUTHORITIES**

## Cases

*A Bourjois & Co v. Katzel*, S.D.N.Y.1920, 274 F. 856, reversed 275 F. 539, *certiorari granted* 42 S.Ct. 92, 257 U.S. 630, 66 L.Ed. 406, *reversed* 43 S.Ct. 244, 260 U.S. 689, 67 L.Ed. 464 .......................................................................................................... 8

*Aladdin Industries, Inc. v. Alladin Lamp & Shade Corp.*, 556 F.2d 1263, 195 U.S.P.Q. 401 (5th Cir. 1977) ........................................................................................... 15

*Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d. Cir. 1995) .................. 9

*Continental Connector Corp. v. Continental Specialties Corp.*, 492 F. Supp. 1088, 207 U.S.P.Q. 60 (D.C.Conn.1979) ......................................................................... 8

*Dallas Cowboys Cheerleaders Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-207 (2d. Cir. 1979) ................................................................................................ 7, 12

*Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 213 U.S.P.Q. 872 (S.D.N.Y.1981) ................................................................................................. 7

*Fancee Free Mfg. Co. v. Fancy Free Fashions*, 148 F. Supp. 825, 112 U.S.P.Q. 359 (S.D.N.Y.1957) ................................................................................................. 8

*John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 219 U.S.P.Q. 515 (11th Cir.1983) ........................................................................................................ 14

*Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d. Cir. 1986).... 11

*Lon Tai Shing Co, v. Koch & Lowy*, 19 U.S.P.Q.2d 1081 (S.D.N.Y1990) ....................... 9

*Miles Shoes Inc. v. R. H. Macy & Co*., 199 F.2d 602, 603 (2d. Cir. 1952), *cert. denied*, 345, U.S. 909 (1953) ...................................................................................... 11

*New Kayak Pool Corp. v. R&P Pools, Inc*., 246 F.3d 183, 185 (2d Cir. 2001) .............. 12

*Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd.*, 409 F. Supp.2d 264, 265 (S.D.N.Y. 2005) ............................................................................................ 8, 12

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*, 290 F.3d 578, 596 (3d Cir. 2002) ............................................................... 14

*Patsy's Brand Inc. v. I.O.B.  Realty, Inc.*, 317 F.3d 209 (2d. Cir. 2003) ........................... 9

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d. Cir. 1961), *cert. denied*, 368, U.S. 820 (1961) ...................................................................................... 9

*Siegerist v. Blaw-Knox Co.*, 414 F.2d 375, 163 U.S.P.Q. 74 (8th Cir. 1969)................... 15

*Virgin Enterprises Ltd. v. Nawan*, 335 F.3d 141, 145 (2d. Cir. 2003) ............................. 7

*Warner Brothers Inc. v. Gay Toys Inc.*, 658 F.2d at 78 (2d. Cir. 1981) ........................... 7

**Statutes**

United States Trademark Act, 15 U.S.C. § 1114 ............................................................... 5

United States Trademark Act, 15 U.S.C. § 1125(a).......................................................... 5

United States Trademark Act, 15 U.S.C. § 1125(c).......................................................... 5

## Preliminary Statement

This is an action for infringement of a federally registered trademark in violation of Section 32 of the United States Trademark Act, 15 U.S.C. § 1114; for use of false designations of origin and false representations, and unfair competition in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a); for federal dilution in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(c); and for related claims for common law trademark infringement and unfair competition, injury to business reputation and dilution, and deceptive trade practices under New York law.

As demonstrated below and in the accompanying Declaration of Robert Gerstner, sworn to on May 18, 2007 (the "Gerstner Declaration"), the Defendant has been capitalizing on the good will and business reputation that the Plaintiff has built up over the years in the beauty industry by infringing upon Plaintiff's registered trademark AEDES DE VENUSTAS in order to gain access to customers in the beauty field. The Plaintiff has no adequate remedy at law and is entitled to injunctive relief.

