Robert G. Shepherd, Esq. (RGS-5946)
MATHEWS, SHEPHERD, McKAY & BRUNEAU, P.A.
29 Thanet Road, Suite 201
Princeton, NJ 08540
Tel: (609) 924-8555

Of Counsel:
Philip Colicchio, Esq.
Taylor, Colicchio & Silverman, LLP
502 Carnegie Center, Suite 103
Princeton, NJ 08540
Tel: (609) 987-0022
Attorneys for Defendant

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AEDES DE VENUSTAS, INC., | : | |
| Plaintiff, | : | Civil Action No.: 1:07-04530 (LTS) |
| v. | : | |
| VENUSTAS INTERNATIONAL, LLC, | : | **Document Electronically Filed** |
| | | Honorable Laura Taylor Swain |
| | | Honorable Theodore Katz |
| Defendant. | : | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S CONSOLIDATED MOTION FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS

Page(s)

Table of Cases i

I. INTRODUCTION 1

II. STATEMENT OF FACTS 2

III. LEGAL ARGUMENT 8

IV. CONCLUSION 20

Table of Cases Cited

                                                                Page(s)

*Columbia University v. Columbia/HCA Healthcare Corp.,*
964 F.Sup. 733; 43 U.S.P.Q. 2d 1083 (S.D.N.Y. 1997)              13

*Dawn Donut Co. v. Harts Food Stores, Inc.*
267 F.2d 358, 121 U.S.P.Q. 430( 2d Cir. 1959)                   10

*Dreyfus Fund, Inc. V. Royal Bank of Canada,*
525 F.Supp 1108 (S.D.N.Y., 1981)                                14

*E.S. Originals, Inc. v. Stride Rite Corp.,*
 656 F.Supp 484, 490 (S.D.N.Y. 1987)                            18

*Gucci America, Inc. v. Duty Free Apparel, Ltd.,*
286 F.Sup.2d 284 at 290 (S.D.N.Y. 2003).                         9

*Lang v. Retirement Living Publishing Co., Inc.,*
21 U.S.P.Q. 2d 1041 at 1045. (2 Cir. 1991)                      16,17

*McGregor-Doniger, Inc., v. Drizzle, Inc.,*
599 F.2d 1126 (2d Cir. 1979)                                    16

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,*
486 F.Sup. 414, 206 U.S.P.Q. 70 SDNY 1980                       12

*Polaroid Corp. v. Polaroid Electronics Corp.,*
287 F.2d 492, 128 U.S.P.Q. 411 (2d. Cir. 1961)                   9

## I.  **INTRODUCTION**

Early this spring, plaintiff, owner of the fragrance boutique "Aedes de Venustas," experienced the exuberance of the fans of Robin Burns-McNeill and then jumped to the conclusion that defendant's use of the trade name Venustas International, LLC will infringe upon plaintiff's trademark rights in the trademark Aedes de Venustas. Essentially, what plaintiff is attempting to do here is claim for itself exclusive rights to use of the term "Venustas", the Latin term for the word "beauty", in the category of goods and services identified by plaintiff and defendant as the "beauty" category. Clearly, as explained below, the plaintiff has no right to do so. The mark Aedes de Venustas (temple of beauty) is not entitled to a broad scope of protection and is easily distinguished from defendant's trade name Venustas International, LLC. While the goods and services offered by the parties fall in the "beauty" category, they are sold in different channels of trade to entirely different purchasing populations. Furthermore, defendant's trade name never appears on any goods.

It is also unlikely that plaintiff will "bridge the gap" into defendant's field. The services offered by defendants, developing "turn key" beauty departments for high volume fashion retailers like Ann Taylor requires a much different business background and a much larger staff than the staff of three, including the two owners, employed by plaintiffs. Plaintiff has attempted to distract the Court from focusing on these differences by claiming that the well wishers that called the Aedes de Venustas store after the story of Robin Burns being chosen by Ann Taylor to develop its beauty business ran in <u>Women's Wear Daily</u>, barely mentioning Venustas International, were instances of actual confusion. However, under both case law and common

sense they were not anything more than well wishers with no access to the phone number of Venustas International LLC and no commercial interest in Aedes De Venustas.

Plaintiff also asserts that the defendant's trade name was chosen in bad faith but it has no support for this assertion other than their steadfast belief that the defendants had to know of Aedes de Venustas before the principals of the defendant chose the name Venustas International. Yet plaintiff's principals have admitted that they did not know of Robin Burns or Sam Ghusson despite the fact that Robin has won more than 10 Fifi awards, an award plaintiff described as "the equivalent of Oscars in the beauty field." (Gerstner Transcript P 65, L 21-22), and an award for which plaintiff was once nominated and herald's as an important event.

