UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AEDES DE VENUSTAS, INC.,

    Plaintiff,

vs.

VENUSTAS INTERNATIONAL, LLC,

    Defendant.

07 Civ. 04530 (LTS)(THK)

Document Electronically Filed

**MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

LAW OFFICES OF JOSEPH M. HEPPT
521 Fifth Avenue, Suite 1805
New York, NY 10175
(212) 973-0839

**Preliminary Statement**

The Defendant has tried to distinguish the Plaintiff from the Defendant by arguing that the Plaintiff is merely a retail store while Defendant is a creative development company and manufacturer. However, I believe that the evidence shows that Plaintiff also is a creative development company, that the company has been developing a consulting business based upon the considerable talents of one of its principals, Karl Bradl, and that the defendant outsources the manufacturing of those products just as Plaintiff does. In fact, as explained in the Gerstner Reply Declaration, the Plaintiff has begun offering exactly the same consulting services as the Defendant: developing beauty products for third parties to sell under their own brand name. The products that are developed by the Plaintiff for those clients are not sold under the Aedes De Venustas name.

An essential part of Plaintiff's evolving consulting work is the referrals that Plaintiff receives from people in the beauty industry who know of the Plaintiff and Mr. Bradl's talents. All of the consulting work that Plaintiff has done has come about through word of mouth in the beauty industry. In fact, both Mr. Ghusson and Ms. Burns testified during their depositions in this case admitting that their contract with Ann Taylor came about because of a referral from someone in the beauty industry. Burns Tr. P. 32-33;[1] Ghusson Tr. P. 32-33.[2]

**Argument**

I.  **Defendant Has Not Disputed Plaintiff's Trademark Ownership and the Only Remaining Issue is Whether There is a Likelihood of Confusion**

In its opposition papers, Defendant agrees that for purposes of a preliminary injunction, once the plaintiff has shown a mark ownership and likelihood of confusion in trademark infringement cases, irreparable harm and the likelihood of success are presumed.

---

[1] A copy of the pages from the Burns deposition transcript cited herein are attached as Exhibit A to the Declaration of Joseph M. Heppt, sworn to on June 20, 2007 (the "Heppt Reply Declaration").

[2] A copy of the pages from the Ghusson deposition transcript cited herein are attached as Exhibit B to the Heppt Reply Declaration.

Furthermore, as to the first prong, the Defendant does not dispute that the Plaintiff owns valid trademark rights in the AEDES DE VENUSTAS mark.

With regard to the likelihood of confusion between Plaintiff's mark and the Defendant's name, the Defendant argues that applying the Polaroid factors to the facts of this case leads to the conclusion that there is no likelihood of confusion. The Plaintiff could not disagree more strongly. I will address each of the Defendant's arguments in the order that they are raised in Defendant's Memorandum of Law in Opposition.

1. **Proximity of the Products:** The Defendant admits that both the Plaintiff and the Defendant conduct business in the beauty industry. While the Plaintiff does maintain its retail business, through which it sells products bearing its trademark, the evidence presented in this case shows quite clearly that the Plaintiff has been consulting other companies developing products for those clients to market under their own names. *See* Gerstner Reply Declaration, ¶¶ 2, 10. In fact, during his deposition, Mr. Gerstner testified that "product development consulting" represents approximately 25% of the Plaintiff's revenue in 2006. Gerstner Tr. P. 16-17.[3] Mr. Gerstner also identified two specific companies for which they developed product and product lines. Gerstner Tr. P. 18-19. Furthermore, during discovery in this action, the Plaintiff produced letters from various companies with which it has consulted in developing fragrances. Gerstner Reply Declaration, ¶ 10. While it may be true that the Defendant is targeting larger clients than the Plaintiff is at present, the product being developed for their clients is exactly the same type of product.

Defendant's argument that the Defendant's future website could not lead to confusion between the Plaintiff and Defendant is disingenuous. As described below in the discussion of "Defendant's Bad Faith In Adopting Its Name" and in the Gerstner Reply Declaration, the Defendant's prototype website prominently features part of Plaintiff's

---

[3] A copy of the pages from the deposition transcript of Robert Gerstner cited herein are attached as Exhibit C to the Heppt Reply Declaration.

trademark as well as the image of a butterfly, a visual image that was prominently displayed on Plaintiff's website. The fact that the parties are both seeking to sell consulting services within the beauty industry based upon word of mouth and reputation gives rise to a tremendous risk of confusion.

