Robert G. Shepherd, Esq. (RGS-5946)
Brooks R. Bruneau, Esq. (BRB-5523)
MATHEWS, SHEPHERD, McKAY & BRUNEAU, P.A.
29 Thanet Road, Suite 201
Princeton, NJ 08540
Tel: (609) 924-8555

Of Counsel:
Philip Colicchio, Esq.
Taylor, Colicchio & Silverman, LLP
502 Carnegie Center, Suite 103
Princeton, NJ 08540
Tel: (609) 987-0022
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AEDES DE VENUSTAS, INC., | : | Civil Action No.: 1:07-04530 (LTS) |
| Plaintiff, | : | |
| v. | : | |
| VENUSTAS INTERNATIONAL, LLC, | : | |
| Defendant. | : | Honorable Laura Taylor Swain |
| | : | Magistrate Judge Theodore Katz |
| | | Document Electronically Filed |

**VENUSTAS INTERNATIONAL LLC'S REPLY IN SUPPORT OF ITS MOTION TO
STRIKE CERTAIN EXHIBITS ATTACHED TO THE DECLARATION OF GERSTNER**

## <u>Table of Contents</u>

|  |  | Page(s) |
|---|---|---|
| I. | Introduction | 1 |
| II. | Argument | 1 |
| | A. The letters do not fall within the "Business Record" Exception to the hearsay rule | 3 |
| | B. The letters do not fall within FRE 803(30), the Hearsay rule exception for reputation concerning Boundaries or general history | 5 |
| | C. The letters do not fall within FRE 807, the Residual Exception | 6 |
| III. | Conclusion | 10 |

## I.    Introduction

The Plaintiff does not dispute Exhibits B and D to the Gerstner Declaration, as well as corresponding statements made in the Gerstner Declaration, are hearsay (hereinafter collectively referred to as "the letters"), but rather argues the Exhibits and statements fall into an exception to the hearsay rule. They do not. Instead, as admitted by Plaintiff in its response brief (page 5), they are directed to a material issue in this case, and their use denies Defendant the right to properly cross-examine the authors.

Plaintiff attempts to shoehorn the hearsay letters into two different exceptions to the hearsay rule; and because they are clearly not within either, the Plaintiff argues they fall within the residual exception. Not only are none of those hearsay exceptions applicable, the letters have none of the indicia of reliability common to all of the categories of hearsay exceptions, and as required by the residual exception. To the contrary, the letters were created under circumstances which raise serious doubt regarding their trustworthiness and suggest the strong possibility of bias by the authors.

## II.    Argument

"[T]he same 'principle of a circumstantial guarantee of trustworthiness' -involving the absence of any vigorous motive to misrepresent- is inherent in virtually all the exceptions to the hearsay rule." Hoffman v. Palmer, 129 F.2d 976, (2d Cir.1942), aff'd 318 U.S. 109 (1943). Yet the letters at Exhibits B and D to the Gerstner Declaration were created under circumstances indicating a lack of trustworthiness and are now offered to prove the truth of the matter asserted within their text. It is recognized that the party wishing to introduce hearsay evidence must rebut the presumption of unreliability by appropriate proof of trustworthiness. United States v. Hooks, 848 F.2d 785, 796 (7th Cir. 1988). Plaintiff has failed to meet this burden of proof.

1

According to the Plaintiff, the letters were created to assist Mr. Bradl in his application for lawful permanent residence, commonly referred to as a "green card". Without citing a single case for support, the Plaintiff claims these circumstances entitle the letters to a presumption of trustworthiness as to reputation when, in fact, the opposite is true.

Trustworthiness in reputation evidence is found "when the topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been discussed in the community; and thus the community's conclusion, if any has been formed, is likely to be a trustworthy one." 5 Wignore, Evidence, §1580, P. 444, and see also §1583; M. Graham, Federal Practice and Procedure: Evidence §7062 (Interim Edition 2006).

