UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AEDES DE VENUSTAS, INC.,

    Plaintiff,

vs.

VENUSTAS INTERNATIONAL, LLC,

    Defendant.

07 Civ. 04530 (LTS)(THK)

Document Electronically Filed

# PLAINTIFF'S POST-HEARING BRIEF

LAW OFFICES OF JOSEPH M. HEPPT
521 Fifth Avenue, Suite 1805
New York, NY 10175
(212) 973-0839

**Preliminary Statement**

As explained more fully below, the evidence presented to this Court overwhelmingly supports Plaintiff's application for injunctive relief. Moreover, as explained by Plaintiff's Vice President, Robert Gerstner, during the evidentiary hearing held on July 13, 2007, should the Defendant be allowed to continue using its name, all of the work that the Plaintiff has done over the past twelve years in building its business and reputation in the industry will go up in smoke. Tr. 24[1]

Throughout the course of these proceedings, the Defendant has tried mightily to distinguish the Plaintiff from the Defendant by arguing that the Plaintiff is merely a retail store while Defendant is a large creative development company and manufacturer. However, the evidence shows that in addition to its retail business Plaintiff also is a creative development company. The Plaintiff has been building a part of its business designing and producing products for other companies based upon the considerable talents of one of its principals, Karl Bradl. Furthermore, and quite significantly, the Defendant has admitted that the Defendant is not a manufacturer at all, but simply outsources the manufacturing of those products -- just as Plaintiff does. In fact, as explained both in the Gerstner Reply Declaration and during the hearing, the Plaintiff has begun offering exactly the same product development services as the Defendant: developing beauty products for third parties to sell under their own brand name – albeit on a much smaller scale to date.

As explained more fully below, in light of the very significant likelihood that members of the beauty and fashion industry will be confused into thinking that there is some connection between the Plaintiff and the Defendant because of the striking similarity of their names and their website designs, and because the evidence shows that both the Plaintiff and the Defendant rely exclusively on referrals from the members of the beauty and fashion industry for their business, Plaintiff is entitled to the injunctive relief sought.

---

[1] References to transcript pages refer to the transcript of the evidentiary hearing conducted by the Court on July 13, 2007, a copy of which has been provided to the Court.

**I.    Defendant Has Not Disputed Plaintiff's Trademark Ownership and the Only Remaining Issue is Whether There is a Likelihood of Confusion**

The Defendant agrees that for purposes of injunctive relief, once the plaintiff in a trademark infringement case has shown a mark ownership and likelihood of confusion, irreparable harm and the likelihood of success are presumed. As to the first prong, the Defendant does not dispute that the Plaintiff owns valid trademark rights in the AEDES DE VENUSTAS mark.  Therefore, the entire focus has been on whether there is a likelihood of confusion between Plaintiff's mark and the Defendant's name.

As demonstrated in Plaintiff's papers and through the testimony presented at the hearing, an application of the eight factors identified by the Second Circuit in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d. Cir. 1961), *cert. denied*, 368, U.S. 820 (1961) to the facts of this case leads to the conclusion that there is a very high likelihood of confusion.

1.    **Proximity of the Products:** The Defendant admits that both the Plaintiff and the Defendant conduct business in the beauty industry.  Declaration of Sam Ghusson, sworn to on June 15, 2007, at ¶ 22. While the Plaintiff does maintain its retail business, through which it sells products bearing its trademark, the evidence presented in this case shows quite clearly that the Plaintiff has been working with other companies developing products for those clients to market under their own names. *See* Gerstner Reply Declaration, ¶¶ 2, 10; Tr. 12-18.  Mr. Gerstner has also identified two specific companies for which they developed product and product lines.  Gerstner Deposition Tr. P. 18-19 (attached to Plaintiff's reply papers). Furthermore, during the hearing, a representative of one of those companies, Ms. Angela Donhauser of ThreeAsFour, testified about the product that Mr. Bradl helped to develop for that company. Tr. 56-58. While it may be true that the Defendant is targeting larger clients than the Plaintiff is at present, the product being developed for their clients is exactly the same type of product.

