UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AEDES DE VENUSTAS,

                      Plaintiff,

     -against-                        No. 07 Civ. 4530 (LTS) (THK)

VENUSTAS INTERNATIONAL, LLC.,

                      Defendant.

------------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 2 2007

### OPINION AND ORDER

        Plaintiff Aedes de Venustas brings this action, asserting trademark infringement, unfair competition, and dilution claims under Section 43(a) of the United States Trademark Act (15 U.S.C. § 1125(c)) and related claims under New York law, against Defendant Venustas International, LLC. The Court has jurisdiction of the federal statutory claims raised in this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction of the related state law claims pursuant to 28 U.S.C. § 1367.

        Plaintiff seeks a preliminary injunction enjoining Defendant from using the name Venustas International LLC., or from using any name incorporating either the terms "aedes" or "venustas." At a pre-trial conference on June 1, 2007, the Court, pursuant to Federal Rule of Civil Procedure 65(a)(2), consolidated the preliminary injunction hearing with the trial on the merits of Plaintiff's federal trademark infringement claim, which was the subject of the preliminary injunction motion. The Court heard testimony and oral argument in connection with the motion on July 13, 2007.

        This Opinion, which addresses the trademark-infringement related request for

injunctive relief, constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52 and 65. For the reasons that follow, Plaintiff's motion for injunctive relief is granted to the extent set forth below.

## BACKGROUND

The general background of this matter, and the Court's findings as to the factual issues material to its determination of the pending motion, are as follows. Plaintiff is a specialty manufacturer of fragrance, bath and body products, operating under the name Aedes de Venustas, which is Latin for "Temple of Beauty." Its name and mark have both been registered in the Patent and Trademark Office since April of 2006, and it has been using the name and mark for over 12 years. Plaintiff has a retail store located on Christopher Street in New York City, an online and catalogue business, and also provides corporate services, product development, and consulting services to third parties. Its consulting services have included the "scenting" of runway fashion shows and collaboration on the development of scented products for retail stores and other companies, and Plaintiff is currently actively in collaboration with several companies working on developing scented products for them. Plaintiff's principals intend to expand the Company's consulting services in the future, and plan on hiring more employees to handle the increased demand for its consulting services.

Plaintiff's third-party product development efforts have thus far consisted mainly of a collaboration between Plaintiff's principal, Karl Bradl, and the designer group ThreeasFour in the development of a fragrance for Collette, a boutique in France. One of ThreeasFour's principals, Angela Donhauser, testified credibly at trial regarding the group's collaboration with

Mr. Bradl, its practice of widely recommending him to others and its hope of continuing to work with him in the future.

Plaintiff has spent in excess of $440,000.00 developing and promoting its trade name through consumer marketing, industry activities, and its internet website. Plaintiff has frequently been mentioned in newspaper and magazine articles both in the United States and abroad.

Defendant is a creative development company, founded in or about 2006, that conceptualizes, develops, and manufactures product lines in the beauty category, including fragrances, on a contract basis for "branded vertical specialty retailers" (defined at trial by Defendant's principal Sam Ghusson as retailers that sell their own brand in their own stores) with sales of $1 billion dollars that are committed to creating and supporting their own lines of beauty products for sale in their stores. The Defendant will also offer "turnkey services" to the companies it works with, enabling the companies to maintain the beauty products lines in-house. Defendant's other principal, Robin Burns-McNeill, has over 25 years of experience in the beauty industry, having worked as the President and CEO of Calvin Klein Cosmetics Company, Estee Lauder Company, Inc., and Victoria's Secret Beauty. Defendant, like the Plaintiff, does not actually manufacture its products, but instead outsources and oversees the manufacturing process.

