Robert G. Shepherd, Esq. (RGS-5946)
MATHEWS, SHEPHERD, McKAY & BRUNEAU, P.A.
29 Thanet Road, Suite 201
Princeton, NJ 08540
Tel: (609) 924-8555

Of Counsel:
Philip Colicchio, Esq.
Taylor, Colicchio & Silverman, LLP
502 Carnegie Center, Suite 103
Princeton, NJ 08540
Tel: 609 987-0022
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AEDES DE VENUSTAS, INC., | : | Civil Action No.: 1:07-04530 (LTS) |
| Plaintiff, | : | |
| v. | | |
| VENUSTAS INTERNATIONAL, LLC, | : | |
| Defendant. | : | **Motion Returnable:** |
| | | Honorable Laura Taylor Swain |
| | | Magistrate Judge Theodore Katz |
| | | |
| | | Documents Electronically Filed |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| STATEMENT OF FACTS | | 1 |
| RELEVANT LEGAL PRINCIPALS | | 3 |
| A. | Summary Judgment Standard | 3 |
| B. | Legal Standard for Award of Infringer's Profits | 4 |
| DISCUSSION | | 11 |
| CONCLUSION | | 16 |

i

## TABLE OF CASES AND AUTHORITIES

### CASES CITED

Page

*Accord Calcano-Martinez v. I.N.S.*,
    232 F.3d 328 (2d Cir. 2000)    8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986)    3,4

*Banjo Buddies v. Renosky*,
    399 F.3d 171, 73 USPQ2d 1865 (2005)    6,7,8,9

*Burndy Corp. v. Teledyne Industries, Inc.*,
    748 F2.d 767 (2d Cir. 1874)    4

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548,
    91 L.Ed.2d 265 (1986)    3,4

*Director, Office of Workers' Compensation*
*Programs, U.S. Dept. of Labor*
*v. Perini North, River Associates*,
    459 U.S. 297, 103 S.Ct.
    634, 74 L.Ed.2d 465 (1983)    9

*Emprezza Cubana del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir. 1995)    10

*Genesee Brewing Co., Inc. v.*
*Stroh Brewing Company*,
    124 F.3d 137 (2d. Cir. 1997)    10

*George Basch Co., Inc. v. Blue Coral, Inc.*,
    968 Fed. 1532 (2d. Cir. 1992)    4,12

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir.1993)    4

*In re Northwest Airlines Corp.*,
    483 F.3d 160 (2d Cir. 2007)        8

*Malletier v. Dooney & Bourke, Inc.*,
    500 F. Supp.2d 276 (S.D.N.Y. 2007)        7,8

*Mastercard Intern. Inc. v.*
*First Nat. Bank of Omaha, Inc.*,
    2004 WL 326708 (S.D.N.Y. 2004)        7,8,9

*Miles v. Apex Marine Corp.*,
    498 U.S. 19, 111 S.Ct. 317,
    112 L.Ed.2d 275 (1990)        8

*Nike*, Inc. *v. Topp Brand Co. Ltd.*,
    2005 WL 1654859 (S.D.N.Y. 2005)        13

*Russello v. U.S.*,
    464 US 16, 104 S.Ct. 296 (1983)        7,8

*Scheidemann v. INS*,
    83 F.3d 1517 (3d Cir. 1996)        7

*Springs Mills, Inc. v. Ultracashmere House, Ltd.*,
    724 F.2d 352 (2d Cir. 1983)        5

*United States v. Wong Kim Bo*,
    472 F.2d 720 (1972)        8

*United States v. Wong Kim Bo*,
    472 F.2d 720 (5th Cir. 1972)        7,8

*W.E. Bassett Co. v. Revlon, Inc.*,
    435 F.2d 656 (1970)        4,5

iii

## STATUTES

                                                          Page

§35(a) of the Lanham Act, as amended,
15 U.S.C. §1117(a)                                        4,5,8

