UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Aedes De Venustas, Inc.,

                Plaintiff,

      v.

Venustas International, LLC,

                Defendant.

1:07-CV-04530-LTS-THK

## DEFENDANT VENUSTAS INTERNATIONAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

David Francescani (DF 9701)
Kristen McCallion (KM 5593)
FISH & RICHARDSON P.C.
153 East 53rd Street, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

*Attorneys for Defendant*

BATALLURE BEAUTY, LLC (f/k/a
VENUSTAS INTERNATIONAL, LLC)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION...................................................................................... 1

II.   SUMMARY JUDGMENT STANDARD ................................................. 3

III.  BATALLURE ACTED ONLY WITH GOOD FAITH ............................... 3

      A.    Factual Background................................................................. 3

      B.    Based On Second Circuit Precedent, There Is No Evidence Of Willful
            Deceptiveness By Batallure ................................................... 6

IV.   A FINDING OF WILLFULNESS IS A NECESSARY PREDICATE TO AN
      AWARD OF PROFITS IN THE SECOND CIRCUIT ................................ 7

      A.    The Second Circuit's Requirement of Willfulness in *George Basch* ............... 7

      B.    The 1999 Amendment to the Lanham Act Did Not Alter Second Circuit
            Precedent ............................................................................ 10

V.    CONCLUSION ....................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aedes De Venusats v. Venustas Int'l, LLC,*
    Slip Copy, 2007 WL 2597122 at *7 (S.D.N.Y. Sept. 11, 2007)................................................1

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................................................3

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)................................................................................................................3

*Champion Spark Plug Co. v. Sanders,*
    331 U.S. 125 (1947)................................................................................................................7

*Empresa Cubana del Tabaco v. Culbro Corp.,*
    399 F.3d 462 (2d Cir. 1995).....................................................................................................2

*Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.,*
    642 F.Supp. 1143 (S.D.N.Y. 1986) .........................................................................................3

*Genesee Brewing Co.. Inc. v. Stroh Brewing Co.,*
    124 F.3d 137 (2d Cir. 1997)....................................................................................................2

*George Basch Co. v. Blue Coral, Inc.,*
    968 F.2d 1532 (2d Cir. 1992) ..................................................................................... passim

*Johnson & Johnson Vision Care v. Ciba Vision Corp.,*
    U.S. Dist. LEXIS 51869,
    2006 WL 2128785 (S.D.N.Y., July 28, 2006) ........................................................................14

*Koon Chun Hing Kee Soy v. Star Mark Mgt., Inc.,*
    2007 U.S. Dist. Lexis 1404 (E.D.N.Y., Jan. 8, 2007).......................................................14, 15

*Life Servs. Supplements, Inc. v. Natural Organics, Inc.,*
    2007 U.S. Dist. LEXIS 92170 (S.D.N.Y., Dec. 17, 2007) ..........................................16, 19, 21

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    500 F. Supp. 2d 276 (S.D.N.Y. 2007).......................................................................12, 15, 16

*Mastercard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc.,*
    2004 U.S. Dist. LEXIS 2485,
    2004 WL 326708 (S.D.N.Y. 2004)...........................................................................11, 12

*Nike, Inc. v. Top Brand Co. Ltd.,*
    2005 WL 1654859 (S.D.N.Y., July 13, 2005) .............................................................. passim

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,*
    2004 U.S. Dist. LEXIS 10426,
    2004 WL 896952 (E.D.N.Y., March 26, 2004) ...................................................14

*Star Industries, Inc. v. Bacardi & Co. Ltd.,*
    412 F.3d 373 (2d Cir. 2005) .............................................................................6


**STATUTES**

15 U.S.C. § 1114 ..............................................................................................2, 10, 11

15 U.S.C. § 1117 ..............................................................................................10, 11, 16

15 U.S.C. §1125 .................................................................................................. passim

**STATE STATUTES**

N.Y. Gen. Bus. Law 349 .........................................................................................2

N.Y. Gen. Bus. Law section 360(1) ......................................................................2

**OTHER AUTHORITIES**

Fed.R.Civ.P. 56(c) ...................................................................................................3

Pub. L. 104-98, 109 Stat. 985 (enacted and effective Jan.16, 1996) .............................10

Pub. L. 106-43, 113 Stat. 218 (Aug. 5, 1999) ....................................................10

Trademark Amendments Act of 1999 (the 1999 Amendment") .....................................10

5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION, §30 (4th Ed., 2008) .............................................................7, 8, 13

## I.    INTRODUCTION

Defendant Batallure Beauty, LLC, formerly Venustas International, LLC, ("Batallure") brings this Motion for Summary Judgment that plaintiff, Aedes De Venustas ("Aedes"), is not entitled to an accounting and disgorgement of Batallure's profits as a result of Batallure's use of the VENUSTAS mark.

In its prior Opinion and Order, this Court recognized that Batallure adopted the VENUSTAS mark in good faith. *Aedes De Venusats v. Venustas Int'l, LLC*, Slip Copy, 2007 WL 2597122 at *7 (S.D.N.Y. Sept. 11, 2007) ("Defendant's uncontested due diligence efforts with its attorney support a finding of good faith on its part." *Id.*).  Further, there is no evidence of bad faith, or willful infringement or deceptiveness[1] that would lead this Court to determine that its initial finding of good faith was inaccurate.  Aedes, having no actual damages to claim, has argued that it is entitled to Batallure's profits, because a finding of willful deceptiveness is not a necessary prerequisite for a recovery of Batallure's profits.  Aedes' argument fails because, in the Second Circuit, an accounting and award of profits to a plaintiff in a trademark infringement suit requires a finding of willful deceptiveness by the infringer.

