Joseph M. Heppt, Esq. (JH-4974)
LAW OFFICES OF JOSEPH M. HEPPT
260 Madison Avenue
New York, NY 10016
Tel: (212) 973-0839

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEDES DE VENUSTAS, INC., | |
| Plaintiff, | 07 Civ. 04530 (LTS)(THK) |
| vs. | |
| VENUSTAS INTERNATIONAL, LLC, | |
| Defendant. | Document Electronically Filed |

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE ISSUE OF MONETARY RELIEF

LAW OFFICES OF JOSEPH M. HEPPT
260 Madison Avenue
New York, NY 10016
(212) 973-0839

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **Preliminary Statement** ........................................................................ 5

II.   **Statement of Facts** ............................................................................. 6

III.  **Summary Judgment Standard** ............................................................. 9

  A.  A Court May Not Assess Credibility On A Motion For Summary Judgment ........ 9

IV.   **Plaintiff is Seeking Defendant's Profits From the Infringing Conduct Plus Costs and Attorneys Fees** ..................................................................... 10

V.    **Willfulness is no Longer a Requirement for an Award of Profits** .................. 11

VI.   **Defendant Willfully Infringed on Plaintiff's Registered Trademark When it Adopted the Name Venustas International** ........................................... 13

VII.  **Plaintiff is Entitled to an Accounting of Defendant's Profit Under the Equitable Factors Listed in *George*** ..................................................... 16

VIII. **Conclusion** ........................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjusters International, Inc. v. Public Adjusters International, Inc.*, Not Reported in F. Supp. 1996 WL 492905 at *16 (N.D.N.Y.) .................................................................. 16

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir.2007) 9

*American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315 (2d Cir.2006)................................................................................................................ 10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986)......................................................................................................................... 9

*Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d Cir. 2005) .................................. 12

*Carlton v. Mystic Transportation Inc.,* 202 F.3d 129, 133 (2d Cir.2000) ......................... 9

*Cartier v. Aaron Faber, Inc.*, 512 F. Supp.2d. 165 (S.D.N.Y. 2007) ................................ 12

*Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990)............................... 9

*De Venustas v. Venustas Intern., LLC,* Slip Copy, 2007 WL 2597122 (S.D.N.Y.) ..... 5, 16

*de Venustas v. Venustas Intern., LLC*, Slip Copy, 2008 WL 619028 at *3 (S.D.N.Y.) ..... 6

*George Basch Co. Inc. v. Blue Coral, Inc.,* 968 F.2d 1532 (2d Cir. 1992) .......... 11, 12, 16

*International Star Class Yacht Racing Ass'n ("ISCYRA") v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996)......................................................................................... 17

*McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006)....................................................... 9

*Nike, Inc v. Top Brand Co., Ltd.,* 2005 WL 1654859 (S.D.N.Y. 2005) .................... 12, 13

*Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 347-48 (5th Cir. 2002)11, 12

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 147 L.Ed.2d 105, 120 S.Ct. 2097 (2000)........................................................................................................ 9

*SecuraComm Consulting, Inc. v. Securacom, Inc.,* 166 F.3d 182, 190 (3d Cir.1999)...... 12

*Synergistic Intern., LLC v. Korman,* 470 F.3d 162 (4th Cir. 2006).................................. 12

*Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.,* 409 F. Supp.2d 1131, 1136

    (D.Minn. 2005) ........................................................................................................ 12

**Statutes**

15 U.S.C. § 11 l7(a) ...................................................................................................... 10

Fed.R.Civ.P. 56(c) ......................................................................................................... 8

Section 35 of the Lanham Act, 15 U.S.C. § 1117............................................................. 9

I.    **Preliminary Statement**

  The Defendant initially moved this Court for summary judgment on the question of damages based in large part on the Court's prior ruling when, in applying the *Polaroid* factors, it found that the Defendant had acted in good faith when choosing its name.  In the Court's September 11, 2007 Opinion and Order, this Court held that, "Defendant's uncontested due diligence efforts with its attorneys support a finding of good faith on its part, and thus this factor weighs in favor of the Defendant." *De Venustas v. Venustas Intern., LLC,* Slip Copy, 2007 WL 2597122 at *7 (S.D.N.Y.)