## Statement of Facts

Aedes De Venustas, Inc. was formed in 1994 and began doing business as a specialty retailer of fragrances, bath and body products, and scented candles under the name Aedes De Venustas. Over the years, Aedes De Venustas, Inc. has diligently developed its business and name recognition both nationally and internationally.

In recognition of its exclusive and extremely valuable rights and goodwill in the AEDES DE VENUSTAS name and mark, the AEDES DE VENUSTAS mark has been registered in the United States Patent and Trademark Office for a wide variety of fragrance, bath and body products. Plaintiff owns U.S. Registration No. 3,082,887, issued April 18, 2006 and 3,076,652, issued April 4, 2006, for the mark AEDES DE VENUSTAS for "Retail store services, catalog and on-line retail services in the fields of

fragranced products, bath products, cosmetics, skin care products, and scented candles." This registration is valid and subsisting, and in full force and effect. Plaintiff is the owner of this registration and the trademark shown therein and all of the business and goodwill connected therewith and symbolized thereby. A true and correct copy of this registration is attached to the Gerstner Declaration as Exhibit A.

    <u>Plaintiff's Ownership and Exploitation of its Trademark</u>

    Since January 1995, Plaintiff has spent in excess of $440,000 developing and promoting the trade name Aedes De Venustas through consumer marketing, industry activities and its internet website. As a result of its efforts, Plaintiff's revenues derived from its trade name have increased steadily over the years to over $1.4 million in 2006. Over the years, Aedes De Venustas has been mentioned in countless newspaper and magazine articles both in the United States and internationally. A representative sample of the press clippings is attached to the Gerstner Declaration as Exhibit B. In recognition of Plaintiff's efforts to develop and promote its mark, in 2002 it received an award from the Fashion Group International. Plaintiff's President, Karl Bradl, and Vice-President, Robert Gerstner, were named "Retail Finalist" and were awarded the "2002 Rising Star Awards." A copy of that award is attached to the Gerstner Declaration as Exhibit C.

    <u>Defendant's Infringement</u>

    On March 16, 2007, an article appeared on the front page of Women's Wear Daily. The article was titled, "New in Beauty: Ann Taylor Taps Robin Burns to Develop Collection" and goes on to describe Ann Taylor's plan to sell fragrance, bath and body products. The article quotes Kay Krill, president and chief executive officer of Ann Taylor Stores as saying, "We're entering the beauty business and have selected Robin [Burns] and her company, Venustas International, as our partner." The article describes Defendant's mission as "to design, develop and deliver private label beauty products." The article also describes Burns as saying that "specialty stores represent the fastest-growing channel for the beauty business, growing at a 9.1 percent rate from 2001 to

2006." A true and correct copy of the article is attached to the Gerstner Declaration as Exhibit D.

It was immediately clear to Plaintiff that this "new" company, Venustas International, LLC, was trying to capitalize on the name and reputation that the Plaintiff had built up over the years in the beauty industry and a specialty retailer of fragrance, bath and body products. Plaintiff naturally was concerned that people, both in the industry as well as the general public, would be confused by this new company's name. They would wrongly assume that the new company was somehow related to Aedes De Venustas.

### There Has Been Actual Confusion Regarding Plaintiff's Trademark and Defendant's Company Name

Almost immediately after the article was published, Plaintiff's employees began receiving telephone calls from people asking to speak with people at Venustas International, LLC including Sam Ghusson, the President and Chief Executive Officer. Plaintiff also received, and continues to receive, numerous telephone calls from people in the fashion and beauty field congratulating Plaintiff on or asking about our new contract with Ann Taylor. Thus, Plaintiff's fear that there would be confusion was realized.

In addition to these telephone calls, Plaintiff received in the mail two invoices from a company called LanguageWorks dated April 9, 2007 and May 3, 2007 both addressed to Venustas International, LLC at Aedes De Venustas' address on Christopher Street. A copy of those two invoices is attached to the Gerstner Declaration as Exhibit E. The invoices were returned to the sender with a notation that there is no company called Venustas International at our address.