Finally, contrary to plaintiff's assertions, defendant's products, being produced by two people with a track record of successful products like Obsession and Eternity, will be producing a quality product marked only with its client's third party trademark to a purchasing population described by both plaintiff and defendant as "sophisticated".  Accordingly, plaintiff's request for an injunction restraining defendants from any further use of their trade name, nor placed on any products, should be denied.

## II. STATEMENT OF FACTS

This dispute began when an article ran on the front page of the Women's Wear Daily newspaper heralding the beginning of a relationship between Robin Burns-McNeill and the Ann Taylor Company. Ms. Burns-McNeill,  and her partner, Sam Ghusson,  both well known executives in the beauty industry had started a contract manufacturing business for existing specialty vertical retailers primarily in the fashion business with revenues of one billion dollars per year or more who were interested in expanding into the beauty industry.  The article mentioned that the company started by Ms. Burns-McNeill and Mr. Ghusson was called

2

Venustas International, LLC.  As a result of this article, plaintiff Aedes De Venustas, a retailer in the fragrance business, received a number of calls from people wishing to speak to Mr. Ghusson or Ms. Burns-McNeill, or ask about their relationship with Ann Taylor.  From this, the plaintiffs concluded that there would be a likelihood of confusion between plaintiff's mark, "AEDES DE VENUSTAS," and defendant's trade name, "VENUSTAS INTERNATIONAL, LLC."  They also concluded that they had used their trade name to gain entre to the executives in the companies with which they wished to do business.  This could not have been further from the truth.

Aedes De Venustas is a fragrance retailer with one store located at 9 Christopher Street in New York City.  The business has 3 employees including the two owners.  The business is comprised of retail sales from their store, online store sales and consulting services comprised of scenting corporate events, including fashion shows, corporate gifting.  It also consults with one company to developed a fragrance, and assisted another start up in developing its beauty product line. None of these consulting services, however, are advertised by anything other than word of mouth.

Plaintiff's website and selling accessories such as its signature gift box and shopping bag emphasize the word "AEDES" in the mark by including it in large letters over the company logo. In addition, the domain name used by the company is Aedes.com; the gift card distributed by the company is referred to as the "Aedes Gift Card," and the magazine and newsletter distributed by the company are referred to as the "Aedes Magazine" and "Aedes Perfume News."  Throughout the website, plaintiff also refers to itself as Aedes, and in several articles included in the "press" section of the website, the company is referred to by the writer as "Aedes."

3

Plaintiff defines itself as a specialty retailer, but defines that term in a way that is completely different from the defendant's. The plaintiff defines a specialty retailer as "what is now called also niche markets. Very exclusive, very limited distribution." See Exhibit A to Shepherd Declaration, Gerstner Dep. P 42 L20-22. In the plaintiff's mind, examples of specialty retailers would be Barney's and Bergdorf Goodman. In the plaintiff's mind, the difference between a mass market and a specialty retailer is quality and also distribution. A mass market brand would sell to 30, 40, 50 outlets in the city versus specialty brands. Specialty brands would maybe have two or three doors in the city. Plaintiff has identified the Gap stores as mass market retailers. Gerstner Dep. P 45 L2-5. This difference is important because the defendants considered the Gap stores to be part of its target purchasing population of specialty vertical retailers such as The Limited, Victoria's Secret, Banana Republic and Coach, as well as Ann Taylor. The importance of this difference in definition was made clear when the plaintiff was asked:

> How do you think it is possible for you to read Women's Wear Daily and to be aware of the FIFI awards and not to know who Robin Burns-McNeill is.
>
> Answer: From my understanding, she is from, she has a corporate background. Calvin Klein, and Victoria's Secret, or The Limited or whatever. Frankly, I don't read those articles, because I couldn't care less what these companies do because it's very different from what we do. Gerstner Deposition at P 70, L 20 – 25, P 71, L1-7.

Mr. Gerstner, when he made this statement, captured the essence of the differences between the plaintiff's and the defendant's businesses. As noted, above, Venustas International, LLC is a contract manufacturer of products falling in the beauty category. The products in the beauty category include personal fragrances, beauty aids such as lotion, creams and exfoliators, home fragrance products and edible products such as mints. Venustas International, LLC will

be performing these services for the same companies that Mr. Gerstner and Aedes De Venustas "couldn't care less" about. Prospective purchasers of defendant's services are branded vertical specialty retailers who have an existing revenue base of at least one billion dollars and are interested in either entering the beauty category with their existing stores or wish to redo their existing beauty program. Examples of prospective purchasers of defendant's services are fashion chain retailers like The Limited, Victoria's Secret, The Gap, Banana Republic and Coach, as well as Ann Taylor. Venustas International, LLC's relationship with these entities begins with contract negotiation with the decision makers of the corporation. For example, Venustas International, LLC's relationship with Ann Taylor began with a meeting between Robin Burns-McNeill, Sam Ghusson and the Chairman of Ann Taylor and her staff.