      2.    **Strength of Plaintiff's Mark:** In its opposition, the Defendant relies on the fact that the word "Venustas" is Latin for "beauty" and that the trademark "Aedes de Venustas" translates from the Latin as "Temple of Beauty" to argue that the mark is "entirely suggestive." Defendant's Brief in Opposition, p. 12. I suggest, however, that because Latin is no longer spoken and has been described as a "dead language,"[4] the terms "Venustas" and "Aedes de Venustas" are more properly viewed as arbitrary. As such, its strength is extremely high. *See*, *Lexington Management Corp. v. Lexington Capital Partners*, 10 F.Supp.2d 271 (S.D.N.Y. 1998). Furthermore, the Defendant acknowledges that the Plaintiff has been the subject of numerous news articles. Defendant's Brief in Opposition, p. 13. Plaintiff's website, the newsletter sent out to its customers along with the extensive news coverage that the Plaintiff has received reflects a very strong mark. *See*, *Tri-Star Pictures v. Unger, supra* at 355.

      With regard to the Defendant's argument concerning third party use of similar marks, the Defendant admits that it has **not** found any third parties using the combination "Aedes De Venustas" and **only one** other use of the term "Venustas." Defendant's Brief, p. 13-14. With regard to the single instance of use of the term "Venustas," that third party is a day spa offering hair styling and related services at its location in Blackfoot Idaho. *See*, Declaration of Damias Wilson submitted in opposition to Plaintiff's motion (the "Wilson Declaration"). Defendant's characterization of this third party as being in the fragrance

---

[4]    The American Heritage Dictionary defines "dead language" as "[a] language, such as Latin, that is no longer learned as a native language by a speech community.

-4-

category as well as other beauty categories can only be described as reflecting a certain level of desperation in Defendant's argument.

With respect to the third parties using the term "Venus," such term is much more readily recognizable by the public and simply would not be confused with the term "Venustas" or "Aedes De Venustas." *See*, *E.S. Originals, Inc. v. Stride Rite Corp.,* 656 F. Supp. 484 (S.D.N.Y.1987) ("The presence of a word in a trademark and the extensive use of variations of that word in third party registrations do not preclude a finding that the mark in question is a strong one.")

Furthermore, of the fourteen third parties identified by the Defendant as using the word "Venus," six of them (Venus Nails Incorporated, Nails for Venus, Venus Spa and Nails, Venus Nails, Salon Venus and Venus Hair Salon) are nail or hair salons. *See* Wilson Declaration. It cannot reasonably be argued that these companies are providing services or offering products that are similar to those offered by the Plaintiff. Accordingly, those six must be disregarded. *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1174 (2d Cir.1976) One of the remaining eight third parties (Venus and Rosa Venus) is the manufacturer of a soap, which is not a product offered by the Plaintiff. One of the remaining seven third parties identified by the Defendant (Barefoot Venus) is a manufacturer of bath oils, massage oils, soaps, moisturizers and creams that is located in Canada. Two of the remaining third parties (Venus Beauty Supply and Beauty Source Venus) are retail stores located in South Carolina and California. Because of their location, and the fact that the Wilson Declaration does not indicate that these stores sell products on a website, their significance must be discounted. *See*, *Elizabeth Taylor Cosmetics v. Annick Goutal,* 673 F.Supp. 1238, 1244-45 (S.D.N.Y.1987) (noting that "third-party usage is less troublesome when ... the other marks stand for unrelated products" and discounting importance of third-party usage for products that did not compete in "quality, price or location") One of the remaining third parties (Venus Silk/Venus Dew/Venus Aura) appears to be a manufacturer of "essential oils" that appear to be marketed for their health benefits.

These products do not compete with Plaintiff's and, therefore, their significance must be discounted. *Id*. The remaining three third parties are fragrances or moisturizing creams that appear to be sold exclusively over the internet. While these three third parties could arguably be viewed as relevant to the determination of the strength of Plaintiff's trademark, very little information is provided regarding how well they are promoted or whether they were recognized by consumers. Therefore, while this evidence suggests that there is, indeed, limited third-party use of the word "Venus" and extremely limited third party use of the term "Venustas," it is not competent evidence because it does not demonstrate that these third party uses were well promoted or that they were recognized by consumers." *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1173 (2d Cir.1976).