The circumstances under which these letters were created raise numerous questions concerning potential depth of knowledge and investigation by the authors, as well as bias on the part of the hearsay declarants. While the letters relay opinions, the authors of the letters may have been less than truthful in an effort to help Mr. Bradl with his residency status. The letters en masse are devoid of any credible statements of first hand inquiries or investigations as to the alleged reputation in the community or industry. The text or content of the letters may have been proposed or created by someone other than the signatory. If these letters are admitted, the Defendant will be denied a critical opportunity to explore the circumstances of the creation of the letters and to expose bias by the authors. Accordingly, the letters should be stricken. They simply cannot be accepted as trustworthy on their face and then become evidence of the veracity of the contents being asserted without investigation and cross-examination.

**A.    The letters do not fall within the "Business Record" exception to the hearsay rule.**

The letters do not fall under FRE 803(6) entitled, "Records of regularly conducted activity", because they are not records of regularly conducted activity of either the Plaintiff or the alleged third party authors of the letters.    In fact, the Plaintiff does not even make an attempt to lay the required foundation to admit hearsay evidence under this exception.    "Under that rule [FRE 803(6)], a report prepared from information " transmitted by" a person " with knowledge" may be admissible if that report was kept in the course of a " regularly conducted" activity, and if it was the " regular practice" of the institution to make such a report. Fed.R.Evid. 803(6). Such records may be excluded, however, if " the source of information or the method or circumstances of preparation indicate lack of trustworthiness. <u>Romano v. Howarth</u>, 998 F.2d 101, 108 (2d Cir.1993).

In this instance, the Plaintiff fails to show by the testimony of the custodian or other qualified witness that the records were: 1) kept in the course of a regularly conducted business activity; and 2) it was the regular practice of that business activity to make the memorandum, report, record or data compilation.

Moreover, "The principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." <u>Romano v. Howarth</u>, supra at 108 (quoting *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir.1987)).    The touchstone of admissibility under Rule 803(6) is reliability.  See <u>Giles v. Rhodes</u>, 2000 WL 1425046.

Instead of showing specifically how the letters meet the requirements of the business record exception, the Plaintiff argues generally that they were created under circumstances that

would <u>suggest</u> trustworthiness. See Opposition Memorandum at pg. 5 (emphasis added).  While the circumstances suggest the opposite is true, more importantly mere presentation of the letters simply does not meet the specific requirements of the rule in order for the exception to apply.

Specifically, the Rule requires foundational testimony that "it was the regular practice of that business activity to make the memorandum, report, record or data compilation . . . of the custodian or other qualified witness . . ."  See F.R.E 803(6); See also <u>Romano v Howarth,</u> supra at 108 quoting Fed.R.Evid. 803(6) advisory committee's note ("If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail."

In this instance, there is no showing, or even an offering, that it was the regularly conducted business activity of Mr. Gerstner to keep such third party letters.  Even more importantly, there is no showing at all that it was a regular practice of the business activity of the third party authors to write such letters.  And certainly Mr. Gerstner, who offers the letters, could not possibly testify to the regular business activity of all or even any of the third party hearsay declarants, nor did he try.  See e.g. <u>U.S. v Doyle</u>, 130 F.3d 523, 546 (C.A. 2 1997) (The Senior Inspector in the Customs Department could not possibly testify as to the practices of the private businesses that generated the documents filed with the Customs Department).

In fact, the alleged circumstances of the creation of the letters for use in obtaining a green card indicate their creation and retention were not part of regularly conducted business activity. Rather, it is highly probable that the letters were prepared under unique non-business related circumstances.  In fact, such highly personal circumstances do not suggest trustworthiness, but rather, an atmosphere of hyperboles connoting untrustworthiness.

4

Plaintiff's assertion that the letters were created in connection with Mr. Bradl's green card application raises the strong possibility of bias on the part of the authors. The letters may easily contain exaggerations or unverified facts in an effort to provide friendly assistance. There is no indication of any follow up investigation by the INS, nor acceptance by it that the contents were true. In short, the exact circumstances and purposes for the creation of the letters are under question and therefore not entitled to a presumption of trustworthiness. Rather, the situation compels the letters be excluded and the Defendant given the opportunity to cross-examine the letters' authors to determine the truth of the matter being asserted.