2.     **Strength of Plaintiff's Mark:** The Defendant relies on the fact that the word "Venustas" is Latin for "beauty" and that the trademark "Aedes de Venustas" translates from the Latin as "Temple of Beauty" to argue that the mark is "entirely suggestive." However, as noted in Plaintiff's reply papers, because Latin is no longer spoken and has been described as a "dead language,"[2] the terms "Venustas" and "Aedes de Venustas" are more properly viewed as arbitrary.  As such, its strength is extremely high. *See*, *Lexington Management Corp. v. Lexington Capital Partners*, 10 F.Supp.2d 271 (S.D.N.Y. 1998). Furthermore, the Defendant has acknowledged that the Plaintiff has been the subject of numerous news articles. That news coverage combined with Plaintiff's website and the newsletter sent out to its customers reflects a very strong mark. *See*, *Tri-Star Pictures v. Unger,* 14 F.Supp.2d 339, 355 (SDNY 1998).

3.     **Similarity of the Marks:**  On their face, the marks are confusingly similar. This simple fact is borne out by the instances of actual confusion that have occurred. *See* discussion below. Furthermore, the Defendant's website will inexorably lead to confusion between the Plaintiff and Defendant.  As explained in Plaintiff's papers and during the hearing, the Defendant's website prominently features part of Plaintiff's trademark as well as the image of a butterfly, a visual image that was an integral part of Plaintiff's website. Gerstner Reply Declaration, ¶ 13; Tr. 90. I suggest that it is self-evident that the fact that the parties are both seeking to sell product development services within the beauty industry based upon word of mouth and reputation while, at the same time using websites that contain very similar elements (including the name), gives rise to a tremendous risk of confusion.

4.     **Likelihood that the Prior Owner Will Bridge the Gap:** The Defendant has focused on a statement made by Mr. Gerstner during his deposition to the effect that

---

[2]     The American Heritage Dictionary defines "dead language" as "[a] language, such as Latin, that is no longer learned as a native language by a speech community."

when he reads Women's Wear Daily, he is not interested in what large corporations are doing because Plaintiff doesn't do that.  However, during cross examination at the hearing, Mr. Gerstner testified that:

> When I'm saying I don't care what they do, that's what I said earlier. We're creating trends. We don't follow trends. So I do not look what the Limited is doing so far as product development is concerned or Calvin Klein or whoever, because interestingly enough, they come to us to scout the trends. So that's what I'm saying is we create things. If they have invited us and approach us to develop products, that's one thing, but I still don't look into The Limited overall and I'm interested in what they do for their 2,000 stores.

Tr. 27-28. As explained in the Gerstner Reply Declaration and during the hearing, Plaintiff plans to continue developing its product development business to the point where in a few years Plaintiff will be selling to those corporate clients. Gerstner Reply Declaration ¶ 10; Tr. 23.

Both parties have stated that they rely on word of mouth for their business in this area. Mr. Ghusson testified that the Defendant's business is developed through word of mouth. Tr. 74. Ms. Donhauser, when asked whether she would recommend Mr. Bradl and his company to other fashion houses, replied:

> Oh, we have always been recommending him to everybody that we know, and it will continue in the future too. And we can't wait to be working on the next project together, which would be our next perfume one day.

Tr. 60.

The Defendant has tried to convince the Court that the Defendant's business is very different than the Plaintiff's by suggesting that the Defendant's operation is much larger than the Plaintiff's.  It argues that developing "turnkey" beauty departments for retailers like Ann Taylor "requires a much different business background and a much larger staff than the staff of three, including the two owners, employed by the plaintiffs (sic)." Defendant's Brief in Opposition, p. 1. *See also*, Ghusson Declaration, ¶ 33 ("I thinks it is unlikely that the plaintiffs (sic) will ever enter into our business because our

business requires people with a track record in a different segment of the industry, and because it requires a great deal more staffing and capital investment than the plaintiff has.")  The Defendant also states in several places in its opposition papers that the Defendant "works with the customers to develop concepts, create assortment plans, design packaging, develop product, procure raw materials, execute safety and stability testing, ensure products comply with all FDA regulations, and manage all manufacturing of finished goods."  Providing this list of functions clearly is designed to suggest to the Court that the Defendant's operation is much larger than the Plaintiff's and that, therefore, there is no likelihood that the Plaintiff will begin offering the same service as the Defendant. However, on cross examination, Mr. Ghusson admitted that you don't have to be a big company to do what the Defendant does. Tr. 95-96.  He further admitted that there is nothing to prevent the Plaintiff from hiring people to do what the Defendant is doing. *Id*. Mr. Ghusson admitted that the Defendant has only 14 employees. Tr. 95.