Plaintiff first learned about Defendant from a March 16, 2007, article of <u>Women's Wear Daily</u>, which announced that the clothing retailer Ann Taylor would be selling fragrance, bath and body products in partnership with a company called "Venustas." Immediately following publication of the article, Plaintiff's employees began receiving phone calls from people in the

fashion and beauty field wishing to know more about the partnership with Ann Taylor and/or congratulating Plaintiff on it. Plaintiff also subsequently received, at its address on Christopher Street, two invoices for the Defendant.

## ANALYSIS

Under the Lanham Act, a plaintiff must show that its marks are entitled to protection and that the defendant's use of the marks is likely to cause consumer confusion as to the origin or sponsorship of the defendant's goods. See Virgin Enter. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003). The parties do not dispute the validity of Plaintiff's trademark rights.

To obtain a permanent injunction, a movant "must demonstrate (1) actual success on the merits and (2) irreparable harm." See Cartier v. Symbolix, Inc., 454 F. Supp. 2d 175, 186 (S.D.N.Y. 2006). "In an action for trademark infringement . . . a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate irreparable harm and likelihood of success on the merits." Virgin Enter. Ltd., 335 F.3d at 146.

The Second Circuit, in Polaroid Corp. v. Polarad Electronics Corp., outlined a group of nonexclusive factors likely to be pertinent in addressing the issue of likelihood of confusion in trademark infringement cases. These factors are: (1) the strength of the plaintiff's marks; (2) the degree of similarity between plaintiff's and defendant's marks; (3) the proximity of the respective products; (4) the likelihood that the prior owner will "bridge the gap" to a new product area; (5) actual confusion; (6) the defendant's good faith in adopting its own mark; (7) the quality of defendant's products; and (8) the sophistication of buyers. See Polaroid Corp v.

Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961). The Court has considered each of these factors.

1.   *The Strength of Plaintiff's Mark*

"The strength of a trademark encompasses two different concepts, both of which relate significantly to likelihood of consumer confusion. The first and 'most important' is inherent strength, also called 'inherent distinctiveness.' This inquiry distinguishes between, on the one hand, inherently distinctive marks – marks that are arbitrary or fanciful in relation to the products (or services) on which they are used – and, on the other hand, marks that are generic, descriptive or suggestive as to those goods. The former are the strong marks. . . . Regarding inherent distinctiveness, 'the law accords broad, muscular protection to marks that are arbitrary or fanciful in relation to the products on which they are used, and lesser protection, or no protection at all, to marks consisting of words that identify or describe the goods or their attributes.'" Virgin Enter. Ltd., 335 F.3d at 147 (internal citations omitted).

The second concept relevant to the strength of a mark is "acquired distinctiveness," or the extent to which "prominent use of the mark in commerce has resulted in a high degree of consumer recognition." Id. (citing TCPIP Holding Co. v. Haar Communications Inc., 244 F.3d 88, 100 (2d Cir.2001) (describing these two concepts of strength)). "If a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use." Id.

Plaintiff argues that its mark is strong enough to have acquired significant distinctiveness in the marketplace, and that it is indeed this significant distinctiveness that drew Defendant to misappropriate and utilize it as the name of their company. The Defendant

concedes that the Plaintiff's mark is strong in connection with its retail store and internet services, but argues that is not strong in connection with its various consulting services. Defendant also argues that the term "venustas" is simply descriptive of a characteristic of the goods sold by the Plaintiff, and points out that there are various companies using the term "venus" (a term Defendant describes as derivative) in the beauty industry.[1]

        The Court finds that the Latin terms "aedes" and "venustas" are fanciful terms in this primarily Anglophone society. Latin is an ancient language that is not used to a significant degree in day to day communications in this or (to the Court's knowledge) any other country. The Court accordingly finds that the words are arbitrary and fanciful, and that the mark is inherently strong and is deserving of protection for use with respect to Plaintiff's products and services. Regarding the mark's acquired distinctiveness, the Court finds that Plaintiff's twelve years of operating under the name, coupled with the evidence that beauty insiders read the term "Venustas" and associated it with "Aedes de Venustas," establishes that the mark "has been long, prominently and notoriously used in commerce, [and] there is a high likelihood that consumers will recognize it from its prior use." Virgin Enter. Ltd., 335 F.3d at 147. Accordingly, this factor weighs in favor of the Plaintiff.