15 U.S.C. 1114                                            10

15 U.S.C. 1125(a)                                         6,8,10

## OTHER AUTHORITIES CITED

                                                          Page

Fed.R.Civ.P. 56(c)                                        3

N.Y.Gen. Bus. Law section 360(l)                          10

N.Y. Gen. Bus. Law 349                                    10

5 McCarthy on Trademarks §30:62                           9

H.R. Rep. No. 106-250 (1999), LEXSEE 106 H. Rpt 250       6

Pub. L. 104-98, §3                                        6

Restatement, §37(2)                                       5

**INTRODUCTION**

Defendant Batallure Beauty, LLC, formerly Venustas International, LLC, brings this Motion for Partial Summary Judgment on the narrow issue of whether the plaintiff, Aedes De Venustas, is entitled to recover any of defendant's profits as a result of the Court's finding that the trademark "VENUSTAS INTERNATIONAL" infringed on the trademark "AEDES DE VENUSTAS." Defendant contends that the plaintiff is not entitled to an accounting of defendant's profits because case law in the Second Circuit requires that the defendant, in adopting the infringing mark, acted with willful deceptiveness in order for the plaintiff to be entitled to an accounting. In this case, the Court has found that the plaintiff acted in good faith when it adopted the mark "VENUSTAS INTERNATIONAL." Furthermore, even if a finding of willful deceptiveness is no longer required as a prerequisite for an accounting, the application of the material facts which are not in dispute to the multi factor test used in the Second Circuit to determine whether an accounting is applicable, demonstrates that as a matter of law, the plaintiff is not entitled to recover any of the defendant's profits in this case because any award of profits would leave Plaintiff with a windfall recovery.

**STATEMENT OF FACTS**

This matter arose as the result of a dispute between the parties over the question of whether defendant's trademark, "VENUSTAS INTERNATIONAL," infringed upon plaintiff's registered trademark, "AEDES DE VENUSTAS." In an opinion dated September 11, 2007, Judge Laura Swain, U.S.D.J., reviewed the eight *Polaroid* factors and determined that the defendant's use of the term "VENUSTAS INTERNATIONAL" infringed upon plaintiff's rights and ordered the defendant to cease any further use of the

1

term "VENUSTAS." *Aedes De Venustas v. Venustas*, 2007 WL 2597122 (SDNY 2007).

Defendant has since complied with the Court's Order, and is now known as "Batallure

Beauty, LLC." Defendant's L.Civ.R. 56.1 Statement of Undisputed Material Facts

("Statement of Undisputed Material Facts") at ¶12.

Defendant adopted the name "VENUSTAS INTERNATIONAL" as a company

name or "trade name." Statement of Undisputed Material Facts at ¶11. The name was

never used nor intended to be used as a trademark on goods. Id. at ¶9.

Defendant is in the business of creating, developing and then manufacturing

product lines in the beauty industry on a contract basis for vertical specialty retailers with

sales of more than one billion dollars a year. Id. at ¶2. At the present time the plaintiff

does not serve this customer base, but intends to do so in the future. Id. at ¶3. At the

present time plaintiff provides some consulting services, but they are not in the same

business as the defendant. Id. at ¶4. Defendant offers the same services but on a much

larger scale. Id. Plaintiff intends to expand its consulting business and hire additional

employees in about four or five years. Id.

At the time the article that caused the instances of actual confusion appeared in

Women's Wear Daily, the defendant had two customers, one of which was approached

through personal relationship with Robin Burns, the other of which was engaged through

a personal introduction. Id. at ¶5. These relationships are based on lengthy contracts

which were negotiated by management of the customer and the defendant. Id. at ¶6. The

defendant still has only these same two clients and has been engaged by no other client.

Id. at ¶6 and ¶7. Plaintiff, as well, gets its consulting customers through word of mouth.

2

At the time the article that caused the instances of confusion referred to by the Court was published in Women's Wear Daily, the defendant had no product in retail stores. Statement of Undisputed Material Facts at ¶8. Furthermore, the company name "VENUSTAS INTENTIONAL" was not to appear anywhere on the product to be sold to consumers by defendant's customers. Id. at ¶9.