Even if this Court were to determine that a finding of willful deceptiveness is no longer an absolute prerequisite for an accounting and award of profits, the application of the undisputed material facts in this litigation to the multi-factor test historically applied in the Second Circuit to determine whether an award of profits is an equitable and appropriate resolution, establishes that, as a matter of law, Aedes is not entitled to recover Batallure's profits.

---

[1] "Willfulness", "bad faith" and "willful deceptiveness" are used interchangeably in the Second Circuit and all have synonymous meanings.

1

Lastly, a confirmation of Batallure's good faith with respect to Aedes' trademark claims would resolve all of the claims plead by Aedes (not only those claims to defendant's profits based on theories of infringement of registered trademarks (15 U.S.C. §1114) and unregistered trademarks (15 U.S.C. §1125(a)) plead in counts one and two of the complaint), because the laws upon which Aedes' remaining claims are plead either provide no entitlement to profits or require the same willful intention required under the trademark laws of the Second Circuit.

Reviewing plaintiff's claims seriatim, plaintiff's Federal Dilution Claim requires, at §1125(c)(5)(B)(i) and (ii), that the defendant willfully intended to trade on plaintiff's rights for the plaintiff to be entitled to seek Batallure's profits as a remedy. 15 U.S.C. §1125(c)(5)(B)(i) and (ii). The next count for common law trademark infringement and unfair competition likewise requires the plaintiff to prove Batallure acted in bad faith for it to be entitled to recover damages or Batallure's profits. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005) *cert. denied, Empresa Cubana del Tabaco v. General Cigar Co.*, 126 S. Ct. 2887 (U.S., 2006); *see also Genesee Brewing Co.. Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997). Plaintiff's fifth count for injury to business reputation and dilution under New York law is based on a violation of N.Y.Gen. Bus. Law section 360(1) which provides *only* for injunctive relief "in case of infringement of a mark registered or not registered or in the case of unfair competition." It does not provide for the award of money damages or the payment of profits. N.Y.Gen. Bus. Law § 360(1). Finally, plaintiff's sixth claim for Deceptive Trade Practices under N.Y. Gen. Bus. Law section 349 allows for the recovery of "actual damages or fifty dollars, whichever is greater" and does not include disgorgement of profits as a remedy. N.Y. Gen. Bus. Law § 349.

2

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The principles governing the grant of summary judgment are the same in trademark as in other actions." *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F.Supp. 1143, 1145 (S.D.N.Y. 1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There exists no material issues of fact or law on the issue of Batallure's good faith adoption of the VENUSTAS name. Indeed, there is no support for any suggestion that Batallure at any time acted in bad faith, and the law of the Second Circuit, and in particular, the position of this Court, with respect to when an award of profits is improper, appears indisputable.

## III.    BATALLURE ACTED ONLY WITH GOOD FAITH

### A.    Factual Background

Batallure's President and Chief Executive Officer, Sam Ghusson ("Ghusson"), and Chairman, Robin Burns-McNeill ("Burns") are both highly experienced beauty industry executives. Defendant's L.Civ.R. 56.1 Statement of Undisputed Material Facts ("SOUMF") at ¶1. In or around late 2005, or early 2006, Ghusson and Burns decided to form a creative development company to develop beauty, personal care, home care, and edible products to specialty retailers, who in turn would sell such products to consumers branded with the retailers' own trademarks, in the retailers' stores. SOUMF at ¶2. Around the early Spring of 2006,

3

Ghusson asked his then assistant at Victoria Secret Beauty, Mina Coccia, to provide him with a list of proposed names that she thought would be good trade names for a company in the beauty industry. SOUMF ¶3. Coccia provided Ghusson with a list of names that meant "beauty" in different languages. One of the proposed names on Coccia's list was "Venustas", which Ghusson believed meant "beauty, elegance, [and/or] loveliness" in Latin; other proposed names were "Bella" and "Amore". SOUMF at ¶4. Burns thought up a few names herself, in addition to those on Coccia's list including "The Pulse" and "Opus". SOUMF at ¶5.

On November 9, 2005, Ghusson discussed his new business venture with Mr. Allen Silk, of the law firm Stark & Stark, whom he engaged to "clear the name" of Ghusson and Burns' new corporate entity. SOUMF at ¶6. Ghusson understood that to "clear the name" meant that Silk would "make sure" "it's clear for a trademark." SOUMF at ¶7. Without yet having a properly cleared name, but wishing to establish a corporate entity under which they could start operating, Ghusson and Burns first formed "RBSG Enterprises, LLC", a name comprised of Robin Burns and Sam Ghusson's initials. SOUMF at ¶8.

Ghusson and Burns requested that Silk clear a name proposed by Burns, "The Pulse", which was Ghusson and Burns' "first choice"; however, Silk informed Ghusson that "The Pulse" was not available for Ghusson and Burns' use. SOUMF at ¶¶ 9,10.

Ghusson asked Silk to clear the name "Venustas International". SOUMF at ¶11. Silk then asked Stark and Stark paralegal, Myra Gibson to check the availabilty of VENUSTAS in New Jersey; Gibson later informed Silk that VENUSTAS was available for use. SOUMF at ¶¶ 11-13, 15. Ghusson, who was informed by Silk that the VENUSTAS name was available, requested Silk to "register… Venustas International." SOUMF at ¶ 14. On March 21, 2006,

Stark & Stark prepared and filed a Certificate of Amendment changing the name RBSG Enterprises, LLC to Venustas International, LLC.  SOUMF at ¶ 17.