  After the Defendant served its motion papers, the Plaintiff subpoenaed the attorney that advised Defendant on the selection of its name, Allen Silk, for documents and deposition testimony on the question of what advice he and his firm had given to the Defendant in connection with the selection of the Defendant's name. Defendant was notified of the subpoena and provided a copy of the subpoena prior to its service on Mr. Silk.  The Defendant then sought a protective order quashing the subpoena on the grounds that the issue of whether the Defendant had acted in good faith or bad faith had been ruled on by the Court and that, therefore, the Plaintiff was barred from seeking additional discovery on that issue.

  On March 5, 2008, this Court denied the Defendant's motion for a protective order and permitted the Plaintiff to proceed with discovery on the question of Defendant's intent when it selected its name. In its March 5 Order, this Court held:

> To the extent that the law of the case doctrine would be applicable to give preclusive effect to a single *Polaroid* factor finding made during the injunctive relief stage of a proceeding on a later statutory damages claim, the Court exercises its discretion not to apply the doctrine.
>
> Furthermore, Defendant has proffered no evidence that it would suffer prejudice if the Court refused to apply the doctrine. Defendant is fully aware of the critical nature of the issue of its intent to the damages phase of this proceeding. In fact, Defendant has moved for partial summary judgment based on its belief that Plaintiff's recovery hinges on Plaintiff's ability to show Defendant's bad faith.

*de Venustas v. Venustas Intern., LLC*, Slip Copy, 2008 WL 619028 at *3 (S.D.N.Y.)

Thus, in a ruling that seemingly eviscerated Defendant's basis for bringing its summary judgment motion, this Court made it clear that its prior application of one of the *Polaroid* factors during the injunctive relief stage of this litigation would not be given preclusive effect during the damages phase of the litigation.

As discussed more fully below, the discovery obtained by the Plaintiff from Mr. Silk suggests that the Defendant either intentionally infringed upon Plaintiff's trademark or recklessly disregarded whether the name that it chose would infringe on a third party's trademark. Following Mr. Silk's deposition, this Court granted the request made by Defendant's new counsel to withdraw the motion for summary judgment and to re-file a new motion on the same issues.

After the new motion was filed, the parties conferred briefly on whether the issues presented in the motion could be resolved. As explained in the accompanying Declaration of Joseph M. Heppt, sworn to on June 13, 2008 (the "Heppt Declaration"), he explained to Defendant's new counsel that, in his view, the motion should be withdrawn on the grounds that (a) in light of the Court's ruling on the motion for a protective order, the Court's prior ruling on "good faith" as part of the *Polaroid* factors could not be relied upon to establish good faith for purposes of the damages phase; and (b) while the Defendant contests Mr. Silk's sworn testimony, that testimony at the very least presents a credibility issue and a question of material fact that would preclude summary judgment in favor of the Defendant. Defendant's counsel disagreed and chose to pursue the motion continuing to rely, in part, on this Court's prior ruling that Defendant had acted in good faith. Defendant Venustas International, LLC's Memorandum of Law In Support Of Its Motion For Partial Summary Judgment ("Defendant's Brief") at p.1.

## II.    **Statement of Facts**

Allen Silk a partner with the law firm Stark & Stark, testified under oath in this case that he was retained by the Defendant simply to form a limited liability company in

New Jersey. Silk Tr. 11:9-12.[1]  He was not retained to clear the name for trademark purposes. Silk Tr. 13:7-11. He further testified that he discussed with Sam Ghusson, Defendant's President and Chief Executive Officer, the need to do a trademark search on the name of Defendant's new business on at least two occasions. The first time Mr. Silk discussed it with Ghusson was when Mr. Silk was retained to form the entity. Mr. Silk testified that Ghusson told him at that time, "We're just forming an entity. We don't know what we're going to do with it yet. Let's just wait and see." Silk Tr. 18: 11 – 20:5.