### Plaintiff's Demand to Cease and Desist

On April 16, 2007, Plaintiff, through its attorneys, sent a letter to Defendant's 405 Lexington Avenue, New York address, demanding that it cease its infringement, unfair competition and dilution of Plaintiff's well-known AEDES DE VENUSTAS name and

mark. A true and correct copy of this letter is attached to the Gerstner Declaration at Exhibit F. Plaintiff, through its attorneys, obtained confirmation that the letter addressed to Defendant's registered business address was delivered. A true and correct copy of the signed certified mail return receipt postcard is attached to the Gerstner Declaration at Exhibit G. The postcard was signed by "Karina L. Garcia."

On May 7, 2007, Plaintiff, through its attorneys, received a letter from Defendant's counsel disputing that the Defendant is infringing on Plaintiff's trademark and refusing to desist from its activities. Based upon this response, it was apparent that there would be no possibility of a settlement and that we would need to seek the assistance of the court.

## Argument

To obtain a preliminary injunction, Plaintiff must show (a) irreparable harm and (b) either (i) likelihood of success on the merits or (ii) present sufficiently serious questions going to the merits to make them a fair ground for litigation. *Dallas Cowboys Cheerleaders Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 206-207 (2d. Cir. 1979); *see also*, *Warner Brothers Inc. v. Gay Toys Inc.*, 658 F.2d at 78 (2d. Cir. 1981); *Virgin Enterprises Ltd. v. Nawan*, 335 F.3d 141, 145 (2d. Cir. 2003). The balance of hardships must tip decidedly toward the party requesting the preliminary relief. *Dallas Cowboys Cheerleaders*, 604 F.2d at 207.

**I.    Once a Plaintiff in a Trademark Case Shows Mark Ownership and Likelihood of Confusion, Irreparable Harm and Likelihood of Success Are Presumed**

The trademark law is broadly aimed at protecting the effectiveness of marks. *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 213 U.S.P.Q. 872 (S.D.N.Y.1981). The basic purpose of this section is to protect an established trademark user from being injured by another's use of same trademark; the types of injuries involved are loss of patronage, loss of reputation, and limitation on business expansion.

*Continental Connector Corp. v. Continental Specialties Corp.*, 492 F. Supp. 1088, 207 U.S.P.Q. 60 (D.C.Conn.1979). A trade-mark has come to be recognized as a property right of immense and incalculable value, whose proprietor is entitled to the strongest protection at the hands of the proper court. *A Bourjois & Co v. Katzel*, S.D.N.Y.1920, 274 F. 856, reversed 275 F. 539, *certiorari granted* 42 S.Ct. 92, 257 U.S. 630, 66 L.Ed. 406, *reversed* 43 S.Ct. 244, 260 U.S. 689, 67 L.Ed. 464.

One essential reason for protecting a trade-name or trade-mark is to prevent confusion. *Fancee Free Mfg. Co. v. Fancy Free Fashions*, 148 F. Supp. 825, 112 U.S.P.Q. 359 (S.D.N.Y.1957). In fact, likelihood of confusion is the foundation for trademark infringement. For purposes of a preliminary injunction, once the plaintiff has shown a mark ownership and likelihood of confusion in trademark infringement cases, irreparable harm and the likelihood of success are presumed. *Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd.*, 409 F. Supp.2d 264, 265 (S.D.N.Y. 2005) (citing *New Kayak Pool Corp. v. R&P Pools, Inc.*, 246 F.3d 183, 185 (2d. Cir. 2001)). As shown below, the Plaintiff owns valid trademark rights in the AEDES DE VENUSTAS mark and there is a strong likelihood of confusion between Plaintiff's mark and the Defendant's name.

**1.      Plaintiff Owns Valid Trademark Rights in the AEDES DE VENUSTAS Mark.**

As noted above, Aedes De Venustas, Inc. was formed in 1994 and began doing business as a specialty retailer of fragrances, bath and body products, and scented candles under the name Aedes De Venustas. Over the years, Aedes De Venustas, Inc. has diligently developed its business and name recognition both nationally and internationally.