What Venustas International, LLC does for its clients is create a turnkey business in the beauty category which Venustas International, LLC operates for the client for a period of time, and if the client then so desires, Venustas International, LLC will turn the business over to the client for in house operation. In order to create a turnkey business, Venustas International, LLC works with the customer to develop concepts, create assortment plans, design packaging, develop product, procure raw materials, execute safety and stability testing, ensure products comply with all FDA regulations, and manage all manufacturing of finished goods. When these goods are delivered to the customer, they have only the client's trademark and no other names or trademarks. Venustas International, LLC, appears nowhere on the product or packaging. As is the case for most contract manufacturers, Venustas International, LLC is an anonymous source of the goods insofar as the ultimate customers of the company's clients are concerned.

While Venustas International, LLC is a relatively new company, both Robin Burns-McNeill and Sam Ghusson have a great deal of experience in the beauty industry. Between

them, they have 55 years of experience working for companies like Calvin Klein Cosmetics Company, Elizabeth Arden, Gryphon, Intimate Beauty Corporation/Victoria's Secret Beauty, Bloomingdales, and Estee Lauder Corporation.

Robin Burns-McNeill and Sam Ghusson worked together at Calvin Klein and Victoria's Secret Beauty. She developed and was responsible for the successful launch of many well known fragrances and related personal products such as Obsession, Eternity, Pleasures and Dream Angels. One measure of Robin Burns-McNeill's reputation in the beauty industry is the fact that she won more than 10 FIFI awards during her career in the beauty industry. Mr. Gerstner, in his deposition, recognized the importance of these awards when he said "The FIFI award in the equivalent of the Oscars in the beauty industry." Gerstner Dep. P 65, L21 & 22.

It is this credibility and reputation in the beauty industry that enables Robin Burns-McNeill and Sam Ghusson to get access to the decision makers at the corporations that are their target clients. Venustas International, LLC does not do any advertising and the working relationships with prospective clients are initiated through personal introductions based upon the reputation of Robin Burns-McNeill.

The relative importance of the names and reputations of the principals as opposed to good will associated with defendant's name Venustas International, LLC, was made absolutely clear by the headline that appeared in <u>Women's Wear Daily</u> which ignited the controversy. The article headline read "New In Beauty: Ann Taylor Taps Robin Burns to Develop Collection." Only buried in the text was there any reference to Venustas International.

The name Venustas International was chosen by Sam Ghusson and Robin Burns-McNeill in a very deliberate way. They exchanged lists of proposed names and eventually settled on "VENUSTAS" because it was the Latin word which translated to English means "beauty." After

the name was cleared by their attorneys, they started Venustas International, LLC. At the time they started the company, they were unaware of plaintiff's company Aedes De Venustas. (See Declaration of Sam Ghusson) Likewise, the plaintiffs did not know either Robin Burns or Sam Ghusson before this litigation was initiated.

In addition to the fact that the plaintiff and the defendant clearly service different segments of the beauty industry, their marks are also different in many respects. First, the plaintiff's mark includes as a initial word "Aedes." As noted above, this Aedes segment of the mark is emphasized in plaintiff's materials and on plaintiff's website in a number of ways. Plaintiffs have adopted a signature gift package style which is based on a black box with the company logo appearing thereon. Immediately above the corporate logo is the single word "Aedes" Likewise, plaintiff has black boxes given to their customers for product purchases. Again the box features the company logo with the word "Aedes" appearing directly above. (See Exhibits to Declaration of Robert Shepherd). The website also promotes a magazine entitled "The Aedes Magazine" and a newsletter entitled "Aedes Perfume News." Their telephone number, 888-AEDES15" which also emphasizes the word "Aedes," as does their reference to the Aedes Gift Card. As for the term "Venustas," the plaintiff scrupulously provides the definition for that term as well as Aedes (temple of beauty) in many places on the website.

In contrast, the defendant's trade name uses the word "International" as well as the letters "LLC." Comparing the mark and the trade name in their entirety, there are actually more differences than similarities between the marks.