     3.    **Similarity of the Marks:**  The Defendant makes much of the fact that the Plaintiff uses the term "Aedes" on its website, in its newsletter and on its gift box. Defendant's Brief, p. 14-15. However, as explained in the Gerstner Reply Declaration, even a cursory examination would show that Plaintiff's logo, which appears on each of those items, contains the full name Aedes de Venustas. Plaintiff's website also contains many references to the full name. In fact the full trademarked name, Aedes De Venustas, appears on each and every page of the web site that the Defendant has chosen to submit to the Court. Gerstner Reply Declaration, ¶ 5. The Defendant argues that because the Plaintiff uses the term "Aedes," purchasers that encountered the word "Venustas" alone would not associate the services associated with that term as originating from the Plaintiff. That argument is belied by the fact that many members of the beauty industry have been confused. *See* discussion of "actual confusion" below. Finally, the mere fact that one writer out of the dozens of articles written about the plaintiff refers to the company as "Aedes" does not support the conclusion urged by the Defendant that the "Aedes" term is dominant in the purchasing public's perception.

     4.    **Likelihood that the Prior Owner Will Bridge the Gap:** Defendant has focused on a statement made by Mr. Gerstner during his deposition to the effect that when

he reads Women's Wear Daily, he is not interested in what large corporations are doing because Plaintiff doesn't do that. As explained in the Gerstner Reply Declaration, that is true to a point. Plaintiff is not actively engaged in selling to those corporate clients at the present time. In fact, during his deposition, Mr. Gerstner explained that the Plaintiff does not describe its consulting services on its website because "if we would at this point, assuming there is a big response, we just would not be able to handle them yet." Gerstner Tr. P. 40 (emphasis added). However, as explained in the Gerstner Reply Declaration, Plaintiff plans to continue developing its consulting business to the point where in a few years Plaintiff will be selling to those corporate clients.

The Defendant has tried to convince the Court that the Defendant's business is very different than the Plaintiff's by suggesting that the Defendant's operation is much larger than the Plaintiff's. It argues that developing "turnkey" beauty departments for retailers like Ann Taylor "requires a much different business background and a much larger staff than the staff of three, including the two owners, employed by the plaintiffs (sic)." Defendant's Brief in Opposition, p. 1. The Defendant states that the Defendant "works with the customers to develop concepts, create assortment plans, design packaging, develop product, procure raw materials, execute safety and stability testing, ensure products comply with all FDA regulations, and manage all manufacturing of finished goods." The Defendant clearly is suggesting that the Defendant's operation is much larger than the Plaintiff's and that, therefore, there is no likelihood that the Plaintiff will begin offering the same service as the Defendant. However, the facts do not support such a suggestion.

Ms. Burns, the Defendant's chairman, testified that the Defendant has only ten, maybe twelve, employees in total. Burns Tr. P. 13. This would include the two owners. Furthermore, Ms. Burns testified that she does not know whether the Defendant has the facilities to perform stability testing and safety testing. Burns Tr. P. 21. She admitted that the Defendant does not actually procure raw materials for a client, it actually hires an outside company to do that "like all companies do." *Id*. She admitted that the Defendant

hires an outside company to insure that the new products comply with FDA regulations. *Id*. Finally, she admitted that the "turnkey operation" that the Defendant will provide to its clients simply means that the Defendant delivers to the client completely finished goods with the client's name on them for them to retail. It does not mean that the Defendant will operate a retail beauty operation for the client. Burns Tr. P. 19. Based upon the evidence, I believe that there is a very high likelihood that the Plaintiff will bridge the gap and that this factor weighs heavily in Plaintiff's favor.

     5.    **Actual Confusion:** The Defendant has tried to downplay the significance of the telephone calls and invoices received by the Plaintiff and identified in its moving papers. The Defendant has submitted a declaration from Ms. Percoco, the client relationship manager of the vendor in question, who tries to explain that, because she did not have the address for the Defendant, she "googled" Venustas International and came up with the address for Aedes De Venustas. She then admits that she used that address to mail the invoices to the Defendant. I respectfully submit that this admission is clear evidence that the Defendant's name is confusingly similar to the Plaintiff's.