**B.      The letters do not fall within FRE 803(20), the hearsay rule exception for reputation concerning boundaries or general history.**

The letters do not fall within FRE 803(20) because the letters do not in any way concern land boundaries, or events of general history important to the community to which this Rule actually applies. Instead, the letters allegedly concern Mr. Bradl's personal reputation among a few individuals supposedly in the beauty and fragrance industry who want to help him obtain a green card. See Opposition Memorandum at pg. 6. Mr. Bradl's reputation, as provided by these few select third parties allegedly in the beauty and fragrance industry, does not concern either of the two specific subject areas identified in the rule.

Despite the Plaintiff's suggestion otherwise, FRE 803(20) does not encompass reputation generally without any limitation. FRE 803(20) provides:

> **Reputation concerning boundaries or general history.** Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or State or nation in which located.

"[R]ule [FRE 807(20)] refers to "[r]eputation in a community ... as to boundaries ... and as to events of general history...." The matter must be ancient "or one as to which it would be

5

unlikely that living witnesses could be obtained...." People of State of N.Y. by Abrams v. The Ocean Club Inc., 602 F.Supp. 409, (E.D.N.Y 1984) (quoting 4 Weinstein's Evidence, p. 803-268). In addition, "In the exception as to hearsay declarations concerning boundaries, the courts hold that the declarant must have had 'no interest to misrepresent." Hoffman v. Palmer, supra at FN. 4 (citing Wigmore, loc. cit., Sec. 1565).

The plain language of the rule limits the exception to two specific instances: 1) boundaries of or customs affecting lands in the community; and 2) reputation as to events of general history important to the community or State or nation in which located. The first portion of F.R.E. 803(20) is directed toward the admissibility of evidence of reputation as to land boundaries and land customs. The second portion is designated to facilitate proof of events when judicial notice is not available. Federal Practice and Procedure, Evidence §7061 (Interim Edition 2006) citing McCormick, Evidence, §299, p. 625. Obviously, the letters do not concern either. To the contrary, the letters concern Mr. Bradl the individual.

Moreover, even if F.R.E. 803(20) is somehow applicable, Plaintiff failed to lay any foundation that there is a beauty and fragrance community or what that community includes. While the Defendant disagrees that there is such an applicable community, assuming *arguendo* that there is, the letters were created and submitted only a little more than year ago to the Immigration and Naturalization Service. While the letters may be important to Mr. Bradl's residency status, they do not concern historical events important to any community.

C.    **The letters do not fall within FRE 807, the Residual Exception.**

The letters do not fall within the Residual Exception because the letters, as required by the rule: 1) do not have circumstantial guarantees of trustworthiness; 2) are not more probative

6

on the point than other evidence which can be secured by reasonable efforts; and 3) the Plaintiff did not make the statements known sufficiently in advance of the hearing.

"The residual hearsay exceptions, 803(24) and 804(b)(5) [now combined to 807], are applied in the rarest of cases, and the denial of admission under the exceptions can only be reversed for an abuse of discretion." U.S. v DeVillo, 983 F.2d. 1185, 1190 (C.A.2 1993). "Sometimes referred to as the "catch-all" exception to the hearsay rule, Rule 807 " was necessary to permit courts to admit evidence in exceptional circumstances where the evidence was necessary, highly probative, and carried a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions." Because Rule 807 is properly viewed as a "safety-valve" to prevent injustice, it is "to be used only rarely, and in exceptional circumstances" and "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." Slip Copy, U.S. v James, 2007 WL 1579977 (E.D.N.Y.) (internal citations omitted).

In addition and contrary to the Plaintiff's implication otherwise, the Residual Exception is not to be used to admit hearsay statements that are contemplated by the specific exceptions of Rule 803 and 804, but fail to meet the foundational requirements of those specific exceptions. See e.g., U.S. v Zapata, 356 F.Supp.2d 323, 327 (S.D.N.Y 2005) ("First, the admissibility of statements such as Londono's is governed by Rule 804, and thus, by the plain language of the Rule, Rule 807 does not apply"); Not Reported in F.Supp.2d, Kamara v U.S., 2005 WL 2298176 (S.D.N.Y.) (refusing to admit statements under F.R.E. 807 that are specifically addressed under F.R.E 804).

The plain language of the rule indicates as much.  F.R.E 807 provides in part, "A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule . . ." (emphasis added).