In a further attempt to convince this Court that the Plaintiff is unlikely to bridge the gap, Mr. Ghusson stated in several places throughout his declaration and during his testimony at the hearing that the Defendant is a manufacturer of the products developed for its clients. Ghusson Declaration, ¶ 29 ("We are a creative development company and manufacturer…"), ¶30 ("… none of the products we will manufacture for others ..."), ¶39 ("… in connection with our contract manufacturing business…"); Tr. 87 ("In the next month or two, we'll manufacture between two to three million bottles."), Tr. 100 ("We manufacture it for them. … We're the manufacturer.") However, on cross-examination, the story became quite different.

After repeated questioning, Mr. Ghusson grudgingly admitted that the Defendant is not a manufacturer at all. In fact, he admitted that the Defendant:

- Does <u>not</u> manufacture bottles, Tr. 87;
- Does <u>not</u> manufacture packaging, Tr. 87;

- Does <u>not</u> purchase raw materials for itself, but from a supplier who then ships it to the company that the Defendant has outsourced the manufacturing function to, Tr. 87-88;
- In fact, Mr. Ghusson admitted that everyone in the industry outsources those functions, Tr. 87;
- Does <u>not</u> do safety testing, Tr. 98;
- Mr. Ghusson admitted that stability testing can be outsourced, Tr. 98;
- Mr. Ghusson admitted that packaging design and bottle design can be outsourced, Tr. 98-99.

The fact of the matter is that the evidence clearly shows that the Plaintiff has been assisting other companies in developing fragrance products. Mr. Gerstner testified at some length regarding the work that was done for the company known as ThreeAsFour in which Mr. Bradl helped to design the fragrance for that company. Mr. Gerstner testified about the work that the Plaintiff is about to do for three other companies developing fragrance products for those companies. Tr. 14-18. He also testified on cross examination that the Plaintiff has supervised the manufacture of all of the products that are sold under the Aedes De Venustas name, each of which was designed by the Plaintiff. Tr. 50. He explained that with regard to the products that are to be designed and developed for the three companies whose projects are under discussion, the Plaintiff would be responsible for overseeing the manufacture of those products. Tr. 44.

Ms. Donhauser, testified that they asked the Plaintiff to work with them in developing a fragrance for the Collette project because of the talents of Karl Bradl. Tr. 57. She testified that Mr. Bradl was not only an integral part of the team that developed the fragrance, but she declared, "I mean, we could have not done this without him." Tr. 58. Mr. Bradl was directly involved in supervising the manufacture of the product by Symrise and Ms. Donhauser described his role as "he was our brain for that scent." Tr. 59.

Mr. Gerstner testified that the Plaintiff is actively planning on expanding its work in this very lucrative area and has been establishing contacts in Europe for outsourcing the packaging design and manufacturing. Tr. 22-23. He explained that the Plaintiff plans to target companies like Ann Taylor, The Gap and Abercrombie and Fitch and hopes to get that part of its business off the ground in the next couple of years. Tr. 21-23.

I believe that the evidence presented establishes conclusively that there is a very high likelihood that the Plaintiff will bridge the gap and that this factor weighs very heavily in Plaintiff's favor.

5.   **Actual Confusion:** While evidence of actual confusion is not necessary to find likelihood of confusion in part because such evidence is so difficult to find, *see, Miles Shoes Inc. v. R. H. Macy & Co.*, 199 F.2d 602, 603 (2d. Cir. 1952), *cert. denied*, 345, U.S. 909 (1953); the evidence before the Court shows beyond reasonable dispute that there has been actual confusion in this case.

As explained in Plaintiff's moving papers, the Plaintiff received numerous telephone calls from people asking to speak with employees of the Defendant *as well as from numerous people in the beauty industry who know the Plaintiff's company and were calling to ask about the new contract with Ann Taylor*. In addition, Plaintiff received two invoices from a vendor of the Defendant that were mistakenly sent to Plaintiff's address.

The Defendant has tried to downplay the significance of these telephone calls and invoices. For example, the Defendant has submitted a declaration from Ms. Percoco, the client relationship manager of the vendor in question, who tries to explain that, because she did not have the address for the Defendant, she googled Venustas International and came up with the address for Aedes De Venustas. She then admits that she used that address to mail the invoices to the Defendant. I respectfully submit that this admission is clear evidence that the Defendant's name is confusingly similar to the Plaintiff's.