    2.    *Similarity Between Marks*

        "In assessing the similarity between two marks, 'courts look to overall impression created by the [marks] and the context in which they are found and consider the totality of factors

---

[1] Unlike "venustas," the term "venus" is in common use in modern American language, as the name of a planet in our solar system and as the name of the Roman goddess of beauty. Merriam-Webster's Collegiate Dictionary 1311 (10th ed. 1999).

that could cause confusion among prospective buyers." <u>1-800 Contacts v. WhenU.com</u>, 309 F. Supp. 2d 467, 496 (S.D.N.Y. 2003) (citations omitted) (reversed on other grounds). When the secondary user's mark is not identical to, but is merely similar to, a plaintiff's mark, a court must assess the degree of similarity between the marks in determining whether consumers are likely to be confused. See <u>McGregor-Doniger Inc. v. Drizzle Inc.</u>, 599 F.2d 1126, 1133 (2d Cir. 1979).

"[E]ven close similarity between two marks is not dispositive of the issue of likelihood of confusion." <u>Id.</u> Rather, the crux of the issue is whether the similarity is likely to cause confusion among numerous customers who are "ordinarily prudent." <u>Morningside Group Ltd. v. Morningside Capital Group L.L.C.</u>, 182 F.3d 133, 139-40 (2d Cir.1999). Thus, "an inquiry into the degree of similarity between two marks does not end with a comparison of the marks themselves." <u>Spring Mills, Inc. v. Ultracashmere House, Ltd.</u>, 689 F.2d 1127, 1130 (2d Cir.1982). As the Second Circuit has made clear, "the setting in which a designation is used affects its appearance and colors the impression conveyed by it." <u>McGregor-Doniger</u>, 599 F.2d at 1133 (internal quotation marks omitted). Indeed, the "'impression' conveyed by the setting in which the mark is used is often of critical importance." <u>Spring Mills</u>, 689 F.2d at 1130.

Here, of course, the marks are not identical. Defendant argues that, in promoting its mark, the Plaintiff has focused more on the term "aedes" than on the term "vensutas." For example, Plaintiff's website is "aedes.com," its catalogue is called the "aedes magazine," its catalog sales telephone number incorporates numbers spelling "aedes," and its gift box and gift card simply say "aedes." However, all of these references are aimed at the Plaintiff's retail and online customers, whereas industry insiders, on whom the Plaintiff relies on for utilization and word of mouth marketing of its consulting services, are the more appropriate focus of the instant

confusion inquiry. Thus, the evidence of confusion of insiders and vendors (based here on the common use of the term "venustas"), which is, as the Second Circuit has pointed out, the "crux" of the issue, coupled with the similarities between the two marks, causes this factor to weigh in favor of Plaintiff on this issue.

    3.    *The Proximity of the Products Offered*

"When the two users of a mark are operating in completely different areas of commerce, consumers are less likely to assume that their similarly branded products come from the same source. In contrast, the closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." Virgin Enter. Ltd., 335 F.3d at 150.

Defendant argues that its trade name does not and will not appear on any product, as it is a private label manufacturer that produces products for other companies that ultimately do not even bear its name. Defendant further argues that the parties operate in different channels of trade within the beauty industry and serve distinctly different purchasing populations. Defendant also tries to draw a distinction between itself as a company that works directly with large retailers in the fashion industry and Plaintiff as a company whose goods and services are primarily offered at the retail level, citing Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir.1959), as support for the proposition that, where a plaintiff and a defendant use their marks in connection with retail sales in distinct and separate markets and where there is no present prospect that a plaintiff will expand its use of the mark at the retail level into defendant's trading area, there is no likelihood of public confusion arising from the concurrent use of the marks.