The article that appeared in Women's Wear Daily was based on a press release issued by defendant's customer, Ann Taylor. Id. at ¶10.

The people who were confused by the article appearing in Women's Wear Daily were people in the fashion and beauty field who were calling the plaintiff either to congratulate the defendant on receiving the contract or to wish the defendant's principals congratulations. Id. at ¶13 and ¶16. The callers were not calling to purchase goods. Id.

At the time the article that caused the instance of confusion was published, the defendant's phone number in New York City was not listed in Directory Assistance and the defendant had no website. Id. at ¶14.

### RELEVANT LEGAL PRINCIPALS

#### Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*

3

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, a court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). Nonetheless, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### Legal Standard for Award of Infringer's Profits

In 1992 the Second Circuit, in *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 Fed. 1532, 1540 (2d Cir. 1992), analyzed the provisions of section 35(a) of the Lanham Act, as amended, 15 U.S.C. §1117(a) to identify the facts that a litigant would have to prove to win damages or an award of profits from an infringer. The Court then went on to identify the only three instances in which an accounting for profits would be appropriate:

> The rule in this circuit has been that an accounting for profits is normally available "only if (1) the 'defendant is unjustly enriched, (2) if the plaintiff sustained damages from the infringement, or (3) if the accounting is necessary to deter a willful infringer from doing so again'." *Burndy Corp. v. Teledyne Industries, Inc.,* 748 F2.d 767, 772 (2d Cir. 1874) (quoting *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir. 1970).

Id. at 1537. (emphasis added)

Analyzing all three situations, the court then went on to hold that "under §35(a) of the Lanham Act, a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." Id. at 1540. The

4

court explained the rationale for this requirement of willful deception as necessary "[s]o as to limit what may be an undue windfall to the plaintiff, and prevent the potentially inequitable treatment of an "innocent" or "good faith" infringer." Id. at 1540.

The court then concluded by pointing out:

> Having stated that a finding of willful deceptiveness is necessary in order to warrant an accounting for profits, we note that it may not be sufficient. *See Springs Mills, Inc. v. Ultracashmere House, Ltd.* 724 F2d. 352, 356 (2d Cir. 1983) ("an accounting may be appropriate whenever an infringer's conduct is willful"). While under certain circumstances, the egregiousness of the fraud may, of its own, justify an accounting, *see W.E. Bassett Co.,* 435 F.2d. at 664, generally, there are other factors to be considered. Among these are such familiar concerns as: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands. *See generally Restatement,* §37(2) at cmt. f & cases cited in the reporter's notes. The district court's discretion lies in assessing the relative importance of these factors and determining whether, on the whole, the equities weigh in favor of an accounting. As the Lanham Act dictates, every award is "subject to equitable principles" and should be determined "according to the circumstances of the case." 15 U.S.C. §1117.

Id. at 1540-1541.

In 1996, Congress passed the Federal Trademark Dilution Act which added to the Lanham Act provisions relating to dilution. *See* Pub. L. 104-98, §3. As is true in almost any amending legislation, the bill, as passed, did not address how the new cause of action was to be treated within certain sections of the existing legislative framework of the Lanham Act. To add the additional language the Congress thought necessary, the Congress passed the Trademark Amendment Act of 1999. According to the House Report, Section 3 of that bill sought:

[T]o clarify that in passing the Dilution Act, Congress did intend to allow for injunctive relief and/or damages against a defendant found to have willfully intended to engage in commercial activity that would cause dilution of a famous trademark. The Dilution Act provided:

In an action brought under the subsection, the owner of a famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of a famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principals of equity.

The language of the dilution Act presented to the President for signing did not include the necessary changes to sections 35(a) and 36 of the Trademark (Lanham) Act of 1946 as referred to in the Dilution Act. Therefore, in an attempt to clarify Congress' intent and to avoid any confusion by a court trying to interpret the statute, section three makes the appropriate changes to sections 35(a) and 36 to allow for injunctive relief and damages.