Ghusson received an invoice from Stark & Stark that detailed "[p]rofessional services rendered, including corporate and trademark search for name availabilty…."  Based on his interaction with Silk and the Stark & Stark invoice, Ghusson believed that the VENUSTAS name had been cleared for use as both a corporate name and trademark, and that a trademark clearance search of the name was included in the services Silk rendered.[2]  SOUMF at ¶ 16; Declaration of Sam Ghusson ("Ghusson Decl.") at ¶6.  Believing that they had chosen a name that was free and clear for their use, Ghusson and Burns started conducting business under the Venustas International, LLC trade name.  Although, Venustas did not produce any promotional material or advertise its services, Venustas was soon engaged by two clients, one of which was approached through a personal relationship with Burns, the other of which was engaged through a personal introduction. SOUMF at ¶19, 21.  One client, Ann Taylor, arranged for an article be published in <u>Women's Wear Daily</u> touting its new endeavor with Robin Burns.  The article was entitled,  "New In Beauty: Ann Taylor Taps Robin Burns to Develop Collection".  SOUMF at ¶20.  This article resulted in the current litigation, in which this Court determined that Batallure's use of the term VENUSTAS infringed upon Aedes' rights in the VENUSTAS mark, and ordered

---

[2] Despite having invoiced Batallure for trademark clearance work, Silk testified that he was not "retained to clear any names with respect to trademark usage".  Deposition Transcript of Allen Silk ("Silk Tr.) 13:7-11, annexed to the Declaration of Robert G. Shepherd ("Shepherd Decl.") as Exhibit A.  While Silk further testified that he had two discussions with Ghusson in which he discussed his firm's fees in connection with such work, and advised Ghusson that a trademark search should be conducted, Ghusoon denies any such conversations occurred.  Silk Tr. 23:10-25:14; Ghusson Decl. at ¶11.  In particular, Ghusson never advised Silk that he did not want trademark work to be conducted, which is evidenced by the Stark & Stark "Checklist" on which the "client confirmation, re: no trademark work" task was not checked off.  Ghusson Decl. at ¶11; SOUMF at ¶18.  As previously noted, Ghusson was under the impression that the VENUSTAS mark had been cleared as a trademark, as the invoice he received from Silk's law firm indicated to him.  In any event, while much of Silk's deposition testimony is contradictory and factually questionable, it offers no evidence that would undermine Batallure's good faith intent in adopting the VENUSTAS mark.  If anything, it evidences a client unsophisticated with the intricacies of trademark law, and an attorney who failed to properly counsel his client about such intricacies and misled his client into believing that trademark clearance work had been conducted.

Batallure to cease any further use of the term VENUSTAS. *Aedes De Venustas v. Venustas*,

2007 WL 2597122 at *8. Batallure unhesitatingly complied with this Court's Order, and is now

known as Batallure Beauty, LLC. SOUMF at ¶23; Ghusson Decl. at ¶13.

### B.     Based On Second Circuit Precedent, There Is No Evidence Of Willful Deceptiveness By Batallure

A defendant has acted willfully for trademark infringement purposes if he or she

"intended to deceive the public concerning the origin of the goods." *George Basch Co. v. Blue*

*Coral, Inc.*, 968 F.2d 1532, 1540-41 (2d Cir. 1992) *cert. denied*, 506 U.S. 991 (1992).

Additionally, the Second Circuit has recognized the distinction between the "innocent competitor

who inadvertently crosses the line between a 'free ride' and liability" and one who engages in

"intentionally fraudulent conduct" *Id.* at 1541. "The standard for willfulness is 'whether the

defendant had knowledge that [its] conduct represented infringement or perhaps recklessly

disregarded the possibility.'" *Nike, Inc. v. Top Brand Co. Ltd.*, 2005 WL 1654859 at *6

(S.D.N.Y. July 13, 2005) citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir.1999)

(quoting *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993)).

Further, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good

will and reputation of a senior user by adopting the mark with the intent to sow confusion

between the two companies' products. Selection of a mark that reflects the product's

characteristics, request for a trademark search and reliance on the advice of counsel are factors

that support a finding of good faith." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373

(2d Cir. 2005), *cert. denied*, 126 S. Ct. 1570 (U.S. 2006) (internal quotations omitted) (quoting

*Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir.1991).).

In this case, there is not a scintilla of evidence that Batallure proceeded with anything other than good faith in adopting VENUSTAS as a trade name. There is no indication that Batallure ever intended to deceive the public and at no time during its adoption of the mark did Batallure ever assume its actions may have been infringing. The undisputed facts make clear that Batallure sought an attorney's advice regarding the availability of proposed trade names, relied on that attorney's advice, and received an invoice for the trademark clearance work conducted in connection with "clearing" the VENUSTAS mark. SOUMF at ¶¶ 6-17. Without doubt, there are simply no issues of material fact that would preclude Batallure from being awarded summary judgment on this issue.

## IV.   A FINDING OF WILLFULNESS IS A NECESSARY PREDICATE TO AN AWARD OF PROFITS IN THE SECOND CIRCUIT

### A.    The Second Circuit's Requirement of Willfulness in *George Basch*

The United States Supreme Court's opinion in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) is often cited for the proposition that an accounting of an infringer's profits is not automatically granted upon a showing of infringement, and that an injunction alone may satisfy the equities. *See*, 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §30:61, 30-140 (4th ed., 2008) ("McCarthy").

In conformity with this principle, the Second Circuit, in *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d. 1532 (2d Cir. 1992), held that a finding of a defendant's willful deceptiveness is a prerequisite for awarding profits in federal trademark infringement suits. *Id.* at 1534. ("[W]e hold that in order to justify an award of profits, a plaintiff must establish that the defendant engaged in willful deception." *Id.*) The Court identified the <u>only</u> three instances in which an accounting of a defendant's profits would be available: "if the 'defendant is unjustly enriched, if

the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again.'" *Id.* at 1537; citing *Burndy Corp. v. Teledyne Industries, Inc.*, 748 F2.d 767, 772 (2d Cir. 1874) (quoting *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970).). "[T]hese three grounds are 'three categorically distinct rationales"; <u>if there is willful deceptiveness</u>, the district court retains discretion to award profits under one of these rationales." McCarthy §30:59, 30-137 (emphasis added).