Mr. Silk was certain that he had discussed the advisability of conducting a trademark search with Ghusson regarding Venustas International, LLC.  He gave the following testimony:

> Q:    Okay. Is there any doubt in your mind sitting here today that you discussed the advisability of conducting a trademark search with Mr. Ghusson regarding Venustas International, LLC?
>
> A:    No.

Silk Tr. 79:18-22.

Mr. Silk testified that he later revisited the need for a trademark search with Ghusson when he provided Ghusson with an estimate for doing the trademark search and that the estimate was that the work would cost between $2,913 and $3,413. Silk Tr. 23:19 – 25:14. A copy of the estimate is attached to the Heppt Declaration as Exhibit B. Mr. Silk testified that because the trademark estimate was approximately double the cost of forming the entity and because the Defendant was still in the initial stages of setting up their business, negotiating a contract and didn't yet have a deal done, Ghusson told Mr. Silk that he would "get back to him." However, Ghusson never did get back to him. Silk Tr. 25:15-24. Mr. Silk testified under oath that he never received authorization from the client to do the trademark clearing work. Silk Tr. 25:25 – 26:2.

---

[1]      A complete copy of the transcript of the deposition of Allen Silk is attached to the Declaration of Joseph M. Heppt, Esq., sworn to on June 13, 2008 (the "Heppt Declaration") as Exhibit A.

Mr. Silk was certain that he had discussed the estimate with Ghusson.  He gave the following testimony:

> Q:    Is there any doubt in your mind that you discussed the quote that Miss Gibson prepared for doing a trademark search with Mr. Ghusson?
>
> A:    No. Because after I saw that, I recalled that.
>
> Q:    And he never authorized you to perform that work?
>
> A:    No.

Silk Tr. 80: 16-22.

Mr. Silk testified that the reference to trademark work on the $1,560.00 invoice presented to the client was a mistake because the trademark work, which was estimated to cost between $2,913 and $3,413, was never done. Silk Tr. 42:10 – 45:2.  A copy of the invoice is attached to the Heppt Declaration as Exhibit C.

It is undisputed that Ghusson is a sophisticated businessman. Furthermore, Ghusson has testified in this case that he has had experience in dealing with trademark issues and dealing with lawyers on trademark issues during his long career in the beauty industry. Ghusson Tr. 8:7 – 9:1.[2]

On April 16, 2007, Plaintiff, through its attorneys, sent a letter to Defendant's 405 Lexington Avenue, New York address, demanding that it cease its infringement, unfair competition and dilution of Plaintiff's well-known AEDES DE VENUSTAS name and mark. A copy of this letter is attached to the Heppt Declaration at Exhibit E.  The Defendant refused to cease its infringing conduct. Instead, by its own admission, it did not cease its infringing conduct until ordered to do so by this Court. Ghusson Declaration, sworn to on May 23, 2008, ¶13.

---

[2]        A copy of the portions of the Ghusson deposition transcript cited herein is attached to the Heppt Declaration as Exhibit D.

### III.     Summary Judgment Standard

It is well established that summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986) When considering a motion for summary judgment, the Court does not engage in fact-finding or weighing of credibility, but determines whether any material questions of fact are in dispute after resolving all ambiguities and drawing all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 147 L.Ed.2d 105, 120 S.Ct. 2097 (2000); *Anderson,* 477 U.S. at 250; *Carlton v. Mystic Transportation Inc.,* 202 F.3d 129, 133 (2d Cir.2000). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990).

#### A.      A Court May Not Assess Credibility On A Motion For Summary Judgment

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir.2007) (citing *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997)). However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably

support a jury's verdict for the non-moving party." *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315 (2d Cir.2006).