In recognition of its exclusive and extremely valuable rights and goodwill in the AEDES DE VENUSTAS name and mark, the AEDES DE VENUSTAS mark has been registered in the United States Patent and Trademark Office for a wide variety of

fragrance, bath and body products. Plaintiff owns U.S. Registration No. 3,082,887, issued April 18, 2006 and 3,076,652, issued April 4, 2006, for the mark AEDES DE VENUSTAS for "Retail store services, catalog and on-line retail services in the fields of fragranced products, bath products, cosmetics, skin care products, and scented candles." This registration is valid and subsisting, and in full force and effect. Plaintiff is the owner of this registration and the trademark shown therein and all of the business and goodwill connected therewith and symbolized thereby.

>        **2.    Defendant's VENUSTAS INTERNATIONAL, LLC Name is Confusingly Similar to Plaintiff's AEDES DE VENUSTAS Mark.**

In the Second Circuit, claims for infringement are analyzed under the eight factor test set forth *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d. Cir. 1961), *cert. denied*, 368, U.S. 820 (1961); *Patsy's Brand Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209 (2d. Cir. 2003), and countless other decisions. Those factors are: (1), the strength of the Mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the defendant's good faith in adopting its own mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers. *Polaroid Corp.*, 287 F.2d at 495. Some factors may play a more prevalent rule than the other factors depending on the particular facts of a case. *See*, *Lon Tai Shing Co, v. Koch & Lowy*, 19 U.S.P.Q.2d 1081 (S.D.N.Y1990). Applying the *Polaroid* factors to the facts of this case, reveals an overwhelming likelihood of confusion between Defendant's name, Venustas International, LLC, and Plaintiff's trademark AEDES DE VENUSTAS.

>        (a)    **Strength of Plaintiff's Mark:** In the Second Circuit, the "strength" of a mark refers to a mark's "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Patsy's Brand*, 317 F.3d at 217. (*quoting Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d. Cir. 1995)). As demonstrated above, and in the Gerstner Declaration, the

Aedes De Venustas mark is strong enough to have acquired significant distinctiveness in the marketplace. The significant distinctiveness is, after all, what drew Defendant to misappropriate and utilize it as the name of their company.

(b)    **Similarity of the Marks:** This factor addresses whether the similarity of the marks is likely to cause confusion.  Plaintiff's mark is AEDES DE VENUSTAS and Defendant's name is VENUSTAS INTERNATIONAL LLC. As noted above, and in the Gerstner declaration, Defendant's use of the word Venustas in its name is likely to cause confusion with Plaintiff's trademark in the beauty industry. Although the word Venustas is the Latin term for beauty, it is not a word generally heard in common usage.  In fact, other than Plaintiff's trademark, the word appears very infrequently.  Furthermore, as described above and in the Gerstner Declaration, the similarity between the Defendant's name and the Plaintiff's trademark has caused several instances of actual confusion.

(c)    **Proximity of the Products:** Both the Plaintiff and the Defendant conduct business in the beauty industry.  The Women's Wear Daily article discussed above, indicates that the Defendant is engaged in providing consulting services for companies that wish to open specialty retail operations offering fragrance, bath and body products. As demonstrated in the Gerstner Declaration, the Plaintiff has long been involved in business as a specialty retailer offering fragrance, bath and body products. Furthermore, as the Gerstner Declaration indicates, the Plaintiff has present plans to begin offering consulting services to other companies wishing to offer of their own private label fragrance products.  This factor clearly favors the Plaintiff as the products and services offered by the Plaintiff and the Defendant are virtually identical.

(d)    **Likelihood that the Prior Owner Will Bridge the Gap:** As noted above, and in the Gerstner Declaration, the Plaintiff has present plans to begin offering consulting services to other companies, including the design, development and delivery

-11-

of fragrance products. Thus, there is a very strong likelihood that the Plaintiff will bridge the gap and this factor clearly favors the Plaintiff.