Plaintiff in its opening papers focused on the fact that the plaintiff had been receiving telephone calls from people asking to speak with people at Venustas International, LLC including Sam Ghusson, the President and Executive Officer. They also noted that they received

and continued to receive numerous telephone calls from people in the fashion industry and the beauty field congratulating them or asking about their new contract with Ann Taylor. Based on what the plaintiff has said about these calls, however, they were not from  prospective purchasers. Venustas International, LLC, while identified by location in the article that appeared in Women's Wear Daily, is not listed in the New York City directory assistance. So as to better understand what happened when one called directory assistance in Manhattan and  asked for Venustas International, LLC, Sam Ghusson called. The directory assistance person told him that "we have no Venustas International,  but I do have  Aedes De Venustas, do you want that number?"  (See Declaration of Sam Ghusson) If these well wishers were  faced with only one choice, it is understandable that they decided that it was better to try the only choice presented rather than to simply give up.

Clearly, the businesses of the plaintiff and the defendant serve different purchasing populations and operate through different channels of trade. The mark and the trade name  are easily distinguishable, have only one word, the Latin word for beauty, in common.   The confusion between the companies was caused by directory assistance and the callers were not prospective purchasers.   The trade name Venustas International, LLC was adopted by the defendants without knowledge of the plaintiff's business and defendant's products will be of the high quality expected  by the businesses that they serve.

### III.  LEGAL ARGUMENT

#### Proofs Required for Permanent Injunction

In this case, plaintiff's application for a preliminary injunction has been consolidated and converted to a hearing for a permanent injunction.  In order for the plaintiff to be granted a permanent injunction against defendant's use of the trade name Venustas International, LLC,

plaintiff must demonstrate (1) actual success on the merits, and (2) irreparable harm. *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286 F.Sup.2d 284 at 290 (S.D.N.Y. 2003). In the Second Circuit, a showing of likelihood of confusion establishes irreparable harm. *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286 F.Sup. 2d 284. Accordingly, if plaintiff proves a likelihood of confusion, it is entitled to a permanent injunction. Likewise, if plaintiff fails to prove a likelihood of confusion, no permanent injunction can issue.

### Factors to Be Considered In Likelihood of Confusion Determination

It is well settled in the Second Circuit that the factors to be considered in a determination of whether there is a likelihood of confusion can be found in *Polaroid Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492, 128 U.S.P.Q. 411 (2d. Cir. 1961) Cert. Denied, 368 U.S. 820, 82 S.Ct. 36, 131 U.S.P.Q. 499 (1961). The *Polaroid* test lists 8 factors to be considered and weighed in making a determination as to the presence or absence of likelihood of confusion.

The *Polaroid* factors, no one of which is determinative, include the following:

1.   The strength of the senior user's mark.

2.   The degree of similarity between the two marks.

3.   The proximity of the products.

4.   The likelihood that a prior owner will bridge the gap.

5.   Actual confusion.

6.   The Junior user's good faith in adopting its own mark.

7.   The quality of defendant's product.

8.   The sophistication of the relevant purchasing population.

Based on the facts in this case, defendants have found that the factors favor a finding of no likelihood of confusion. In this case defendant asserts that the proximity of the products, in

9

terms of channels of trade, is effectively dispositive of this likelihood of confusion analysis, especially when viewed in light of the other factors. Accordingly, defendant addresses *Polaroid* factor 3 first, and then presents the remaining factors seriatim.

1. Proximity of the Products.  First and foremost,  while plaintiff's beauty products bear its "AEDES DE VENUSTAS" trademark, the same is not true for defendant. Defendant's trade name "VENUSTAS INTERNATIONAL, LLC" does not appear on any product manufactured by defendant because it is a private label manufacturer.  Moreover, the parties operate in different channels of trade within the beauty industry and serve distinctly different purchasing populations.

As in the *Dawn Donut Co. v. Harts Food Stores, Inc.* case, 267 F.2d 358, 121 U.S.P.Q. 430( 2d Cir. 1959), plaintiff's goods and services are primarily rendered at the retail level. Seventy five percent of its revenue comes from sales either at the brick and mortar store on Christopher Street (50%), or through products ordered over its website (25%).  Plaintiff does provide gifting services to certain corporations, provides a scenting service for public and private parties and other gatherings, has created a fragrance with one other company and has assisted another's startup in identifying products for its line of beauty products,  but these services are rendered in completely different channels of trade and serving different clientele than defendant.