The Defendant also argues that the numerous telephone calls that Plaintiff received simply are not relevant. However, in addition to the calls Plaintiff received from people wishing to speak to Defendant's employees, Plaintiff also received numerous calls from people in the beauty industry asking about the new contract with Ann Taylor. Obviously those people were confused and believed that there was some connection between the parties. What is most disturbing about those calls is the fact that those people in the beauty industry are Plaintiff's only source of referrals for its consulting work. In addition to the telephone calls and the misdirected invoices, there is yet additional evidence of actual confusion within the beauty industry.

The Defendant has produced an email exchange between Robin Burns, the Defendant's Chairman, and Pierre Dinand, a fragrance bottle designer. A copy of that email exchange is attached to the Gerstner Reply Declaration as Exhibit C. In his email to

Ms. Burns, Mr. Dinand states in relevant part, "So you are back in business, I went on your AEDES of VENUSTAS website, and saw that you are selling some of my designs…" Clearly Mr. Dinand, a well known fragrance bottle designer, confused Ms. Burns' company Venustas International, LLC with that of the Plaintiff, Aedes De Venustas. It was for that reason that Mr. Dinand visited the Plaintiff's website. That document is further clear proof of actual confusion in the beauty industry because of the similarity between the parties' names. Thus, this factor weighs decidedly in Plaintiff's favor.

      6.      **Defendant's Bad Faith in Adopting its Own Mark:** The discovery exchanged by the parties now shows that there is evidence that the Defendant knew about Aedes De Venustas and deliberately selected a name and website design that would confuse people into thinking that there is some connection between the two companies.

Attached to Mr. Ghusson's declaration submitted in opposition to the present motion is a copy of Defendant's website prototype. Immediately above the Defendant's name, a butterfly is prominently displayed. As explained in the Gerstner Reply Declaration, it could not be a coincidence that the Aedes De Venustas website prominently displayed a butterfly from its inception in 2001 until November 2006. Attached to the Gerstner Reply Declaration as Exhibit E are copies of web shots of the Aedes De Venustas site.

Furthermore, while Mr. Ghusson and Ms. Burns have denied ever hearing of the Plaintiff before they selected the name of their company, Plaintiff has uncovered evidence that it sold product to Victoria Secret Beauty in November 2004, purchased by Barbara Calcagni. A copy of that invoice is attached to the Gerstner Reply Declaration as Exhibit F. That sale is quite significant. Ms. Burns testified at her deposition that Ms. Calcagni was a vice president at Victoria Secret Beauty at the same time that Ms. Burns was the CEO. In fact, Ms. Calcagni worked directly for the Senior Vice President of Marketing, who was a direct report to Ms. Burns, and oversaw the fragrance business. Burns Tr. P. 6, 30-31. Furthermore, Ms. Burns testified that as a CEO she was involved in the details of such things as marketing. Burns Tr. P. 14-15. This is strong evidence that Ms. Burns was either

actually or constructively aware of Plaintiff's company long before she and Mr. Ghusson selected a name for their new company. This factor clearly favors Plaintiff.

7.   **Quality of Defendant's Product:** Based upon the arguments made by the Defendant in opposition to this motion, it seems likely that the quality of Defendant's products will be approximately the same as those of the Plaintiff. In such cases, there is a greater likelihood of confusion. *See Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) (holding that where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion, for purpose of trademark infringement action). This factor weighs in Plaintiff's favor.

8.   **Sophistication of the Buyers:** In general, consumers in the beauty and fragrance industry are sophisticated. However, given the evidence of actual confusion already provided by the Plaintiff, there is a strong likelihood that even these sophisticated consumers will continue to be confused.

## Conclusion

After an assessment of the above identified factors, the only reasonable conclusion that may be reached is that there is a high likelihood of confusion. For this reason, Plaintiff's motion should be granted and this Court should grant such other and further relief that this Court may deem just and proper

Dated:   New York, New York
         June 20, 2007

Respectfully submitted,

_____/s_____
Joseph M. Heppt, Esq. (JH-4974)
521 Fifth Avenue, Suite 1805
New York, NY 10175
(212) 973-0839

*Attorney for Plaintiff*