The Plaintiff, however, first argues that the letters are covered by two specific exceptions of Rule 803.  As shown above, the statements fail to meet the specific requirements of those two exceptions.  The Plaintiff cannot then subsequently use the Residual Exception to make admissible, letters which are considered inadmissible by the specific exceptions of 803 and 804.

In addition, even if F.R.E. 807 could apply, the letters do not have "equivalent circumstantial guarantees of trustworthiness" required by the Residual Exception. There are serious questions concerning the trustworthiness of the letters.  The letters were created to be submitted in support of Mr. Bradl's application for a green card, not as sworn statements. Therefore, the motivation for the third party authors of the letters was to assist Mr. Bradl in obtaining his green card rather than providing unbiased and fully truthful statements.  Moreover, it is possible that the letters were created at the request of Mr. Bradl with the text or general content dictated to the signatory (although the exact circumstances are still undisclosed).  In the end, it is equally possible the goal of the letters was to guarantee a green card as opposed to accurately describing his alleged industry reputation.  In summary, the circumstances of the creation of the letters presented an overwhelming opportunity to be less than completely truthful to assist a person in need.  As a result, the trustworthiness of the letters has not been demonstrated.

This is particularly pertinent considering that the letters are not more probative on the point for which they are offered than other evidence which can be secured by reasonable efforts. The letters are not more probative than testimony from the authors of the letters.  See U.S. v

8

Zapata, supra, at 327 ("the statement is not more probative on the issue . . . than any other evidence that she can procure through reasonable efforts, as required under subsection (B) of Rule 807. Zapata has subpoenaed the declarant, Londono, to appear as a witness in her case. His testimony at trial under oath certainly would be more probative . . . than a statement that he made years ago).

In this instance, Plaintiff has admitted that a subpoena provides a source for presenting non-hearsay evidence on this topic. Proceeding in this manner would provide the Defendant the opportunity to explore the authors' intentions in offering the statements and explore whether the statements were influenced due to Mr. Bradl's residency concerns. The use of a Federal subpoena is inherently a reasonable method by which to present such evidence. After all, Plaintiff has known of the existence and need to present this evidence since the filing of its Complaint, far in advance of Defendant learning of these letters.

Finally, Plaintiff failed to give Defendant sufficient notice in advance to provide the Defendant with a fair opportunity to meet the hearsay statements. The Plaintiff claims that it did meet the notice requirement but offers no facts to support such a claim. The truth is that use of the letters as direct testimony was presented by Plaintiff in its Reply Memorandum filed 9 days before the original trial date. Notice requires the proponent to give notice of its intention specifically to rely on the rule as grounds for admissibility. United States v. Pellullo, 964 F.2d 193,202 (3d. Cir. 1992). Plaintiff does not explain why the intended use of the letters was not first disclosed in support of its original moving papers or any time before filing its Reply. After all, Plaintiff assert its case is "predicated on Mr. Brandl's rising notoriety in the beauty and fragrance industry," (P. 2 Plaintiff's Response Brief) indicating pre-planned intention to offer the evidence.

9

The Plaintiff contends that it would be expensive and time consuming for the Plaintiff to issue subpoenas to have them testify in person; yet according to the Plaintiff, one week's time provides the Defendant with a fair opportunity to "prepare to meet it [the hearsay statements], the proponent's intention to offer the statement and the particulars of it" as required by the Rule. See F.R.E 807.  While Plaintiff would like to have the letters admitted in such a way as to completely protect the statements from scrutiny, it simply is not fair to the Defendant when direct testimony can be presented.   There are too many issues surrounding their creation that indicates they are not trustworthy and not reliable so as to warrant a hearsay exception. Therefore, the letters should be stricken, leaving Plaintiff the option to offer live testimony that can then be addressed by Defendants in cross-examination.

## III.    Conclusion

For the foregoing reasons, Defendant requests its Motion to Strike the Exhibits to the Gerstner Declaration be granted.

Respectfully submitted:


Dated: July 6, 2007                BY: s/ Brooks R. Bruneau
                                   Brooks R. Bruneau, Esq.
                                   MATHEWS, SHEPHERD, McKAY & BRUNEAU
                                   29 Thanet Road, Suite 201
                                   Princeton, New Jersey 08540-3661
                                   Email: brbruneau@mathewslaw.com