The Defendant also argues that the numerous telephone calls that Plaintiff received simply are not relevant. However, in addition to the calls Plaintiff received from people

wishing to speak to Defendant's employees, Plaintiff also received numerous calls from people in the beauty industry who know the Plaintiff asking about the new contract with Ann Taylor. Gerstner Declaration, ¶ 10. Obviously those people were confused and believed that there was some connection between the parties. What is most disturbing about those calls is the fact that those people in the beauty industry are Plaintiff's only source of referrals for its consulting work. In addition to the telephone calls and the misdirected invoices, there is yet additional evidence of actual confusion within the beauty industry.

Finally, as noted in Plaintiff's papers, the Defendant has produced an email exchange between Robin Burns, the Defendant's Chairman, and Pierre Dinand, a fragrance bottle designer. A copy of that email exchange is attached to the Gerstner Reply Declaration as Exhibit C. In his email to Ms. Burns, Mr. Dinand states in relevant part, "So you are back in business, I went on your AEDES of VENUSTAS website, and saw that you are selling some of my designs…" Clearly Mr. Dinand, a well known fragrance bottle designer, confused Ms. Burns' company Venustas International, LLC with that of the Plaintiff, Aedes De Venustas. It was for that reason that Mr. Dinand visited the Plaintiff's website. That document is further clear proof of actual confusion in the beauty industry because of the similarity between the parties' names. Thus, this factor weighs decidedly in Plaintiff's favor.

6.  **Defendant's Bad Faith in Adopting its Own Mark:** The discovery exchanged by the parties now shows that there is evidence that the Defendant knew about Aedes De Venustas and deliberately selected a name and website design that would confuse people into thinking that there is some connection between the two companies.

At the hearing, the Defendant introduced a screen shot of Defendant's web site. Immediately above the Defendant's name, a butterfly is prominently displayed. As explained in the Gerstner Reply Declaration, it would be an incredible coincidence that the Aedes De Venustas website prominently displayed a butterfly from its inception in 2001

until November 2006.  Attached to the Gerstner Reply Declaration as Exhibit E are copies of web shots of the Aedes De Venustas site.  Incredibly, Mr. Ghusson testified at the hearing that the inclusion of a butterfly above the word "Venustas" on the Defendant's web site is simply a coincidence.  Tr. 90.

As explained in Plaintiff's reply papers, there is evidence that Ms. Burns was either actually or constructively aware of Plaintiff's company long before she and Mr. Ghusson selected a name for their new company that is disturbingly similar to the Plaintiff's. *Nikon, Inc. v. Ikon Corp.*, 803 F.Supp. 910 (S.D.N.Y. 1992) (holding that actual or constructive knowledge of another's prior registration of a similar mark may signal bad faith). This factor clearly favors Plaintiff.  However, even if this Court does not believe that the Defendant acted in bad faith when adopting its name, such a lack of bad faith does not absolve the Defendant from liability for infringing upon Plaintiff's trademark.

    7.    **Quality of Defendant's Product:** Based upon the arguments made by the Defendant in opposition to this motion, it seems likely that the quality of Defendant's products will be approximately the same as those of the Plaintiff. In such cases, there is a greater likelihood of confusion. *See Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) (holding that where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion, for purpose of trademark infringement action). This factor weighs in Plaintiff's favor.

    8.    **Sophistication of the Buyers:** In general, consumers in the beauty and fragrance industry are sophisticated.  However, given the evidence of actual confusion already provided by the Plaintiff, there is a strong likelihood that even these sophisticated consumers will continue to be confused.

## Conclusion

The only reasonable conclusion that may be reached from the evidence presented is that there is a very high likelihood of confusion. As noted in Plaintiff's papers in support of its motion and not disputed by the Defendant, once Plaintiff has shown a likelihood of

confusion, irreparable harm and likelihood of success are presumed. For this reason, Plaintiff's motion should be granted and this Court should grant such other and further relief that this Court may deem just and proper

Dated: New York, New York
       August 7, 2007

                                      Respectfully submitted,

                                       /s   Joseph M. Heppt
                                    Joseph M. Heppt, Esq. (JH-4974)
                                    521 Fifth Avenue, Suite 1805
                                    New York, NY 10175
                                    (212) 973-0839

                                    *Attorney for Plaintiff*