However, the evidence establishes that Plaintiff has been consulting with other

companies about developing products for those companies to market under their own names, which is the same service provided by the Defendant, albeit that Defendant's activities are currently on a much larger scale. Furthermore, the evidence at trial established that Plaintiff is planning on hiring additional employees and expanding its consulting services. Thus, the proximity of the products offered increases the likelihood of confusion, and this factor favors the Plaintiff.

4. *Likelihood That Prior Owner will "Bridge the Gap"*

In the context of assessing the likelihood of confusion, "bridging the gap" refers to "the senior user's interest in preserving avenues of expansion and entering into related fields." See E.S. Originals Inc. v. Stride Rite Corp., 656 F. Supp. 484, 489 (S.D.N.Y. 1987) (citation omitted). "[T]he Court may not lose sight of the fact that the main consideration here is whether a senior user's intent to bridge the gap will make the products more competitive in a manner that enhances the likelihood of confusion." Mejia and Associates, Inc. v. International Business Machines Corp., 920 F. Supp. 540, 549 (S.D.N.Y. 1996).

As noted above, the Plaintiff has established that it is currently providing some consulting services and has future plans to continue and to expand that aspect of its business. Defendant correctly points out that "the intent of the prior user to expand or its activities in preparation to do so, unless known by prospective purchasers, does not affect the likelihood of confusion." Lang v. Retirement Living Pub. Co., Inc., 949 F.2d 576, 583 (2d Cir. 1991) (citation omitted). Defendant argues that, because Plaintiff's consulting services are known only by word of mouth and its existing retail and internet customers do not know of these services, Plaintiff's prospective purchasers do not know of its intent to expand. As noted above, it is, however,

confusion among the industry insiders on whom the Plaintiff relies on for business opportunities and word of mouth marketing that is most relevant here. The evidence establishes that insiders are aware of Plaintiff's efforts.

Defendant further argues that, because Plaintiff has not put forward a concrete business plan for how it plans on financing projects of the size that the Defendant is engaged in at this time and its expansion plans are "wholly speculative," it has not established that it will bridge the gap. The evidence, including testimony given under seal at the trial, establishes that the Plaintiff is currently working on expanding its consulting services and is engaged in discussions with several companies about providing this service. Further, Ms. Donhauser testified that her designer group recommends Plaintiff's consulting services to "everyone they know" and wishes to work more with Plaintiff in the future. Thus, Plaintiff's expansion plans are not wholly speculative, and its intent to expand its services is known by at least some of its prospective purchasers. The Court finds that Plaintiff's ongoing efforts to bridge the gap will make the parties' products and services more competitive in a manner that enhances the likelihood of confusion. Thus, the likelihood that the Plaintiff will bridge the gap is significant, and this factor favors the Plaintiff.

5.  *Actual Confusion*

The existence of actual consumer confusion indicates a likelihood of consumer confusion. See Virgin Enter. Ltd., 335 F.3d at 151. The Second Circuit has deemed evidence of actual confusion "particularly relevant" to the inquiry. See Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 745 (2d Cir. 1998).

Plaintiff has produced uncontroverted evidence that its employees received phone

calls from industry insiders confusing the Plaintiff with the Defendant, and that at least one merchant also did so.[2] Given both parties' admissions that knowledge of the availability of their consulting services spreads by word of mouth, industry insiders are important potential consumers for the Plaintiff's consulting business.

The Defendant argues that mistaken calls from well wishers are not evidence of the kind of confusion against which the Lanham Act was designed to protect, as that Act focuses more on confusion that enables a seller to pass off his goods as those of another. Defendant cites Lang v. Retirement Living Pub. Co. as support for the proposition that there is no actual confusion where "no evidence links the confusion evinced by the calls to any potential or actual effect on consumers' purchasing decisions." 949 F.2d at 583. The Lang Court concluded that there was simply "no reason to believe that confusion represented by the phone calls could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation" demonstrated in that case and, accordingly, denied the motion for injunctive relief.