H.R. Rep. No. 106-250 (1999), LEXSEE 106 H. Rpt 250 at page 5.

Clearly, the purpose of this amendment to 35(a) was to add the language missing in the 1996 legislation relating to the dilution section. It left undisturbed the cross referenced language concerning the infringement subsection. The 1999 amendment consisted merely of striking out the words "or violation under Section 1125(a) of this title" and inserting "a violation under Section 1125(a) of this title or a willful violation under Section 1125(c) of this title." See Pub. L. 106-43, §3b. Both the legislation and the House Report, therefore, were silent as to whether the amendment should have any effect on the statute's pre-existing interpretation by the courts.

Nevertheless, the Third Circuit Court of Appeals in *Banjo Buddies v. Renosky*, 399 F.3d 171 (2005), concluded that because the revision to the statute left the term

6

"willful" only in the dilution portion of the statute, a finding of willful deception was no longer a prerequisite to an award of profits for trademark infringement but was now "an important equitable factor" in the balancing test to be undertaken by the Court in determining whether the plaintiff could be awarded defendants profits. *Banjo Buddies,* 399 F.3d 171.

Key to the *Banjo Buddies* analysis was the Court's reliance the following case law regarding statutory construction:

> We presume Congress was aware that most courts had consistently required a showing of willfulness prior to disgorgement of an infringer's profits in Lanham Act cases, despite the absence of the word "willful" in the statutory text prior to 1999. *See Scheidemann v. INS,* 83 F.3d 1517, 1525 (3d Cir. 1996). ("[W]e must presume that congress is aware of existing judicial interpretation of statutes."). By adding this word to the statute in 1999, but limiting it to §43(c) violations, Congress effectively superseded the willfulness requirement as applied to §43(a). *See Russello v. U.S.,* 464 U.S. 16, 23 (1983). ("'Where congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'")(quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).

Id. at 174.

The Second Circuit has not, to date, considered the issue. Several cases in the Southern District, usually where claims of counterfeiting have been made, have followed *Banjo Buddies* citing the same cases when discussing the issue of statutory construction. Other cases, however, notably *Mastercard Intern. Inc. v. First Nat. Bank of Omaha, Inc.,* 2004 WL 326708 (S.D.N.Y. 2004), and *Malletier v. Dooney & Bourke, Inc.,* 500 F. Supp.2d 276 (S.D.N.Y. 2007) have come to the opposite conclusion stating that *Blue*

7

*Coral's* willfulness requirement remains good law. *Dooney & Bourke* at 280. As
explained by the court in *Dooney & Bourke:*

> Because the 1999 Amendment did not alter or even address
> the language of section 1125(a) concerning infringement, or
> the language of section 1117(a) concerning monetary remedies
> for infringement, I "presume [ ] that Congress's inclusion,
> without alteration, of the language concerning Section 1125(a)
> incorporates the existing judicial interpretation of that
> language." *Mastercard,* 2004 WL 326708, at *11. In other
> words, the addition of "willful violation under section
> 1125(c)," does not indicate that it was Congress's intention to
> simultaneously *sub silentio* overturn the weight of authority
> with respect to section 1125(a).

*Dooney & Bourke* at 281.

> Moreover, at the time of the 1999 Amendment, the language
> of section 1125(c)(2) explicitly required the owner of a
> famous mark to prove a defendant's willfulness in order to
> recover monetary relief on a dilution claim. It is thus fair to
> presume that when Congress amended section 1117(a) to
> include a cross-reference to subsection 1125(c), it left both
> burdens of proof unchanged.

Id. at 282.