The court explained that the requirement of willful deception is necessary "[s]o is to limit what may be an undue windfall to the plaintiff, and prevent the potentially inequitable treatment of an "innocent" or "good faith" infringer." *Id.* at 1540. The court further explained:

> Having stated that a finding of willful deceptiveness is necessary in order to warrant an accounting for profits, we note that it may not be sufficient. While under certain circumstances, the egregiousness of the fraud may, of its own, justify an accounting, generally, there are other factors to be considered. Among these are such familiar concerns as: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiffs laches; and (5) plaintiff's unclean hands. The district court's discretion lies in assessing the relative importance of these factors and determining whether, on the whole, the equities weigh in favor of an accounting. As the Lanham Act dictates, every award is "subject to equitable principles" and should be determined "according to the circumstances of the case."

*Id.* at 1540-1541 (internal citations omitted).

Applying analyzing the facts in this case to the standards in *Basch*,[3] it is apparent that an award of profits in this case would be an inappropriate remedy because: (1) Batallure has not been enriched (unjustly or otherwise) as a result of its adoption and/or use of the VENUSTAS trade name, (2) the plaintiff has suffered no damages, and (3) Batallure is not a willful infringer.

---

[3] (1) If the defendant is unjustly enriched, (2) if the plaintiff sustained damages from the infringement, or (3) if the accounting is necessary to deter a willful infringer from doing so again. *George Basch* at 1537.

Accordingly, to award profits in this case would contradict what the Second Circuit hoped to prevent—the potentially inequitable treatment of an "innocent" or "good faith" infringer.

Further, analyzing the five equitable factors in *Basch* in connection with the undisputed facts of this case also makes it clear that an award of profits is a most inequitable remedy. "([T]he District Court's discretion lies in assessing the relative importance of these factors and determining whether, as a whole, the equities weigh in favor of an accounting." *Basch* at 1540-1541.). The factors are:

(1) The degree of certainty that the defendant benefited from the unlawful conduct – Facts revealed during discovery indicate that Batallure did not in any way benefit from its use of the VENUSTAS name. While using the VENUSTAS name, Batallure had been engaged by only two clients, one of which was approached through a personal relationship with Burns, the other of which was engaged through a personal introduction. The title of the article published in Women's Wear Daily ("New In Beauty: Ann Taylor Taps Robin Burns to Develop Collection") illustrates that Batallure's engagement by clients was largely due to the reputation of Robin Burns, not the VENUSTAS company name. Further, Batallure had not produced any type of promotional material to solicit new business, nor had it advertised its services or actively sought clients; its relationships with clients were based on personal relationships and reputation within the industry. Indeed, there is no evidence that Batallure ever used VENUSTAS as a trademark. SOUMF Nos. 19, 20, 21, 22, 23. This factor favors Batallure.

(2) Availability and adequacy of other remedies - The permanent injunction granted by the Court is a sufficiently adequate and equitable remedy to Plaintiff, particularly in light of the fact that Aedes has not suffered any damages. This factor favors Batallure.

(3) <u>The role of a particular defendant in effectuating the infringement</u> – Facts revealed during discovery indicate only that Batallure had good faith intentions in adopting the VENUSTAS mark. Batallure engaged an attorney to provide counseling on the "clearing" of the mark; it only chose to adopt VENUSTAS after being notified by Mr. Silk that the mark was "available" for use. SOUMF Nos. 6, 7, 11, 12, 13, 14, 16.  This factor also favors Batallure.

(4) <u>Plaintiff's laches</u>, and (5) <u>unclean hands</u> are not applicable.

Using *Basch* as a guide, and considering all relevant factors, there is no basis for plaintiff to claim it is entitled to an accounting of Batallure's profits.

**B.      The 1999 Amendment to the Lanham Act Did Not Alter Second Circuit Precedent**

Monetary remedies for trademark infringement of registered (infringement claims under 15 U.S.C. §1114, or section 32) and unregistered marks (infringement claims under 15 U.S.C. §1125, or section 43) are set forth in 15 U.S.C. §1117, or section 35 of the Lanham Act.

In 1996, Congress passed the Federal Trademark Dilution Act (the "Dilution Act") which added text to provisions in the Lanham Act relating only to *dilution*. See Pub. L. 104-98, 109 Stat. 985 (enacted and effective Jan.16, 1996).  To add additional language to the Dilution Act Congress passed the Trademark Amendments Act of 1999 (the "1999 Amendment").  Pub. L. 106-43, 113 Stat. 218 (Aug. 5, 1999).

Prior to the 1999 Amendment, §1117(a) read as follows:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

The 1999 Amendment amended §1117(a) by adding the phrase: "a willful violation under section 1125(c)," in order to prohibit the dilution of famous marks. Accordingly, as currently drafted (as a result of the 1999 Amendment), §1117(a) reads as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. §1117(a), section 35(a) of the Lanham Act (emphasis added)(underlined text indicates that added per the 1999 Amendment).

The 1999 Amendment had absolutely no affect on a plaintiff's monetary entitlement due to a violation of 15 U.S.C. §1125(a) (section 43(a)) and/or 15 U.S.C. §1114(a) (section 32(a)) (both plead by plaintiff). What the 1999 Amendment did was to make clear that willfulness is an absolute requirement of an award of profits on a claim made under 15 U.S.C. §1125(c) (section 43(c), trademark dilution).[4] The 1999 Amendment did not in any way alter the equitable standards set forth and recognized by the Second Circuit with respect to its requirement of willful deceptiveness for profit awards in trademark infringement actions.