Here, I respectfully submit that the evidence presented establishes that the Defendant willfully infringed upon Plaintiff's registered trademark. At a minimum, the evidence requires a weighing of credibility and presents a genuine issue of material fact as to whether the Defendant willfully infringed upon the Plaintiff's trademark. Thus, Defendant's motion for summary judgment must be denied.

**IV.    Plaintiff is Seeking Defendant's Profits From the Infringing Conduct Plus Costs and Attorneys Fees**

Section 35 of the Lanham Act, 15 U.S.C. § 1117, governs monetary relief for federal claims of trademark infringement. Subsection (a) incorporates the classic common-law remedies for trademark infringement:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a). Plaintiff does not intend to seek its own damages, *i.e.,* "any damages sustained by the plaintiff," since, as is usual in trademark infringement cases, such damages are very difficult to prove. This leaves Defendant's profits, plus costs, the latter of which tend to be minimal. Thus, Plaintiff will in the main be seeking Defendant's profits from the infringing activities.

The issue before the Court, therefore, is whether the arguments advanced by Defendant are a basis to grant summary judgment on a claim for profits under § 1117(a). Plaintiff submits that Defendant's arguments fail.

**V.    Willfulness is no Longer a Requirement for an Award of Profits**

Prior to 1999, some Circuits, including the Second Circuit, adopted a *per se* requirement of willfulness before an accounting of an infringing defendants' profits would be awarded in a trademark case. The leading case in this Circuit was *George Basch Co. Inc. v. Blue Coral, Inc.,* 968 F.2d 1532 (2d Cir. 1992).

*George Basch* discussed both an award of plaintiff's damages and defendants' profits. As to the former, the Court held that a plaintiff must show either "actual consumer confusion or deception resulting from the violation" or "that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Id.,* 968 F.2d at 1537 (citations omitted). With respect to an award of an infringing defendant's profits, however, the Court held that a plaintiff must show willfulness, *i.e.,* that the "infringer acted with willful deception." *Id.* at 1540. Since Plaintiff here does not seek its own damages but only Defendant's profits, the first holding is of no consequence to the case; Plaintiff will accordingly focus only on the second holding.

Notably, the *George Basch* decision was not agreed with by all Circuits. *See Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 347-48 (5th Cir. 2002) (collecting positions of eight different Circuits indicating a split among the Circuits). Then, in 1999, Congress amended the statute several times. Most notably, Congress added a provision for the then newly enacted federal dilution statute codified in Section 43(c) of the Lanham Act, 15 U. S.C. § 1125(c). That new provision provides for monetary remedies for "a *willful* violation under section 1125(c) of this title." 15 U.S.C. § 11 l7(a)(emphasis added).

The deliberate use of the word "willful" for dilution remedies clearly indicates Congress's understanding that for the *other* listed statutory violations, there is no requirement to show willfulness for monetary relief. The plain language of the statute

indicates that willfulness is not a prerequisite to an award of profits except, of course, for dilution under Section 43(c). For that and other reasons, the Fifth Circuit in *Quick Technologies* rejected any absolute requirement of willfulness for an award of profits. *Quick Technologies,* 313 F.3d at 349 ("In accordance with our previous decisions, and in light of the plain language of § 1117(a). . . we decline to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits.") *See also id.* at 348 (decisions prior to 1999 amendments of "limited utility" in interpreting statute as it now reads.)