(e)     **Actual Confusion:** Evidence of actual confusion is not necessary to find likelihood of confusion in part because such evidence is so difficult to find. *See, Miles Shoes Inc. v. R. H. Macy & Co.*, 199 F.2d 602, 603 (2d. Cir. 1952), *cert. denied*, 345, U.S. 909 (1953); *see also, Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d. Cir. 1986).  However, as described above and in the Gerstner Declaration, Plaintiff has evidence of confusion in that several members of the beauty industry apparently were confused into believing that the Defendant was somehow related to the Plaintiff and telephoned the Plaintiff to (a) ask to speak to the Defendant's president and chief executive officer, Sam Ghusson, and (b) offer their congratulations to the Plaintiff on the new contract with Ann Taylor. As further described above, and in the Gerstner Declaration, two separate invoices were mailed to the Defendant at Plaintiff's address. *See* Gerstner Declaration, ¶ 11 and the exhibits attached thereto.  It is difficult to imagine clearer evidence of actual confusion.  Thus, this factor weighs decidedly in Plaintiff's favor.

(f)     **Defendant's Good Faith in Adopting its Own Mark:** There is only evidence of Defendant's bad faith.  In the Women's Wear Daily article, it is noted that Defendant's employee, Robin Burns, has been engaged in the beauty industry for over 25 years.  As a result of this experience, she most certainly was aware of the Plaintiff's trademark AEDES DE VENUSTAS. In fact, as noted in the Gerstner Declaration, Plaintiff was recognized as a "rising star" in the retail industry in 2002. Under the circumstances, and the fact that Defendant was expressly aware of the importance of specialty retailing in the industry, it is no coincidence that the Defendant chose the name Venustas International LLC.  Clearly it was a bad faith attempt by the Defendant to capitalize on the goodwill and reputation that the Plaintiff had built up in its trademark.

-12-

As the Second Circuit has stated, when "the evidence shows that another's name was adopted deliberately with a view to obtain some advantage from the goodwill, good name and the trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopters has indicated that he expects confusion and resultant profit." *Dallas Cowboys Cheerleaders*, 467 F. Supp. at 374-375, *aff'd*, 604 F.2d 200 (2d Cir. 1979) (*citing Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 158 (9th Cir.), *cert. denied*, 374 U.S. 830 (1963)).  This factor clearly favors Plaintiff.

(g)    **Quality of Defendant's Product:** This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality. In light of the fact that the Defendant is relatively new and the quality of its service is not yet known, it is respectfully submitted that this factor is not pertinent to the present motion.

(h)    **Sophistication of the Buyers:** In general, consumers in the beauty and fragrance industry are sophisticated.  However, given the evidence of actual confusion already provided by the Plaintiff, there is a strong likelihood that even these sophisticated consumers will continue to be confused by the similarity between Defendant's name and Plaintiff's mark.

An assessment of the above identified factors results in a finding that most if not all weigh heavily in Plaintiff's favor. The only reasonable conclusion that may be reached from the above analysis is that the Defendant has infringed Plaintiff's AEDES DE VENUSTAS mark. As noted earlier, once Plaintiff has shown a likelihood of confusion, irreparable harm and likelihood of success are presumed. *Novartis Animal Health US, Inc.*, 409 F. Supp.2d at 266 (*citing New Kayak Pool Corp. v. R&P Pools, Inc*., 246 F.3d 183, 185 (2d Cir. 2001)).

## II.    The Balance of Hardships Favors Plaintiff

Plaintiff has demonstrated a likelihood of confusion, and both irreparable harm and likelihood of success on the merits is presumed. Similarly, Plaintiff can show that the balance of hardships strongly tips in Plaintiff's favor because denying a preliminary injunction would be much more harmful to Plaintiff and granting one would be to Defendant.