As noted in the Declaration of Mr. Sam Ghusson, (hereinafter "Ghusson Declaration"), a principal in Venustas International, defendant serves a distinctly limited clientele with a very well defined service.  They work directly with large retailers in the fashion industry, those companies doing more than one billion dollars a year.  They enter into contracts with those companies to develop a private label beauty product business that will operate in their retail fashion stores.  They handle everything from the choice of fragrance to the design of the

packaging and bottle, the manufacturing of all components, the assembly of the product and then delivery to the customer. With the final product bearing the client's name and trademark, and not the name of Venustas International, LLC, the end purchasers never knows of defendant. (See Ghusson Declaration) This is an entirely different business rendered to an entirely different group of purchasers than the plaintiff and the difference was acknowledged by Mr. Gerstner in his deposition when he said "it is very different than what we do."

While it would appear that both parties operate within the same channels of trade because plaintiffs repeatedly refer to themselves as being in the specialty retail business and the President of Ann Taylor identified her company as being in the specialty retail business in the Women's Wear Daily article, this is not true. First, it must be kept in mind that Ann Taylor or any other retailer is not the channel of trade for defendant's services offered under its name, because its name is never used in that retail market. Next, the deposition of Mr. Gerstner made it clear that the parties each have their own definition of the specialty retail business, where defendant's final products do not bear the name "VENUSTAS INTERNATIONAL, LLC" and those definitions do not overlap, nor do the channels of trade. Plaintiff's idea of a specialty retail business was the type of business he runs where there are a limited number of outlets offering very high end exclusive products. Other examples of specialty retailers in the plaintiff's mind included Bergdorf-Goodman and Barney's. In contrast, defendant's idea of a specialty retailer are retailers featuring private label goods with numerous outlets such as Ann Taylor, The Gap, or Victoria's Secret. So not only does defendant offer a distinctly separate service to a separate class of clients under its trade name, but the end products, which do not include defendant's name, are sold through different retail channels.

Moreover, not only do the parties serve different channels of trade and different purchasing populations, but neither party advertises their consulting services in a traditional sense. Both parties rely upon word of mouth and relationships in getting their specific consulting work. The only activity in which defendant intends to engage in the future that can be viewed as advertising is the publication of a website in which they do nothing more than identify their services, identify the principals of the company, and identify their customer targets. The website, a copy of which has been attached to the Declaration of Mr. Ghusson, shows the relatively narrow focus of the defendant's services and is the type of website that could not lead to confusion between the plaintiff and the defendant, particularly when viewed by the parties' respective customers. Even though both entities operate in the beauty industry, the facts reveal they each are on separate planes in the field, and are interacting with separate customer bases. Consequently, in view of the fact that the parties service different purchasing populations, who sell in different retail channels of trade so there is no proximity between the products, and defendants final products never bear its trade name, there can be no real likelihood of confusion. This was confirmed by Mr. Gerstner's statement in his deposition that "he couldn't care what these companies (Calvin Klein, Victoria's Secret, The Limited or whatever) did because it is very different from what we do."

2.    Strength of the Plaintiff's Mark.    The Second Circuit uses a two stage test to determine the strength of a mark. First the mark is analyzed in the abstract, and then tested for strength in the marketplace among purchasers. *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Sup. 414, 206 U.S.P.Q. 70 SDNY 1980. Viewing the mark "AEDES DE VENUSTAS" in the abstract, the mark in its entirety, is suggestive. As such, the mark has strength although it is not as strong as an arbitrary or coined term. Translated into English,

12

"Temple of Beauty" suggests that the store will be selling products in the beauty category. However, the term shared by both marks, "VENUSTAS," is the Latin translation of the word "beauty" and is therefore descriptive of a characteristic of the goods sold by the plaintiff.

As for strength among purchasers, the issue becomes one of promotion and consumer recognition. Again, the record discloses a very mixed picture. On the one hand, plaintiff admits that it does no traditional media advertising. On the other hand, it store has been the subject of numerous articles written by third parties, plaintiff's website is active and easily accessible and it distributes both an electronic newsletter to its email customer base as well as sending a catalogue once a year to its customers. The effect of the advertising done by plaintiff, however, does not reflect a strong mark. Applicant's revenue of 1.6 million dollars, while certainly reflecting a bona fide enterprise, is not particularly substantial in view of the cost of goods and the fact that sales average over $100.00 each. This means that over the course of the year, the plaintiff, between its website and its store, had only 14,000 transactions. We also note that plaintiff estimates his entire email list to be approximately 10,000 customers.