However, Plaintiff's credible evidence indicates that the people who called and were confused about which company they were calling were fashion and beauty field insiders, and thus are important potential sources of referrals for its consulting work. There is, accordingly, an implication of commercial injury. This factor thus increases the likelihood of confusion, and counsels in favor of the Plaintiff.

---

[2] See Decl. of Robert Gerstner in Support of Plaintiff's Motion for Preliminary Injunction at ¶ 11, explaining that Plaintiff received at its street address two invoices intended for Defendant from a company called LanguageWorks.

6.      *Defendant's Good Faith in Adopting its Own Mark*

Plaintiff argues that there is only evidence of Defendant's bad faith, pointing out that the president of Defendant company has been in the industry for over 25 years and thus was "most certainly aware of the Plaintiff's trademark." Defendant counters that its request for a trademark search by counsel and its reliance on the advice of its counsel are factors that support a finding of its good faith, citing to E.S. Originals Inc. v. Stride Rite Corp., 656 F. Supp. 484 (S.D.N.Y. 1987). Although Plaintiff argues that there is strong evidence that Defendant's principals were actually or constructively aware of Plaintiff's company before selecting a name for their new company, the weight of the evidence does not bear this out. Defendant's uncontested due diligence efforts with its attorneys support a finding of good faith on its part, and thus this factor weighs in favor of the Defendant.

7.      *The Quality of Defendant's Product*

Courts look to whether the infringing product is of lower quality, thereby "tarnishing [the] plaintiff's reputation if consumers confuse the two." If the products are of equal quality, this may "create confusion as to source because of that very similarity in quality." Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 142 (2d Cir. 1999). Plaintiff initially conceded that, because the quality of Defendant's product is currently unknown, this factor was not relevant to this motion, but later argued, citing Savin Corp., that there is a greater likelihood of confusion because the quality of the two companies' products will likely be similar. Defendant argues that the quality of its products is irrelevant, as none will bear its name. The Court concludes, based on the record before it, which does not contain a significant amount of evidence concerning the quality of Defendant's beauty products or client

services, that this factor is a neutral one that weakly supports the Plaintiff at best.

8.  *The Sophistication of Buyers*

"The degree of sophistication of consumers can have an important bearing on likelihood of confusion. Where the purchasers of a products are highly trained professionals, they know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." Virgin Enter. Ltd., 335 F.3d at 151.

Here, the Plaintiff argues that although consumers in the beauty industry are, in general, sophisticated, given the evidence of confusion already presented, there is a strong likelihood that even these sophisticated consumers will continue to be confused by the similarity between Defendant's name and Plaintiff's mark. Defendant counters that both parties agree that sophisticated consumers are unlikely to be confused by trade names that share only one word, especially since the ultimate purchasers of Defendant's goods will never see Defendant's name on the products or packaging.

The Court finds that the evidence of actual confusion establishes a strong likelihood that even the sophisticated consumers in the beauty market will continue to be confused. Thus, this factor favors the Plaintiff.

Because the majority of the Polaroid factors, including the important factor of evidence of actual confusion, favor the Plaintiff, the Plaintiff has established actual success on the merits of its federal trademark infringement claim and thus has also established that it will suffer irreparable harm in the absence of injunctive relief. The Court therefore concludes that the Plaintiff is entitled to injunctive relief.

CONCLUSION

For the foregoing reasons, Plaintiff's request for injunctive relief is granted. Defendant is hereby permanently enjoined from using the name Venustas International LLC., and from using any name incorporating the term "Venustas" as the name of its business or to denote its beauty product-related services.[3]

SO ORDERED.

Dated:   New York, New York
         September 11, 2007

_____
LAURA TAYLOR SWAIN
United States District Judge

---

[3] Plaintiff's request that the injunction also cover use of the term "aedes" is denied, as there is no evidence that defendant has used that term or intends to use that term, nor of any confusion arising from use of the term.