In reaching these conclusions, the court in both *Mastercard* and *Dooney &
Bourke* relied upon an entirely different set of cases when discussing statutory
interpretation. Whereas *Banjo Buddies* based its statutory analysis on *Russello v. U.S.,*
464 US 16,23, 104 S.Ct. 296 (1983) and *United States v. Wong Kim Bo,* 472 F.2d 720 (5th
Cir. 1972), *MasterCard* and *Dooney & Bourke* relied upon the following analysis:

> FN24. *Mastercard,* 2004 WL 326708, at *11. In assessing the
> implications of amendments to existing statutory schemes, it is
> appropriate to "assume that Congress passed each subsequent
> law with full knowledge of the existing legal landscape." *In
> re Northwest Airlines Corp.,* 483 F.3d 160, 168-69 (2d Cir.
> 2007) citing *Miles v. Apex Marine Corp., et al.,* 498 U.S. 19,
> 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990)). *Accord Calcano-
> Martinez v I.N.S.,* 232 F.3d 328, 338-39 (2d Cir.2000)
> (assuming that Congress, in amending federal immigration
> law, was aware of and had considered existing judicial

8

precedent, and stating that had Congress wished to repeal that precedent, "it knew to use more explicit language than it chose") (citation omitted); *Mastercard*, 2004 WL 326708, at *10. ("When congress employs terms that have been interpreted by the federal courts, it is presumed to know of the terms' characterization.") (citing *Director, Office of Workers' Compensation Programs v. Perini N., River Assocs.*, 459 U.S. 297, 319-20, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983)). The legislative history of the 1999 also Amendment suggests that it was an "attempt to clarify" aspects of the Federal Trademark Dilution Act of 1996. Defendants' Reply Memorandum of Law ("Def. Reply. Mem.") at 2 (citing Report of the House of Representatives on the Trademark Amendments Act of 1999 at 6). *See also 5 McCarthy on Trademarks* §30:62 (opinion that the 1999 Amendment was passed "to correct a drafting error" in the dilution provision.)

*Dooney & Bourke* at 281.

Comparing the line of cases with the cases cited in the *Banjo Buddies*, we note that both *Russello* and *Wong Kim Bo* involved the interpretation of statutory provisions that had not been amended prior to interpretation so they represented a single unaltered thought of Congress. Clearly in such a situation, the reasoning discussed in *Russello* and *Wong Kim Bo* is relevant, but that is not the case before the court.

In contrast, the cases cited in *Mastercard* and *Dooney & Bourke* all involve a fact pattern wherein the Court had to determine the effect that new legislation had upon the judicial interpretation of the provisions of older related statutory provisions. That is the fact pattern presently before the Court. Following that line of cases, the Courts in *Mastercard* and *Dooney & Bourke* assumed that Congress knew of existing judicial precedent regarding the application of Section 35 and concluded that the lack of any indication in either the bill itself or the House Report that Congress intended to overrule the *Blue Coral* decision led them to hold that Blue Coral was still good law and that the language that was grafted onto Section 35(a) of the Lanham Act to cross reference the

9

addition of a cause of action for dilution to Section 1125(a) of the statute did not overrule, *sub silentio*, the *Blue Coral* case. Because the line of cases relied upon by the Court in *Mastercard* and *Dooney & Bourke* were based on factual situations similar to the one at bar, we believe that this is the more well reasoned opinion and that this Court, as well, should find the *Blue Coral* case is still good law in the Second Circuit.

As for claims to defendant's profits based on theories other than infringement of registered trademarks (15 U.S.C. 1114) and unregistered trademarks (15 U.S.C. 1125(a)) pleaded in counts one and two of the plaintiff's complaint, the laws upon which plaintiff's remaining claims are pleaded either provide no entitlement to profits or require the same willful intention required under the law of the Second Circuit. Reviewing the claims seriatim, there can be no dispute that the plaintiff's Federal Dilution Claim requires, at 1125(c)(5)(B)(i) and (ii) that the defendant willfully intended to trade on plaintiff's rights or harm its reputation for the plaintiff to be entitled to seek defendant's profits as a remedy. The next count for common law trademark infringement and unfair competition likewise requires the plaintiff to prove the defendant acted in bad faith for it to be entitled to recover damages or the defendant's profits. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 1995) and *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997). Plaintiff's fifth count for injury to business reputation and dilution under New York Law is based on a violation of N.Y.Gen. Bus. Law section 360(l) which provides only for injunctive relief "in case of infringement of a mark registered or not registered or in the case of unfair competition." It does not provide for the award of money damages or the payment of profits. Finally, plaintiff's 6th claim for Deceptive Trade Practices under N.Y. Gen. Bus. Law 349 allows

10

for the recovery of damages only of $50 or actual damages and does not include as a remedy the disgorgement of profits.