This was recognized in *Mastercard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc.,* 2004 U.S. Dist. LEXIS 2485, No. 02 Civ. 3691 (DLC), 03 Civ. 707 (DLC), 2004 WL 326708 (S.D.N.Y. Feb. 23, 2004). The *Mastercard* court noted that Congress' choice not to alter the language regarding section §1125(a) indicated its intent to leave existing law undisturbed, and accordingly, held that the 1999 Amendment did not alter the Second Circuit's precedent requiring a willful violation of section 43(a). *Mastercard,* 2004 WL 326708, at *11. ("When

---

[4] Accordingly, Aedes is not entitled to profits under its Section 43(c) (15 U.S.C. § 1125(c)) claim either. *See, supra* p.2.

11

Congress amended Section 35(a) of the Lanham Act in 1999 to include a 'willful violation under §1125(c),' it left unchanged the prior language of the statute providing a remedy upon the establishment of 'a violation under section §1125(a). It may be presumed that Congress's inclusion, without alteration, of the language concerning Section §1125(a) incorporates the existing judicial interpretation of that language.'" *Id.*) *Mastercard* determined that the "1999 Amendment did not effect this Circuit's long-standing precedent of limiting profit awards in trademark infringement actions to plaintiffs who establish that the infringement was committed with willful intent." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276, 280 n.22 (S.D.N.Y. 2007) .

However, in *Nike Inc. v. Top Brand Co.*,  No. 00 Civ. 8179, 2005 U.S. Dist. LEXIS 42374, 2005 WL 1654859 (S.D.N.Y. July 13, 2005), the district court held that Congress' addition of the term 'willful' in relation to §1125(c), but not §1125(a), indicates Congress' silent rejection of willfulness as a prerequisite to recovering profits for infringement. *Nike*, 2005 WL 1654859 at *10. ("Without reason to believe that Congress intended to preserve the Second Circuit rule that preceded the 1999 amendment, the plain language of the statute should govern." *Id.* at *9-10.) Relying on prior Third and Fifth Circuit decisions,[5] the court in *Nike* concluded that the 1999 Amendment to the Lanham Act superseded the Second Circuit's willfulness

---

[5] *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 347-49 (5th Cir. 2003) and *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171, 174 (3d Cir. 2005).  In *Quick Technologies* the Fifth Circuit declined to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits, but acknowledged that willful infringement "is an important factor which must be considered when determining whether an accounting of profits is appropriate" *Id.* at 347-49 (emphasis added).  The Fifth Circuit adopted a multi-factor test to determine whether an award of profits is appropriate in a trademark infringement case:  "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Id.* at 349.  In *Banjo Buddies,* the Third Circuit recognized that the 1999 amendment to 15 U.S.C. § 1117(a) has "superseded" the "bright-line willfulness requirement" that had existed in that Circuit, and held that "willfulness is an important equitable factor but not a prerequisite" to an award of profits for trademark infringement. *Banjo Buddies*, 399 F.3d at 171.  The Third Circuit embraced the Fifth Circuit's multi-factor test. *Id.* at 175-76.

requirement for the recovery of profits in section §1125(a) actions. ("[A]lthough willfulness is not a prerequisite to the recovery of profits for infringement and counterfeiting, it continues to function as an equitable consideration under the Fifth Circuit's multi-factor test." *Nike*, 2005 WL 1654859 at *12 (emphasis added).)[6]   The *Nike* decision did not eliminate the assessment of a defendant's intent or willfulness; rather, it reiterated that courts are to continue to uphold willfulness as an equitable consideration in an analysis of whether a recovery of profits is proper.

Not surprisingly, the view shared by the Third and Fifth Circuits has been dismissed by leading trademark authorities. For example, as stated by McCarthy: "[t]his reading of Congressional intent is inaccurate. In fact, the 1999 amendment of Lanham Act §35(a) was not intended to change the law by removing willfulness as a requirement for an award of profits in a classic infringement case, but rather was meant to correct a drafting error when Congress intended to limit the recovery of damages in dilution cases (and only dilution cases) to instances of a 'willful violation.' The courts have leveraged this statutory change beyond its intended scope to adjust the equities in ordinary infringement cases in order to make it easier for a trademark owner to recover profits." McCarthy §30:62, 30-144.[7]

---

[6] Under the *Nike* standard, factors assessing a defendant's actions still need to be weighed in a multi-factor test (adopted from the Fifth and Third Circuit) in an effort to achieve an equitable result. Accordingly, whether this Court is influenced by the *Nike* decision or not, bad faith and/or willfulness (or, in this case, lack thereof) is still a relevant factor in deciding whether Aedes is entitled to an award of Batallure's profits. It is worth noting that *Nike's* holding became a moot point because the plaintiff chose to recover statutory damages as opposed to infringer's profits. See, *Nike, Inc. v. Top Brand Co.*, 2006 U.S. Dist. LEXIS 76540.