Two other Circuits, as well as three district courts (two from this Court) have agreed with the Fifth Circuit's decision. *Synergistic Intern., LLC v. Korman,* 470 F.3d 162 (4th Cir. 2006); *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d Cir. 2005); *Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.,* 409 F. Supp.2d 1131, 1136 (D.Minn. 2005); *Cartier v. Aaron Faber, Inc.*, 512 F. Supp.2d. 165 (S.D.N.Y. 2007); *Nike, Inc v. Top Brand Co., Ltd.,* 2005 WL 1654859 (S.D.N.Y. 2005). The Third Circuit's decision in *Banjo Buddies* is especially notable because it overturned the prior Third Circuit holding in *SecuraComm Consulting, Inc. v. Securacom, Inc.,* 166 F.3d 182, 190 (3d Cir.1999). *Securacomm* had adopted the willfulness requirement from *George Basch;* the *Banjo Buddies* decision held that such rule had been "superseded" by the 1999 Amendments. *See Banjo Buddies,* 399 F.3d at 171, 173-75.[3]

Judge Kimba Wood, in the *Nike* decision, wrote that although the *MasterCard* decision was predicated on the "presum[ption] that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language," in fact "there was no consistent judicial interpretation of

---

[3]    In addition to these cases rejecting the willfulness requirement, at least two district court decisions within this Circuit have expressly questioned the continuing viability of the Second Circuit precedent requiring a showing of willfulness as a predicate to recovery of profits in light of the 1999 amendment. *Koon Chun Hing Kee Soy & Sauce Factory Ltd. v. Star Mark Management, Inc.*, 2007 WL 74304, fn. 17 (E.D.N.Y. 2007); *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 2006 WL 2128785, fn. 2 (S.D.N.Y. 2006).

the statute across federal courts at the time of the 1999 amendment" and "thus, there was no clear judicial consensus for Congress to incorporate when it enacted the 1999 amendment." *Nike*, supra at *10 fn. 9. For this reason, Judge Wood held that, "Without reason to believe that Congress intended to preserve the Second Circuit rule that preceded the 1999 amendment, the plain language of the statute should govern." *Id*. at *10.

Plaintiff submits that the reasoning of Judge Wood and the other courts cited above is persuasive and should be adopted here. In short, the 1999 Amendments to Section 35(a) now make clear that, except for dilution claims, a showing of willfulness is not required for an award of an infringing defendant's profits. However, even if this Court should find that a showing of willfulness is still required, the evidence presented by the Plaintiff here is sufficient to defeat Defendant's motion for summary judgment.

## VI.    Defendant Willfully Infringed on Plaintiff's Registered Trademark When it Adopted the Name Venustas International

As the Defendant correctly notes in its moving papers, in the Second Circuit "The standard for willfulness is 'whether the defendant had knowledge that [its] conduct represented infringement or perhaps recklessly disregarded the possibility.'" Defendant's Brief, p.6 (quoting *Nike, Inc. v. Top Brand Co. Ltd*., 2005 WL 1654859 at *6 (S.D.N.Y. 2005). Contrary to the Defendant's assertion, however, the record in this case supports a finding that the Defendant willfully infringed upon Plaintiff's registered trademark or, at the very least, there is a question of material fact on that issue.

The evidence presented shows that the Defendant recklessly disregarded whether its adoption of the name Venustas International would infringe on a third party's trademark.  It is undisputed that both Mr. Ghusson and Ms. Burns are sophisticated businesspeople.[4]  Furthermore, Ghusson testified under oath that trademark issues were

---

[4]    It should be noted, however, that while in its Statement of Undisputed Facts the Defendant describes Mr. Ghusson as a "highly experienced beauty industry executive," in footnote 2 on page 5 of its moving brief, the Defendant describes Mr. Ghusson as "a client unsophisticated with the intricacies of trademark law."

an important issue in the beauty business and that he had experience dealing with attorneys on trademark issues during his career. Ghusson Tr. 8:7 – 9:1.

Mr. Silk's testimony paints a picture dramatically different than the one presented by the Defendant during the trial of the liability phase of this case. In stark contrast to the testimony of Ghusson that he relied on the advice of his lawyer when choosing the name Venustas International for his company, his attorney, Allen Silk a partner with the law firm Stark & Stark, testified under oath in this case that he was retained by the Defendant simply to form a limited liability company in New Jersey. Silk Tr. 11:9-12.  He further testified that he discussed with Ghusson the need to do a trademark search on the name of Defendant's new business on at least two occasions. The first time Mr. Silk discussed it with Ghusson was when Mr. Silk was retained to form the entity. Mr. Silk has testified that Ghusson told him at that time, "We're just forming an entity. We don't know what we're going to do with it yet. Let's just wait and see." Silk Tr. 18: 11 – 20:5.