### 1.    Without an injunction, Plaintiff will continue to suffer irreparable harm.

In this case, further harm to the AEDES DE VENUSTAS mark and Plaintiff's business reputation is certain to occur if the preliminary injunction is denied. Consumers in the beauty industry who encounter the Defendant are likely to believe, mistakenly, that Plaintiff has sponsored, authorized, endorsed or is otherwise affiliated with Defendant, which in turn, will likely cause irreparable harm to Plaintiff's goodwill and reputation in the beauty industry. Further, even knowledgeable consumers who encounter the Defendant might believe, mistakenly, that Plaintiff has sponsored, authorized, endorsed or is otherwise affiliated with Defendant. Quite simply, to deny Plaintiff relief would be effectively to enable Defendant to reap where it has not sown.

### 2.    Enjoining Defendant from infringing Plaintiff's rights would not constitute an unfair hardship to Defendant.

While Plaintiff is being irreparably harmed, Defendant is reaping profits from its misappropriation of the goodwill in the AEDES DE VENUSTAS mark. By selecting Plaintiff's mark with full prior knowledge, and refusing to cease exploitation after receiving notice of Plaintiffs ongoing trademark rights, Defendant and has forcibly wrested control of the AEDES DE VENUSTAS mark away from Plaintiff and has placed Plaintiff's reputation at the mercy of Defendant's choosing.

If this court enjoins Defendant from further exploitation of the mark, the only possible hardship to Defendant would be monetary in nature. Furthermore, it is well

worth noting that the Defendant was formed less than one year ago and, as the Women's Wear Daily article notes, the Defendant has but two clients: Ann Taylor and an undisclosed retail client.  To the extent this minimal potential harm to Defendant is recognized at all, it should be "discounted by the fact that the Defendant brought that injury upon itself" *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*, 290 F.3d 578, 596 (3d Cir. 2002) (affirming grant a preliminary injunction for false advertising).

> **3.    The balance of hardships tips strongly in favor of Plaintiff.**

If the preliminary injunction is denied, Plaintiff's business reputation will continue to be in the hands of Defendant, and the good will continue to be built up by the Plaintiff in the AEDES DE VENUSTAS mark will continue to be destroyed.  On the other hand, if the preliminary injunction is granted, Defendant's wrongful misappropriation of Plaintiff's intellectual property rights will rightfully come to an end.  This balancing of each party's hardships demonstrates the imminent need for preliminary injunction.

Although bank check manufacturer's mark was not particularly strong, evidence, which indicated that products, retail outlets and advertising media used by the parties all were exactly the same, and which included at least some evidence that competitor intended to adopt similar mark to benefit from check manufacturer's established reputation, was sufficient to support jury's finding of likelihood of confusion between manufacturer's registered "Memory Stub" trademark for its desk-style checkbook stub and competitor's use of "Entry Stub" mark. *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 219 U.S.P.Q. 515 (11th Cir.1983). Even though Defendant and Plaintiff's products might not compete directly, evidence that the marketing practices and advertising materials of both were sufficiently similar that a potential customer would likely conclude that both products issued from same source was the sort of harmful confusion against which trademark law protected. *Aladdin Industries, Inc. v. Alladin*

*Lamp & Shade Corp.*, 556 F.2d 1263, 195 U.S.P.Q. 401 (5th Cir. 1977). Confusion of customers as to relationship of Defendants with former company because of defendants' use of trademark which was part of name of former company was sufficient to support finding that trademark had been infringed. *Siegerist v. Blaw-Knox Co.*, 414 F.2d 375, 163 U.S.P.Q. 74 (8th Cir. 1969).

## <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff's motion for preliminary injunction should be granted in its entirety and this Court should grant such other and further relief that this Court may deem just and proper.

Dated:     New York, New York
           May 29, 2007

                                 Respectfully submitted,


                                 _____/s_____
                                 Joseph M. Heppt, Esq. (JH-4974)
                                 THE LAW OFFICES OF
                                 JOSEPH M. HEPPT
                                 521 Fifth Avenue, Suite 1805
                                 New York, NY 10175
                                 (212) 973-0839

                                 *Attorney for Plaintiff*