In addition to commercial activity, evidence of third party use of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to only a narrow scope of protection. McCarthy on Trademark and Unfair Competition, §11:88. Third party uses show that customers have become so conditioned by a plethora of similar marks that customers have been educated to distinguish between different such marks on the basis of minute distinctions. See *Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F.Sup. 733; 43 U.S.P.Q. 2d 1083 (S.D.N.Y. 1997). Defendant, in the time allowed, has uncovered no third party using the combination "AEDES DE VENUSTAS." However, we have confirmed one other use

13

of the term "VENUSTAS," as well as numerous uses of the derivative term "VENUS" both in the fragrance category as well as other beauty categories. (See Declaration of Damias Wilson).

Taking all of the evidence into consideration, we would concede that the mark "AEDES DE VENUSTAS," in view of its registration, its advertising and usage, and a lack of registration by third parties, has some strength. However, any rights that the plaintiff has in the "VENUSTAS" is weak because it is a translation of a descriptive term, "beauty," and because both the identical term and the obvious similar term "VENUS" are the subject of use by others. The inherent weakness of this common term must be kept in mind when evaluating a likelihood of confusion.

3.    <u>Degree of Similarity Between the Two Marks.</u>    In   comparing   the   mark "AEDES DE VENUSTAS" with the trade name "VENUSTAS INTERNATIONAL, LLC" their similarities and differences are apparent. While they both share the descriptive term "VENUSTAS," they are otherwise different. These differences are important because marks must be compared in their entireties when making a determination as to likelihood of confusion *Dreyfus Fund, Inc. V. Royal Bank of Canada,* 525 F.Supp 1108 (S.D.N.Y., 1981) particularly in view of the way in which a plaintiff has emphasized "AEDES" in promoting its mark.

For example, plaintiff's domain name for its website is "AEDES.COM." It does not use the domain name "VENUSTAS.COM" or the domain name "AEDES DE VENUSTAS.COM." Viewing the home page of the website, we note that plaintiff's catalogue is distributed to all of its customers once a year, and is called the "Aedes Magazine." In addition, the "Aedes Perfume News" which is electronically distributed "every few weeks" to the plaintiff's email customers, is in entitled "The Aedes Perfume News." Finally, the black gift box that is at the heart of plaintiff's trade dress is the combination of the company logo with the word "AEDES" appearing

directly above. Even the description of the box and the gift card refer only to the Aedes gold leaf logo, the Aedes signature floral wrap, the black Aedes box and the Aedes gift card. Clicking through to the section of the website discussing privacy and security, the text is again peppered with references to "AEDES" rather than "AEDES VENUSTAS." The first such reference being the subheading "Aedes Privacy and Security Policy." The point of this is that plaintiff's own conduct acknowledges the weakness of "VENUSTAS" in the industry and the dominance of the term "AEDES" within is mark.

A reasonable conclusion from this conduct is that customers of the plaintiff would look for the term "AEDES" as the necessary part of the mark that identifies the plaintiff as the source of origin of certain goods. If plaintiff's purchasers, even though they are not within the same trade channels as defendants (see Section III(1) supra), encountered the word "VENUSTAS" alone or in combination with the word "INTERNATIONAL," they would  not identify the services associated with that word or trade name as originating from the plaintiff.

This assertion is confirmed, to some extent, when one looks at the article written by the New York Times that appears in the "In The Press" portion of the plaintiff's website. Again, repeatedly, the plaintiff is referred to as "AEDES," not "AEDES DE VENUSTAS." Clearly, that word is dominant in terms of the purchasing public's perception. This makes sense given the descriptive nature of Venustas as beauty. Applicant's trade name on the other hand, begins with the term "VENUSTAS" and ends with the term "INTERNATIONAL." When one views the two terms in their entirety, with knowledge of Venustas being descriptive and Aedes being an arbitrary dominant term, the differences between the mark and trade name  indicate it is unlikely that perspective customers, particularly in view of the nature of the customers involved, would be confused between the two terms if they ever were used in the same trade channels.

4.    <u>Bridging the Gap.</u>    Bridging the gap refers to the likelihood that the plaintiff will enter the business of creating turnkey beauty businesses for specialty retail companies such as Victoria's Secret and other like stores. In order for plaintiff to succeed in a claim that it will bridge the gap, it must first have plans to enter that market and, second, prospective purchasers, by virtue of plaintiff's advertising, must be aware of plaintiff's intention. See *Lang v. Retirement Living Publishing Co., Inc.,* 21 U.S.P.Q. 2d 1041 at 1045. (2 Cir. 1991). In this case, it is already affirmatively stated  by plaintiff that it does not care about the corporate work done by defendants (Gerstner Deposition P 70, L 20-25, P 71, L1-7) and there is no proof offered by the plaintiff it must be presumed it will not be bridging the gap into the defendant's business. Even the consulting services that it offers will not likely extend to defendant's customers because the services provided by defendant require a great deal more manpower and dedication to that single purpose than would be possible under plaintiff's present staffing and business model.  (See Ghusson Declaration)  Furthermore, as noted above, "the intent of the prior user to expand or its activities in preparation to do so, unless known by perspective purchasers does not affect the likelihood of confusion." *Lang,* supra, at 1046. See Also *McGregor-Doniger, Inc., v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir. 1979). Here, even plaintiff's existing retail store and internet customers do not know of the plaintiff's consulting services. These are known only by word of mouth and therefore cannot be considered in any determination of whether or not the plaintiffs will bridge the gap and begin to offer the turnkey beauty business services offered by the defendants under the trade name "VENUSTAS INTERNATIONAL, LLC."