## DISCUSSION

Applying the material facts that are not in dispute to the aforementioned law, the Court has previously held in its opinion deciding the injunction phase of this case that the defendant acted in good faith when it adopted the mark. If the Court decides, as we have argued, that the _Blue Coral_ case is still good law in the Second Circuit, that would end the matter because _Blue Coral_ requires as a prerequisite to an accounting that the defendant acted with willful deception  Obviously, a finding of good faith in adopting the mark is antithetical to willful deception.

We note, however, that plaintiff's counsel, in the meet and confer exchange that preceded the filing of this motion has asserted that the Court's findings of fact on this issue are not final findings and that he is entitled to take further discovery and present additional evidence on this issue to, in effect, change the Court's mind with regard to defendant's intent in adopting the mark.  This position runs contrary to defendant's understanding of these proceedings and casts doubt on the finality of the Court's ruling on the injunction issue.  After all, if the plaintiff may still take discovery and present further evidence on the issue of the defendant's good faith, then the defendant should be entitled to do the same on the remaining 7 factors that were decided against the defendant in the Court's earlier opinion.  However, when this case started and the Court consolidated the preliminary and permanent injunction hearing, defendant's counsel heard the Court to say that the injunction phase of the case was being consolidated so that the Court "would not have to do this twice". We took this to mean that once findings of

11

fact were made as to the 8 _Polaroid_ factors, litigation on those issues was concluded and that the plaintiff would not be getting a second bite at the apple with regard to those litigated issues and that if any appeal was to be taken, it would have had to be done within 30 days of the Court's decision on the injunction issue. Accordingly, we believe that the Court's findings on the issue of the defendant's intent in adopting the mark, as well as all of the other 7 factors are final and that those findings are now material facts that is not in dispute. Accordingly, if the Court concludes that _Blue Coral_ is good law, the defendant is entitled to summary judgment on this issue in its favor.

Even if the Court decides that the law requiring a finding of willful deception as a prerequisite to plaintiff's entitlement to an accounting for profits has been overruled sub silentio by the 1999 amendment to the section 35 (a) of the Lanham Act, defendant is still entitled to summary judgment on the issue of plaintiff's right to an accounting for profits based on a review of the factors to be considered by the Court in determining whether to order an accounting.

As noted above, _Blue Coral_, in reviewing the law regarding when a plaintiff is entitled to an accounting notes that even finding willful deceptiveness may not be sufficient to warrant an accounting for profits and that generally there are other factors to be considered, namely, (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; plaintiff's laches; and (5) plaintiff's unclean hands. As the Court explained, "[T]he District Court's discretion lies in assessing the relative importance of these factors and determining whether, as a whole, the equities weigh in favor of an accounting." _George Basch_ at 1540-1541.

12

Reviewing those factors in view of the material facts that are not in dispute, we note that while the defendant's motive in adopting the mark may no longer be a prerequisite to the right to an accounting if _Blue Coral_ has been overruled, the intent of the defendant in adopting the mark plays an important role in the decision process as "an important equitable factor" in the balancing test to be undertaken by the Court in determining whether the plaintiff could be awarded defendant's profits. See _Nike, Inc. v. Topp Brand Co. Ltd._, 2005 WL 1654859 (S.D.N.Y. 2005) at *11. In view of the Court's findings on this issue, therefore, this important factor favors the defendant since the Court has found that the defendant adopted the mark in good faith.