[7] Many courts in this district agree with McCarthy.. *See, Merch. Media, LLC v. H.S.M. Int'l*, No. 05 Civ. 2817(JES), 2006 WL 3479022, at 11 (S.D.N.Y. Nov. 30, 2006); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 253 (S.D.N.Y. 2004); *Mele v. Davidson & Assocs., Inc.*, No. 02-CV-0450E(F), 2004 WL 2285111, at 13 (W.D.N.Y. Oct. 7, 2004); *Ahava (USA), Inc. v. J.W.G., Ltd.*, 286 F. Supp. 2d 321, 324 (S.D.N.Y. 2003); *Cache, Inc. v. M.Z. Berger & Co.*, No. 99 Civ. 12320(JGK), 2001 WL 38283, at 14-15 (S.D.N.Y. Jan. 16, 2001); *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 Civ. 5408(THK), 2001 WL 1456577, at 10 (S.D.N.Y. Nov. 16, 2001); *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 136, 141 (S.D.N.Y. 2000); *Am. Auto. Ass'n v. AAA Auto. Club of Queens, Inc.*, No. 97 CV 1180 SJ, 1999 WL 97918, at 10 (E.D.N.Y. Feb. 8, 1999); and *Hard Rock Cafe Int'l (USA) Inc. v. Morton*, No. 97 Civ. 9483(RPP), 1999 WL 717995, at 30 (S.D.N.Y. Sept. 9, 1999).

Similarly, the *Nike* court's attempt to diminish the necessity of willfulness has not been adopted in most district court decisions,[8] while the Second Circuit's *Basch* decision, which remains precedent today, is repeatedly cited and recognized as authority on this issue. This Court's decision in *Johnson & Johnson Vision Care v. Ciba Vision Corp.*, No. 04 Civ. 7369, 2006 U.S. Dist. LEXIS 51869, 2006 WL 2128785 (S.D.N.Y. July 28, 2006)(Swain, J.) is one such example. While this Court explained in a footnote that "Congress' 1999 amendment… raises a question as to the continuing viability of the Second Circuit precedent requiring a showing of willfulness as a predicate to recovery" (citing the conflicting decisions of *Nike* and *Mastercard*) (2006 U.S. Dist. LEXIS 51869 at *11 n.2.) it stated that "Second Circuit case law holds that, before a plaintiff can receive an accounting of a defendant's profits on this basis, the plaintiff must show willful conduct or bad faith on the part of the defendant in connection with the Lanham Act violation as well as "a general right to damages." 2006 U.S. Dist. LEXIS 51869 at *11 (emphasis added), citing *George Basch,* at 1539-40.

More recently, in *Koon Chun Hing Kee Soy v. Star Mark Mgt., Inc.*, 2007 U.S. Dist. Lexis 1404 (E.D.N.Y. Jan. 8, 2007) (Bianco, J.), an Eastern District court explained, "[u]nder existing Second Circuit precedent, before the infringer's profits are recoverable by way of an accounting, the plaintiff must prove that an infringer acted with willful deception and establish a general right to damages." *Koon Chun*, 2007 U.S. Dist. Lexis 1404 at *41, citing *George Basch* at 1539-40.[9] Further, the *Koon Chun* court cited to a prior Eastern District court decision, *Pfizer,*

---

[8] We have found only one case in support of *Nike*: *Cartier v. Faber* 512 F. Supp. 2d 165 (S.D.N.Y. September 26, 2007), in which the court declared that the "the plain language of the statute… indicates that willfulness is not a prerequisite for an award of damages under § 1125(a)," citing the *Nike* decision as well as the Third Circuit's *Banjo Buddies* decision. *Id.* at 172-73. (As of the writing of this memo there are no subsequent decisions that have cited the *Cartier* decision as authority on this issue, with the exception of *Life Services Supplements,* discussed herein, which criticized it.)

[9] The *Koon Chun* court acknowledged the *Nike* decision, and explained the confusion with respect to courts' interpretations of the 1999 Amendment, but ultimately explained that the particular "issue was not briefed by the

*Inc. v. Y2K Shipping & Trading, Inc.,* No. 00 Civ. 5304 (SJ), 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, (E.D.N.Y. March 26, 2004) in which the court, citing *George Bash* as precedent, held that a finding of defendant's willful deceptiveness is a prerequisite for awarding profits. *Koon Chun,* 2007 U.S. Dist. LEXIS 1404 at *42 n.17.

The decision in *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 500 F. Supp. 2d 276 (S.D.N.Y. 2007)(Scheindlin, J.) in which Louis Vuitton sued handbag competitor Dooney & Bourke for trademark infringement, dilution and unfair competition claims under various New York state and federal laws, is also worth noting. At the request of the Court, the parties argued the issue of whether Louis Vuitton had to prove that Dooney & Bourke acted with willful deceit in order to recover an award of Dooney & Bourke's profits. The Court answered this question in the affirmative, concluding that a finding of willfulness was necessary to an award of infringer's profits. *Louis Vuitton* at 280-82. ("The 1999 Amendment, however, did not alter or even address the relevant subsections of the federal trademark infringement statute [section 1125(a)]. It also left section 1117(a)'s cross-reference to section 1125(a) undisturbed. Thus, the pre-existing law in this Circuit requiring willful intent as a prerequisite for awarding profits remains sound and controlling." *Id.* at 280.)

In analyzing whether the Second Circuit's willfulness requirement remains good law, the court in *Louis Vuitton* stated:

> At the time of the 1999 Amendment to section *1117(a)*, the "dominant view" amongst courts, including this Circuit, embraced a finding of willfulness as a prerequisite to awarding profits in trademark infringement actions. Because the 1999 Amendment did not alter or even address the language of *section 1125(a)* concerning infringement, or the language of *section 1117(a)* concerning monetary remedies for infringement, I presume that Congress's inclusion, without alteration, of the language concerning *Section 1125(a)* incorporates the existing judicial interpretation of that language. In other words, the addition of "willful violation under *section 1125(c),*"

---

parties and need not be decided at this juncture because . . . the Court is referring the issue of damages to [the] Magistrate. *Koon Chun,* 2007 U.S. Dist. LEXIS 1404 at *42 n.17.

> does not indicate that it was Congress's intention to simultaneously *sub silentio* overturn the weight of authority with respect to *section 1125(a)*.