However, once it was apparent that the newly formed company was going to do business, Mr. Silk has testified that he re-visited the need for the trademark search to be done and presented Ghusson with an estimate for doing the trademark search. That estimate was that the trademark search would cost between $2,913 and $3,413. Mr. Silk testified that he discussed the estimate with Ghusson and the need for the trademark search to be done. Silk Tr. 23:19 – 25:14. Because the trademark estimate was approximately double the cost of forming the entity and because the Defendant was still in the initial stages of setting up their business, negotiating a contract and didn't yet have a deal done, Mr. Silk testified that Ghusson told him that he would "get back to him." Ghusson, however, never did get back to him. Silk Tr. 25:15-24. Mr. Silk testified under oath that he never received authorization from the client to do the trademark clearing work. Silk Tr. 25:25 – 26:2.

In its moving papers, and during the trial of the liability phase of this case, the Defendant has emphasized the fact that Ghusson received an invoice from Mr. Silk that

indicated that the trademark search had been done. Defendant's Brief, p. 5; Trial Tr. 92:17-25.[5] However, Mr. Silk testified under oath that the invoice was inaccurate in that regard because the trademark search was never done, Silk Tr. 42:10 – 45:2. More importantly, Ghusson's reliance on the invoice to support his claim that he thought the trademark work had been done simply is not credible. The fact that Mr. Silk testified that he had discussed the estimate for the additional cost of doing the trademark search with Ghusson, the fact that Mr. Silk has testified that Ghusson told him that he would "get back to him" on whether to do the trademark work and the fact that Mr. Silk testified that he was never authorized to do the additional work indicates that Ghusson's reliance on the invoice is dubious at best.  Finally, and perhaps most significantly, the invoice, which included the formation of the entity, on its face was for $1,560.00 <u>a mere fraction of the $2,913 to $3,413 estimate for doing the trademark search alone</u>.  This should have alerted a sophisticated businessman like Ghusson, who has testified that he has had experience dealing with attorneys on trademark issues in the past, to the fact that the invoice was inaccurate. Instead, Mr. Silk's testimony provides evidence that Ghusson deliberately chose to turn a blind eye toward whether the name he had chosen for his company infringed on any trademarks. The evidence provided by Mr. Silk shows that Ghusson deliberately chose not to clear the name for trademark purposes in order to save some money.

The evidence presented on this motion shows that the Defendant willfully infringed upon Plaintiff's registered trademark At a minimum, the evidence presents a significant question of credibility and a genuine issue of material fact, both of which preclude the granting of summary judgment.

---

[5]        A copy of the portions of the trial transcript cited herein is attached to the Heppt Declaration as Exhibit F.

**VII.    Plaintiff is Entitled to an Accounting of Defendant's Profit Under the Equitable Factors Listed in *George Basch***

Application of the equitable factors identified in *George Basch* indicates that the award of Defendant's profits from its unlawful activity would be an equitable result.

(1)    The degree of certainty that the defendant benefited from the unlawful conduct.