5.    <u>Instances of Actual Confusion.</u>    Much of plaintiff's case, as we see it, is based upon what the plaintiff describes as instances of actual confusion. As described by plaintiff in his Declaration, the callers were well wishers and other people wishing to speak to

Robin Burns about her contract with Ann Taylor. This is not the type of confusion that the Lanham Act was designed to protect.

The Lanham Act was designed to prevent consumer confusion that enables the seller to pass off his goods as those goods of another. *Lang v. Retirement Living Publishing Co., Inc.,* 221 U.S.P.Q. 1041 at 1046 (2d Cir. 1991) and cases cited therein. Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally. Id. The *Lang* case, noted above, disclosed a fact pattern very similar to the facts of this case. Therein, New Choices Press brought an action for trademark infringement after the defendant, Retirement Living Publishing Co., Inc., launched a magazine entitled New Choices For the Best Years. Shortly after launch of the publication, plaintiff, New Choices, received approximately 400 telephone calls and several letters to people attempting to reach Retirement Living's New Choices magazine. The plaintiff asserted that these were instances of actual confusion, but the Court found that they were not because the plaintiff did not show that the misdirected callers were perspective purchasers of Lang's products. "In sum, there is no reason to believe that confusion represented by the phone calls could inflict commercial injury in the form of either a diversion of sales, damage to good will, or a loss of control over reputation." *Lang,* supra, at 1046.

In this case, Ann Taylor wished to place an article in Women's Wear Daily announcing that Robin Burns McNeill was going to be developing and supplying the beauty products sold by Ann Taylor. The article mentioned Venustas International, LLC as the name of Ms. Burns-McNeill's company without providing any contact information other than the fact that the company was located in New York City. Venustas International is not listed with directory assistance, and its website has not yet been launched. Sam Ghusson, in an effort to investigate

17

these misdirected calls, contacted directory assistance and was advised that they had no information for Venustas International, but they did have a company on Christopher Street doing business as Aedes De Venustas, and offered to give him that number. (See Ghusson Declaration). Clearly, these are not instances of actual mistake, but confusion caused by either a lack of information or misinformation given by the phone company. Accordingly these claimed instances of confusion should not be considered in deciding whether or not there is a likelihood of confusion between plaintiff's nark and defendant's trade name because they offer no commercial injury. We also add that since the filing of the Order to Show Cause in this case there has been, by plaintiff's admission, only one misdirected call.

      6.    <u>Junior User's Good Faith in Adopting its Own Mark.</u>    The selection of a name that reflects an industry term or characteristics, a request for a trademark search and reliance on the advice of counsel are all factors that support a finding of good faith. *E.S. Originals, Inc. v. Stride Rite Corp.,* 656 F.Supp 484, 490 (S.D.N.Y. 1987). Here, the name "VENUSTAS INTERNATIONAL" includes the Latin word for "beauty," which is the category of products in which the defendant's business is positioned. Plaintiffs went to counsel to get advice as to the availability of the name they had chosen, and were advised that it was available. (See Ghusson Declaration).

     Plaintiff's base their claim that the defendants have acted in bad faith solely upon their belief that it would be impossible to be in a business in the beauty category without having knowledge of them in view of the fact that they had been nominated for several awards, including an award called a "FIFI." Plaintiffs, however, have acknowledged that prior to the <u>Women's Wear Daily</u> article, they had no knowledge of Robin Burns-McNeill, and Robin has not only been nominated for, but has won more than 10 FIFI's. The fact that they have no

knowledge of Ms. Burns-McNeill lends credence to defendant's statement that they had no knowledge of the plaintiffs before they adopted and used the trade name "VENUSTAS INTERNATIONAL, LLC." Furthermore, we believe that defendant's lack of knowledge of the plaintiff as well as plaintiff's lack of knowledge of the defendant is proof that there is no likelihood of confusion because they do business in different channels of trade servicing different purchasing populations.