Turning to the remaining factors seriatim, we note the next factor to be considered is the degree of certainty that the defendant benefited from the unlawful conduct. Based on the material facts not in dispute, it is clear that the defendant did not benefit from the confusion. Plaintiff and defendant are not competitors. Plaintiff is essentially in the business of selling goods in the beauty category. Plaintiff's trademark appears on those goods and on its store and on its web site. At the present time plaintiff provides some consulting services but they are not in the same business as the defendant. Defendant is in the business of creating, developing and then manufacturing product lines in the beauty category on a contract basis for vertical specialty retailers with sales of more than $1 Billion dollars per year. Defendant's relationships with its customers are based on lengthy contracts which are negotiated by management of the customer and defendant. The defendant's trade name does not appear on the goods that are delivered to the customer and sold in their stores. At the present time, the plaintiff does not serve this

13

customer base but intends to do so in the future. Plaintiff intends to expand its consulting business and hire additional employees in about 4 or 5 years.

In view of the forgoing, plaintiff could not have lost any sales as a result of the confusion caused by the article that appeared in Women's World Daily. First, we note that defendant had no goods in stores at the time of the confusion so the confusion caused by the article could have caused no diversion of the sale of goods from the plaintiff to the defendant. Furthermore, because the parties did different types of consulting in the beauty category for different groups of purchasers, no consulting service work was diverted either. In fact, the defendant still has only the same customers it had before the article, written by defendant's second customer to showcase the start of its relationship with Robin Burns, caused the instances of confusion identified by the Court. Finally, we note that the callers who were confused were calling plaintiff either to congratulate the defendant on receiving the contract or to wish the defendant's principals congratulations. The callers were not calling to purchase goods or services and even if they were, they were calling the plaintiff because the defendant did not even have its phone number listed with directory assistance.

While the confusion created by the article is the only actual confusion identified by the Court, defendant points out that defendant's two clients did not become defendant's clients because they thought they were dealing with Aedes de Venustas. DeVenustas at *6. The first client was acquired by virtue of the client's pre-existing personal relationship with Robin Burns. The second was by virtue of a personal introduction. From the article, authored by the second client, it is clear that their relationship is also based on the reputation of Robin Burns, not the company name which

14

was buried in the article.  Because defendant has not benefited from the infringement, this factor favors defendant as well.

The next factor to be considered is the availability and adequacy of other remedies.  Defendant believes that the injunction already ordered and complied with is an adequate remedy.  Defendant is not aware of any money damages suffered by the plaintiff and if there are, they can be addressed by other than an accounting of defendant's profits, even if the defendant adopted the mark in good faith, so this factor favors defendant as well.

Because defendant does not assert that the plaintiff either has unclean hands or delayed in asserting its rights, the last relevant factor to be considered is the role of the defendant in effectuating the infringement.  Here, while the defendant did choose its own name, it was the innocent act of one of defendant's customers in publishing a press release that led to the instances of confusion that eventually led to this law suit. Therefore, while defendant chose a name, in good faith, that later turns out to cause instances of actual confusion when the name was printed in a press release prepared by another.  This is not the type of involvement that should require an accounting for profits as a remedy.  Accordingly, this factor favors defendant as well.

Considering all four relevant factors, because the defendant adopted the mark in good faith, because the defendant did not benefit from the infringement, because the injunction is an adequate remedy  and because it was the innocent act of a third party that caused the instances of confusion, even if a finding of willful deception is not a prerequisite to an accounting of defendant's profits, as a matter of equity, plaintiff should not be entitled to an accounting of defendants profits in this matter as a matter of law.

15

## CONCLUSION

In view of the foregoing analysis of the law and the applicable facts, defendant Batallure Beauty LLC is entitled to summary judgment that as a matter of law, plaintiff is not entitled to an accounting for profits either because defendant adopted the mark Venustas International in good faith or, in the alternative, because the material facts which are not in dispute show, that as a matter of law, plaintiff is not entitled to an accounting of defendant's profits.

**Respectfully submitted:**

Dated: January 25, 2008

BY: s/ Robert G. Shepherd
Robert G. Shepherd, Esq.
MATHEWS, SHEPHERD, McKAY & BRUNEAU
29 Thanet Road, Suite 201
Princeton, New Jersey 08540-3661
Email:shep@mathewslaw.com

16