*Louis Vuitton* at 281 (emphasis added).

The court categorically rejected Louis Vuitton's argument that a finding of willfulness is not necessary for an award of profits in the Second Circuit:

> Louis Vuitton surmises that Congress's "deliberate insertion of the phrase 'willful violation'" with respect to dilution claims, and "omission" of similar language with respect to infringement claims "reflects Congress'[s] intent to *establish a higher burden of proof for a dilution claim and to eliminate any such burden of proof in an infringement claim.* For the reasons stated above, this argument is not persuasive. Moreover, at the time of the 1999 Amendment, the language of *section 1125(c)(2)* explicitly required the owner of a famous mark to prove a defendant's willfulness in order to recover monetary relief on a dilution claim. It is thus fair to presume that when Congress amended *section 1117(a)* to include a cross-reference to subsection *1125(c)*, it left both burdens of proof unchanged.

*Louis Vuitton* at 282.

Again, the Second Circuit's decision in *George Basch* was noted as authority. The court in *Louis Vuitton* expressly stated that the "Second Circuit has not revisited its holding in *Blue Coral* [*George Basch*] since the 1999 Amendment." *Louis Vuitton* at 279. This decision (along with all of the other District Court decisions that simply disregard *Nike*) is an express acknowledgment that the Second Circuit's decision in *George Basch*, and its requirement of a finding of willfulness in order to award of profits, continues to be the authority on the matter.

Finally, in *Life Servs. Supplements, Inc. v. Natural Organics, Inc.*, 2007 U.S. Dist. LEXIS 92170 (S.D.N.Y. Dec. 17, 2007)(Stein, J.), plaintiff Life Services asked the court to reconsider the issue of whether a plaintiff who prevails on a false designation of origin claim under the Lanham Act, 15 U.S.C. § 1125(a), may recover profits pursuant to 15 U.S.C. § 1117(a) from a defendant who did not engage in "willful deception." *Id.* at *6. The court refused. ("While courts in this district have expressed conflicting views on this issue, this Court finds that absent authority to the contrary from the U.S. Court of Appeals for the Second Circuit, profits cannot be awarded in false designation of origin suits unless willful deception is established." *Id.*)

In a rather lengthy quote, which is annexed hereto as Appendix A, the court provided an informative summary of the cases discussed herein.  The *Life Servs. Supplements* decision is indicative of where courts in this district stand today on the issue of willfulness—i.e., a finding of willfulness, per the *George Basch* decision, continues to be a mandatory requirement prior to an award of an infringer's profits in a trademark infringement suit.

## V.    CONCLUSION

The law in this Circuit concerning an award of profits in trademark infringement actions is governed by *Basch*, which requires a finding of willful deceit as an absolute prerequisite for an accounting and award of a defendant's profits.  Because the Court has already determined that Batallure adopted the VENUSTAS mark in good faith, and the undisputed material facts of this case reveal that Batallure acted only in good faith,  plaintiff is not entitled to an accounting and disgorgement of Batallure's profits, and Batallure is entitled to summary judgment on this issue.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  May 23, 2008

By: _____

David Francescani (DF 9701)
Kristen McCallion (KM 5593)

17

FISH & RICHARDSON P.C.
153 East 53rd Street, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

*Attorneys for Defendant*

BATALLURE BEAUTY, LLC (f/k/a
VENUSTAS INTERNATIONAL, LLC)

18

**APPENDIX A**

The following quote is cited from *Life Servs. Supplements, Inc. v. Natural Organics, Inc.*, 2007 U.S. Dist. LEXIS 92170 (S.D.N.Y. Dec. 17, 2007)(Stein, J.):

> While this Court is mindful of the case law that supports plaintiffs' position, it nonetheless believes that the 1999 amendments did not, in fact, eviscerate the Second Circuit's willfulness requirement for an award of profits in false designation of origin suits. Specifically, the plain text of the statute, the structural impact of the 1999 amendments on the Lanham Act, the language of the law authorizing the 1999 amendments, other case law, and the relevant legislative history strongly suggest that these amendments dealt exclusively with the standard for recovery in trademark dilution cases and not remedies for other Lanham Act violations, such as the false designation of origin claim at issue here. Moreover, absent an express, or at least clear, indication that Congress intended to abrogate the Second Circuit's willfulness requirement through the 1999 amendments, that requirement remains binding precedent on this Court.[10]
>
> First, district judges in this district have concluded that the Second Circuit's willfulness requirement has not been superseded by the 1999 amendments on the ground that those amendments modified standards for recovery in trademark dilution actions only. In *MasterCard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc....* for example, Judge Denise L. Cote concluded that the 1999 amendments did not alter the Second Circuit's willfulness requirement for the recovery of profits in trademark infringement suits. Like Judge Wood (in *Nike*), Judge Cote considered it "appropriate to assume that Congress is aware of existing law when it passes or amends legislation," and construed Congress's insertion of a willfulness requirement for section 1125(c) violations--but not for section 1125(a)--as a ratification of prior circuit precedent on willfulness, rather than an abrogation: "It may be presumed that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language."
>
> Judge Cote determined that the 1999 amendments simply restricted the availability of any recovery -- whether damages, profits or costs -- in section 1125(c) trademark dilution actions only to cases where the statutory violation was willful, but had no effect whatsoever on the available remedies for section 1125(a) claims. Noting that "the Second Circuit permits the recovery of damages" -- but not profits -- "when a plaintiff is able to prove actual confusion but not intentional deception" in section 1125(a) actions, Judge Cote explained that "the inclusion of the 'willful' modifier before 'section 1125(c)' in the 1999 Amendment provides a more stringent standard for recovery than is available for a violation under Section 1125(a)." Thus, the 1999 amendments addressed only the question of when a plaintiff can obtain a recovery in section 1125(c) actions-i.e., only on a showing of willfulness-and had no impact on the preexisting standards governing the recovery of profits or damages in section 1125(a) actions.
>
> A similar conclusion was reached in *Louis Vuitton Malletier v. Dooney & Bourke, Inc....* where Judge Shira A. Scheindlin emphasized that "the 1999 Amendment did not alter or even address the language of section 1125(a) concerning infringement [as opposed to the language of section 1125(c) concerning dilution], or the language of