Defendant argues that because the two clients that it obtained while using the infringing name were through referrals, the Defendant did not benefit from infringing upon the Plaintiff's mark.  This argument, however, ignores the fact that both parties to the action have acknowledged that industry insiders are important potential consumers of Plaintiff's business.  This Court, in its September 11, 2007 Opinion and Order when ruling on whether there was evidence of actual confusion recognized that fact and held:

> Plaintiff has produced uncontroverted evidence that its employees received phone calls from industry insiders confusing the Plaintiff with the Defendant, and that at least one merchant also did so. <u>Given both parties' admissions that knowledge of the availability of their consulting services spreads by word of mouth, industry insiders are important potential consumers for the Plaintiff's consulting business.</u>
>
> …
>
> <u>However, Plaintiff's credible evidence indicates that the people who called and were confused about which company they were calling were fashion and beauty field insiders, and thus are important potential sources of referrals for its consulting work. There is, accordingly, an implication of commercial injury.</u> This factor thus increases the likelihood of confusion, and counsels in favor of the Plaintiff.

*De Venustas v. Venustas Intern., LLC,* Slip Copy, 2007 WL 2597122 at *6 (S.D.N.Y.) (emphasis added).  Where, as here, there is evidence of actual confusion, "it is virtually certain that defendants benefited from their unlawful conduct." *See Adjusters International, Inc. v. Public Adjusters International, Inc.*, Not Reported in F. Supp. 1996 WL 492905 at *16 (N.D.N.Y.) (holding that based upon instances of actual consumer

confusion, it is "virtually certain that defendants benefitted from their unlawful conduct.") Thus, this factor supports an award of Defendant's profits.

      (2) <u>Availability and adequacy of other remedies</u>:

The injunctive relief granted by this Court is insufficient in light of the evidence of Defendant's willful conduct and bad faith and this factor supports an award of Defendant's profits.

      (3) <u>The role of a particular defendant in effectuating the infringement</u>:

The evidence shows that Defendant willfully infringed upon Plaintiff's registered trademark by recklessly disregarding both its lawyer's advice to conduct a trademark search as well as the risk that the name selected would infringe on a third party's mark. Evidence has been presented that supports a finding of bad faith.  Defendant responded to Plaintiff's cease and desist letter by refusing to cease its infringing conduct and continued its infringing conduct even after the present action was filed. Under these circumstances, a court would be justified in finding that Defendant acted in bad faith. *See International Star Class Yacht Racing Ass'n ("ISCYRA") v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996) (district court's failure, in analyzing bad faith evidence, to consider defendant's continued unlawful use of mark after plaintiff had filed trademark infringement suit constituted clear error). Here, by Defendant's own admission, it not only continued its unlawful use of Plaintiff's mark after the present action was filed, but waited until this Court ordered it to cease its unlawful activity. Ghusson Declaration, sworn to on May 23, 2008, ¶13.

Furthermore, as the *ISCYRA* court stated, "[C]ourts have found that an infringer who 'acts in reasonable reliance on the advice of counsel' generally cannot be said to have acted in bad faith. <u>Conversely, the *failure* to follow the advice of counsel given before the infringement must factor into an assessment of an infringer's bad faith.</u>" *Id*. at 754 (citations omitted) (emphasis added). Here, as set forth in more detail above, the Plaintiff has presented persuasive evidence that Defendant failed to follow Allen Silk's

advice and chose not to have a trademark search performed. Under these circumstances, a finding of bad faith would be wholly justified. Thus, this factor also supports and award of Defendant's profits.

The Defendant acknowledges that (4) <u>Plaintiff's laches</u>, and (5) <u>unclean hands</u> are not applicable to this case. Defendant's Brief, p. 10.

Contrary to Defendant's assertion, it is respectfully submitted that an application of the foregoing factors to the evidence presented supports Plaintiff's claim for an accounting of Defendant's profits.

**VIII.    <u>Conclusion</u>**

For all of the foregoing reasons, Defendant's motion for partial summary judgment should be denied in its entirety and this Court should grant such other and further relief that this Court may deem just and proper.

Dated: New York, New York
        June 13, 2008

Respectfully submitted,

THE LAW OFFICES OF
JOSEPH M. HEPPT

_____/s
Joseph M. Heppt, Esq. (JH-4974)
260 Madison Avenue, 21st Fl.
New York, NY 10016
(212) 973-0839

*Attorney for Plaintiff*