7.      The Quality of Defendant's Product.      Plaintiff has also expressed the unsupported fear that products made by defendant will be inferior. We do not believe that this is a particularly relevant factor in this case because, as noted above, none of the defendant's goods will be marked with the defendant's trade name. In this case, all of the goods made by the plaintiff and delivered to its clients will be marked with the client's trademarks and company name. (See Ghusson Declaration). Furthermore, as is apparent from the text defendant plans to put on its website as well as the additional information contained in the Declaration of Sam Ghusson, defendants have for many years been in the beauty industry and have launched many successful products including "Obsession" and "Eternity," and are committed to making quality products for their upscale clients.

8.      Sophistication of the Purchasers.      On this issue, there appears to be no dispute. Mr. Gerstner stated, in both his Declaration and his deposition, that he considers his clients to be upscale, sophisticated people. Likewise, the defendant considers their clients, the decision makers in charge of billion dollar plus vertical branded specialty retailers, to be sophisticated. These sophisticated customers, particularly those involved in business to business transactions, are very unlikely to be confused by a trademark and a trade name that share only a single descriptive word and are otherwise distinguishable particularly where, as here, it is unlikely that

purchasers of defendant's goods would be exposed to plaintiff's marks or that plaintiff's purchasing population would be exposed to defendant's trade name.

## IV. CONCLUSION

In analyzing the eight factors set forth in the *Polaroid* test, the defendants have shown that there is no likelihood of confusion between plaintiff's use of the mark "AEDES DE VENUSTAS" and defendant's use of the trade name "VENUSTAS INTERNATIONAL LLC." Defendants have shown that while the mark in its entirety, "AEDES DE VENUSTAS" may be a strong mark, its rights in the term "VENUSTAS," the Latin word for "beauty," is weak in view of its descriptive quality, the existence of several other similar marks for related goods, and minimal promotion of the term separate and apart from the term "AEDES." Comparing plaintiff's mark "AEDES DE VENUSTAS" to the defendant's trade name, the only portion that is identical is the term "VENUSTAS" and when the marks are compared as a whole, it is clear that the differences are greater than the similarities particularly where, as here, the plaintiff has gone to great lengths to emphasize the to its customers "AEDES" part of the mark on its website, newsletter, catalogue, and signature trade dress. As a result, the plaintiff's mark, "AEDES DE VENUSTAS," and defendants trade name are not confusingly similar.

Comparing the goods and services of the plaintiff and defendant, yields a very interesting comparison: the defendants have no goods upon which the trade name "VENUSTAS INTERNATIONAL LLC" appears. The plaintiff's goods are sold in different channels of trade to entirely different purchasing populations to the purchasers of defendant's services. Accordingly, this is decidedly against the finding of any likelihood of confusion. Furthermore, as the defendant has shown, it is unlikely that plaintiff will bridge the gap because the services offered by defendant cannot, because of its labor intensive nature, be offered by much smaller

20

plaintiff's entity.  Defendants have also demonstrated that the confusion noted by the plaintiff through its moving papers are not instances of actual confusion, because they were no more than well wishers for Venustas International without any commercial interest in Aedes De Venustas, nor did they create any commercial harm.

Defendants have also demonstrated that the trade name "VENUSTAS INTERNATIONAL LLC" was adopted in good faith before defendants knew of "AEDES DE VENUSTAS", that the products to be manufactured by defendants will be of high quality, and that the purchasers of both defendant's services and plaintiff's goods are sophisticated purchasers, where defendant's purchasers are decision makers at the highest level in the billion dollar specialty retail industry.

Accordingly, plaintiffs have not shown actual success on the merits and the request for an injunction restraining defendants from any further use of the trade name "VENUSTAS INTERNATIONAL LLC" should be denied.

Respectfully submitted:

Dated: June 15, 2007          BY:          s/ Robert G. Shepherd
                                            Robert G. Shepherd, Esq.
                                            MATHEWS, SHEPHERD, McKAY & BRUNEAU
                                            29 Thanet Road, Suite 201
                                            Princeton, New Jersey 08540-3661
                                            Tel: (609) 924-8555
                                            Fax: (609) 924-3036
                                            Email:shep@mathewslaw.com


                                            OF COUNSEL:
                                            Philip Colicchio, Esq.
                                            Taylor, Colicchio & Silverman, LLP
                                            502 Carnegie Center, Suite 103
                                            Princeton, NJ 08540
                                            Tel: (609) 987-0022
                                            Attorneys for Defendant