---

[10] *Id.* at *11-12.

section 1117(a) concerning monetary remedies for infringement [as opposed to remedies for dilution]." Instead, the 1999 amendments to section 1117(a) brought the language of that section -- dealing with Lanham Act remedies -- in line with section 1125(c), which already "required the owner of a famous mark to prove a defendant's willfulness in order to recover monetary relief on a dilution claim." Accordingly, Judge Scheindlin concluded that "the addition of 'willful violation under section 1125(c),' does not indicate that it was Congress's intention to simultaneously sub silentio overturn the weight of authority with respect to section 1125(a)."

The Court finds this line of reasoning persuasive. By their literal terms, the 1999 amendments modified the standard of recovery in Lanham Act actions only with respect to trademark dilution claims. The amendments did not directly alter any other aspect of the remedies provision of the Lanham Act.

On its face, then, the amended statute restricts monetary awards in dilution cases to willful violations, but leaves the appropriate remedy for other Lanham Act violations "subject to the principles of equity," 15 U.S.C. § 1117(a), just as it was prior to the 1999 amendments. On this point, Judge Scheindlin's observation that the amendments simply reconciled the remedies section of the Lanham Act with the substantive provision outlawing trademark dilution, 15 U.S.C. § 1125(c), is particularly compelling. See 15 U.S.C. § 1125(c) (requiring court to find that defendant "willfully intended to trade on the recognition of the famous mark; or . . . willfully intended to harm the reputation of the famous mark" in order for plaintiff to obtain monetary relief). Accordingly, the Court declines to read into the amendment a broader purpose beyond clarifying the standard for recovery in trademark dilution cases.

In addition, the legislative history of the 1999 amendments further supports the view that these amendments addressed trademark dilution only and were not intended to impact other Lanham Act violations. At the most rudimentary level, the section of the bill containing the relevant amendment is entitled "Remedies in Cases of Dilution of Famous Trademarks," Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 218 (emphasis added), which makes it patent that the focus of the legislation was trademark dilution, not infringement.

Moreover, the Congressional Record indicates that Congressman Elijah E. Cummings -- one of the two representatives to speak during the debate on this legislation -- declaimed: This legislation is a necessary follow-up to the Federal Trademark Dilution Act of 1995, which was enacted last Congress and which gave a Federal cause of action to holders of famous trademarks for dilution. The bill before us today is necessary to clear up certain issues in the interpretation of the dilution act which the Federal courts have grappled with since its enactment.

The Court has found no legislative history suggesting that Congress intended to modify the standards for an award of profits for trademark infringement or false designation of origin through the 1999 amendments.

In addition, the Fifth Circuit's ruling in Quick Techs. provides scant guidance to this Court on whether the 1999 amendments abrogated the Second Circuit's willfulness requirement for an award of profits because the Fifth Circuit never adopted a willfulness standard in the first instance. In fact, the Fifth Circuit had adopted its multi-factor test, which included willfulness as one factor among many, prior to the enactment of the 1999 amendments. Whereas the Second Circuit gave effect to the directive in section 1117(a) that "the principles of equity" govern Lanham Act remedies by imposing a bright-line rule -- i.e., willfulness -- for an award of profits,

the Fifth Circuit construed section 1117(a) to mandate a multi-factor standard. Thus, the Second and Fifth Circuits construed section 1117(a) differently prior to the enactment of the 1999 amendments. When the Quick Techs. court considered the impact of the 1999 amendments, therefore, it was not required to determine whether the willfulness provision superseded its precedents because the Fifth Circuit had already rejected a bright-line rule centered on willfulness. Accordingly, Quick Techs. provides little guidance to this Court.

Finally, jurisprudential considerations counsel in favor of this Court recognizing the continued validity of the willfulness standard. The law of this circuit is that profits cannot be awarded under the Lanham Act absent a showing of willfulness. While it is true that the Second Circuit has not revisited that question since the enactment of the 1999 amendments, the 1999 amendments do not directly contradict that precedent; at the very most, they do so only by implication. Therefore, to the extent that the impact of the 1999 amendments is ambiguous, this Court should follow Second Circuit precedent, and it does so here.

For the reasons set forth above, a plaintiff must prove willfulness in order to recover profits in false designation of origin actions brought in the Second Circuit pursuant to the Lanham Act.

*Life Servs. Supplements*, 2007 U.S. Dist. LEXIS 92170 at *12-19.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing documents:

1. Notice of Motion for Defendant's Partial Summary Judgment;

2. Defendant's Motion for Partial Summary Judgment;

3. Defendant Venustas International, LLC's Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment;

4. Statement Of Undisputed Material Facts Pursuant To Local Civil Rule 56.1;

5. Declaration of Kristen McCallion Esq.;

6. Declaration of Sam Ghusson;

7. Declaration of Robert G. Shepherd, Esq. and

8. Declaration of Denis McNeill.

were served on this 22nd day of May, 2008, by sending copies by electronic mail upon:

Joseph M. Heppt, Esq.
Law Offices of Joseph M. Heppt
260 Madison Avenue
21st Floor
New York, New York 10016

jmheppt@hepptlaw.com

_____
Luke Sheldon

30417508.doc

22