UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Aedes De Venustas, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Venustas International, LLC,<br><br>Defendant. | 1:07-CV-04530-LTS-THK |

**DEFENDANT VENUSTAS INTERNATIONAL, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

David Francescani (DF 9701)
Kristen McCallion (KM 5593)
FISH & RICHARDSON P.C.
153 East 53rd Street, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

*Attorneys for Defendant*

BATALLURE BEAUTY, LLC (f/k/a VENUSTAS INTERNATIONAL, LLC)

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. BATALLURE ADOPTED AND USED THE VENUSTAS MARK IN GOOD FAITH .......... 1

A. The Law of the Second Circuit Evidences Batallure's Good Faith .......... 1

B. The Facts and Testimony Relied Upon by Plaintiff to Oppose This Motion Do Not Create Issues of Fact Material to Batallure's Good Faith .......... 2

C. The Undisputed Material Facts Evidence Batallure's Good Faith .......... 8

III. WILLFULNESS IS REQUIRED FOR AN AWARD OF PROFITS IN THE SECOND CIRCUIT .......... 9

IV. SUMMARY JUDGMENT IS APPROPRIATE AS THERE ARE NO ISSUES OF MATERIAL FACT REGARDING BATALLURE'S GOOD FAITH .......... 9

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page

CASES

*Essence Communications v. Singh Indus.*,
703 F.Supp. 261 (S.D.N.Y.1988) ....................7

*George Basch Co. v. Blue Coral, Inc.*,
968 F.2d 1532 (2d Cir. 1992)....................9, 10

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*,
80 F.3d 749 (2d Cir. 1996); remanded 146 F.3d 66 (2d Cir. 1998);
remanded 1999 WL 108739 (S.D.N.Y. 1999)....................7

*Johnson & Johnson Vision Care v. Ciba Vision Corp.*,
2006 U.S. Dist. LEXIS 51869 (S.D.N.Y. July 28, 2006)(Swain, J.)....................9

*Lon Tai Shing Co., Ltd. v. Koch+Lowy*,
1992 WL 18806 (S.D.N.Y. 1992)....................10

*Mushroom Makers, Inc. v. R.G. Barry Corp.*,
441 F. Supp. 1220 (S.D.N.Y. 1977),
*aff'd*, 580 F.2d 44 (2d. Cir. 1978), *cert denied*, 439 U.S. 1116 (1979) ....................7

*Nike Inc. v. Top Brand Co.*,
2005 U.S. Dist. LEXIS 42374 (S.D.N.Y. July 13, 2005) ....................9

*Parenting Unlimited Inc. v. Columbia Pictures Television Inc.*,
743 F.Supp. 221 (S.D.N.Y. 1990) ....................1, 2, 7

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*,
511 F. Supp. 486 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 563 (2d Cir. 1982) ....................10

*Polo Fashions, Inc. v. Extra Special Products, Inc.*,
208 U.S.P.Q. 421 (S.D.N.Y. 1980)....................10

*Savin Corp. v. Savin Group*,
391 F.3d 439 (2d Cir. 2004)....................1, 6

*Streetwise Maps, Inc. v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998) ....................6

*Sunenblick v. Harrell,* 895 F. Supp. 616, 633 (S.D.N.Y. 1995) *aff'd*, 101 F.3d 684 (2d Cir.), *cert. denied,* 519 U.S. 964 (1996) ....................7

*Triumph Hosiery Mills v. Triumph Int'l*, 308 F.2d 196 (2d Cir. 1962) ....................1

*U.S. Media Corp. v. Edde Entertainment Corp.*, 1998 WL 401532 ....................10

**STATUTES**

15 U.S.C. § 1117(a) ....................10

**OTHER AUTHORITIES**

3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:120, 23-370 (4th ed., 2008) ("McCarthy") ....................7

## I. INTRODUCTION

"The Second Circuit defines, "an 'innocent' or a bona fide junior user . . . [as] one . . . whose use is not attributable to intent to obtain a free ride on the reputation of the owner of the trade-mark." *Parenting Unlimited Inc. v. Columbia Pictures Television Inc.*, 743 F.Supp. 221, 229 (S.D.N.Y. 1990) (quoting *Triumph Hosiery Mills v. Triumph Int'l*, 308 F.2d 196, 199 (2d Cir. 1962)). As both Batallure's[1] Memorandum of Law in Support of Summary Judgment, and Plaintiff's Memorandum of Law In Opposition thereto ("Pl. Opp. Mem.") make clear, the undisputed material facts in this case reveal that Batallure adopted and used VENUSTAS with nothing other than innocent, good faith intentions.

As soon as it was ordered to cease use of the VENUSTAS mark, Batallure did so. Based on the evidence that has come to light through discovery, this litigation should have ended then. However, having no damages to claim from Batallure's use of the VENUSTAS mark (Pl. Opp. Mem. p. 10), Plaintiff insists on keeping this litigation alive by seeking Batallure's profits—a last ditch effort to collect a monetary award for Batallure's use of a mark that was adopted and used in good faith, and that did not harm Plaintiff in any way.

## II. BATALLURE ADOPTED AND USED THE VENUSTAS MARK IN GOOD FAITH

### A. The Law of the Second Circuit Evidences Batallure's Good Faith

In the Second Circuit, an analysis of good faith "considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product. *Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004). Accordingly, when assessing an alleged infringer's adoption and use of a mark, courts in this Circuit look for a specific intention of trading on the commercial success of a

[1] As noted in the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Batallure Beauty, LLC ("Batallure") was formerly known as Venustas International, LLC.

plaintiff's trademark and misappropriating the reputation and goodwill which has attached to the trademark. *See Parenting Unlimited, Inc.*, 743 F. Supp. at 229. There is no factual evidence in this litigation that would support a finding of willful trademark infringement by Batallure pursuant to Second Circuit standards—there is neither evidence of an intent to capitalize on Plaintiff's reputation or goodwill, nor evidence of an intent to create confusion between the Plaintiff and Batallure. Indeed, Plaintiff does not even allege there was any such intent. Instead, Plaintiff relies on irrelevant facts and unsubstantiated testimony to make the conclusory allegation that Batallure "recklessly disregarded whether its adoption of the name Venustas International would infringe on a third party's trademark."[2] Pl. Opp. Mem. p. 13. Nothing could be farther from the truth. As discussed herein, the facts and testimony relied upon by Plaintiff, true or not, fail to raise genuine, material, issues with respect to Batallure's good faith adoption and use of the VENUSTAS mark.

### B. The Facts and Testimony Relied Upon by Plaintiff to Oppose This Motion Do Not Create Issues of Fact Material to Batallure's Good Faith

Plaintiff's Opposition Memo relies principally on the deposition testimony of Mr. Allen Silk ("Silk testimony"). At first, Plaintiff claims merely that the Silk testimony "suggests", and later, that the Silk testimony "shows", that Batallure "willfully infringed" upon Plaintiff's trademark rights because Batallure "recklessly disregarded whether its adoption of" VENUSTAS "would infringe on a third party's trademark." Pl. Opp. Mem. pp. 6, 13.[3]

---

[2] This statement by Plaintiff, used repeatedly throughout its Memo, is baseless, and nothing more than an unsubstantiated allegation. First, there is simply no evidence of "reckless disregard" by Batallure in this case. Second, a finding of willful trademark infringement requires a finding that Batallure intended to capitalize on Plaintiff's reputation or goodwill, not some "third party's trademark" of which Batallure had no knowledge. There is no evidence in this case that Batallure knew of Plaintiff or its mark, or intended to deceive consumers into believing it was Plaintiff. In the current context, where Batallure's Robin Burns is renowned and prominent in her field, such an assertion lacks common sense.

[3] Plaintiff asserts that Batallure improperly relies upon the Court's application of the good faith factor in its *Polaroid* analysis as support for its motion. Pl. Opp. Mem. pp. 5, 6. On the contrary, Batallure relies *not* on the

Plaintiff's repeated reliance on the Silk testimony does nothing to support such a conclusory allegation. At most, the Silk testimony evidences that there are discrepancies with respect to recollections of past events; however, such discrepancies do not constitute genuine issues of fact that are material to Batallure's good faith adoption and use of the mark.[4]

Plaintiff primarily relies on three points as support for its assumption that Batallure recklessly disregarded whether its actions would result in infringement: (i) "Mr. Ghusson and Ms. Burns are sophisticated business people"; (ii) Mr. Ghusson testified that he had prior dealings with trademark attorneys during the course of his career; and (iii) unsubstantiated statements from the Silk testimony that Plaintiff contends create issues of material fact regarding Batallure's good faith. Pl. Opp. Mem. pp. 13-15. None of these points amount to or support a finding of willful intent or reckless disregard. We discuss them in turn.

(i) <u>Mr. Ghusson's and Ms. Burns' sophistication as business people in the field of fragrance product development does not make Batallure a willful infringer or create a material issue of fact</u>. Mr. Ghusson's and Ms. Burns' sophistication in fragrance product development, does not make them experienced in trademark law issues, despite Plaintiff's contention to the contrary. During his deposition, Mr. Ghusson made clear that trademark issues are considered important in fragrance "product name" development, not in fragrance "product development", the latter of which is Mr. Ghusson's forte and the business of Batallure. Heppt Dec., Ex. D (Ghusson Tr. 8:7-9:1). In any event, Mr. Ghusson's and Ms. Burns' prior experience in developing fragrances does not support Plaintiff's claims of willfulness and reckless disregard. What Mr. Ghusson's and Ms. Burns' sophistication and prior experience in developing

court's initial finding, *but rather*, on (i) the law of this Circuit, and (ii) the evidence discovered thus far in this litigation that supports a finding of Batallure's good faith.

[4] Plaintiff contends that "credibility assessments, choices between conflicting versions of the events" prevent this motion from succeeding. Pl. Opp. Mem. p. 9. However, Mr. Silk's credibility, or lack thereof, does not require an assessment by the Court, because it fails to create issues of fact that are material to this motion—the portions of the Silk testimony relied upon by Plaintiff simply do not undermine Batallure's good faith.

fragrances does evidence, is the illogicality of the claim that Batallure would risk not capitalizing on Ms. Burns' renown. As discussed in Batallure's prior Memo, Ms. Burns is highly regarded and respected in her industry.

(ii) Mr. Ghusson's prior, un-described dealings with trademark attorneys does not make Batallure a willful infringer or create a material issue of fact. When testifying about the extent of his involvement with trademark issues during the course of his career, Mr. Ghusson stated that he did not "personally" deal with trademark issues, rather, his "team did", but that he has worked with attorneys... on trademark issues "from time to time". Heppt Decl., Ex. D (Ghusson Tr: 8:19-22.). Mr. Ghusson's testimony fails to portray him as an individual well versed in trademark law issues (as Plaintiff now attempts to portray him (Pl. Opp. Mem. p. 8.)), and in no way supports Plaintiff's claims of willfulness and reckless disregard.

(iii) The Silk testimony regarding trademark work, true or not, does not make Batallure a willful infringer or create material issues of fact. Mr. Silk testified that he was retained only to conduct corporate legal work, that he spoke to Mr. Ghusson about trademark work and the costs for doing such work, that the estimate to conduct a trademark search was costly, and that Mr. Ghusson never authorized Silk to proceed with trademark work. Pl. Opp. Mem. pp. 7-8.

The Silk testimony reveals that Silk was initially unsure when he spoke to Batallure of trademark work –"I believe Sam [Ghusson] and I had that discussion probably early on... I don't recall the exact time of having an initial discussion." Silk Tr. 19:5-9 (emphasis added). Silk testified that he may have had a second conversation with Batallure about trademark work, however, this is when Silk allegedly "discussed" a trademark search estimate with Battalure (Silk Tr. 19:509) – the Silk testimony regarding that conversation is discussed in more detail herein.

Further, while Silk's paralegal prepared a trademark estimate (Heppt Decl. Ex. B; McCallion Decl., dated May 25, 2008, Ex. J) there is no evidence that this estimate was conveyed to Batallure. Nevertheless, Plaintiff points to the Silk testimony several times for the proposition that Mr. Silk "provided" Batallure with an estimate for the trademark search work, which estimated the cost of such work between $2,912 and $3,413. Pl. Opp. Mem. p. 7. *However*, Silk testified that he "believed" he discussed "approximations" of the trademark search estimate with Mr. Ghusson. (Silk Tr. 23:19-24:17); that he "believe[d]" it was during a telephone call but that he was "not sure" who participated on that call (Silk Tr. 23:23-24:7); and that he "probably gave [Ghusson] a range of numbers..." (Silk Tr. 24:8).

From the Silk testimony, the following is apparent: Silk's testimony evidences uncertainty about what was discussed with Mr. Ghusson; Silk neither sent nor "provided" the trademark estimate that had been prepared by his paralegal to Batallure; and there is no documentary evidence that a conversation occurred regarding trademark work or the estimate was forwarded or "provided" to Batallure. Only later, during the same deposition, when prompted on rebuttal, does Silk respond with more certainty to questions regarding his alleged discussions of trademark search work with Mr. Ghusson. Despite this, Plaintiff relies on the Silk testimony, not only to allege that Batallure "turned a blind eye toward whether the name [Batallure] had chosen... infringed on any trademarks" but *also* to claim that Batallure is at fault and "not credible", because it erroneously relied upon an invoice from its attorney that invoiced Batallure for trademark search work, but which charged only a "mere fraction" of that estimated for the trademark search work. Pl. Opp. Mem. p. 15. Plaintiff's assumptions and accusations in this regard are unfounded. As noted above, there is no evidence that reveals what amounts (if any), other than "approximations" for trademark search work may have been discussed with

Batallure, and there is no evidence that the actual estimate was ever sent or "provided" to Mr. Ghusson. Nevertheless, Plaintiff asserts that Batallure is not credible because it relied on an invoice provided by its attorney. Despite all of the attention devoted to this topic by Plaintiff, it is important to note that it is irrelevant whether Silk provided an estimate for trademark work to Batallure because, whether such an estimate was provided or not, or whether "approximations" were discussed or not, this does not create an issue of fact material to Batallure's good faith adoption and use of the VENUSTAS mark.

Further, Plaintiff alleges that the Silk testimony provides that Mr. Ghusson decided not to proceed with trademark search work because "the trademark estimate was approximately double the cost of forming an entity…" Def. Opp. p. 7. This mischaracterizes the Silk testimony.[5] At no time was it stated by *anyone* deposed in connection with this litigation that Batallure "deliberately chose not to clear the name for trademark purposes in order to save some money." Pl. Opp. Mem. p. 15. Conclusory allegations cannot constitute evidence.

Lastly, Plaintiff's reliance on the Silk testimony, in support of the conclusion that Silk's firm never conducted a trademark search for Batallure, is irrelevant. In the Second Circuit, failure to conduct a trademark search does not prove that Batallure acted in bad faith. *Savin Corp.*, 391 F.3d at 439 (no infringement found by defendant who failed to conduct search) (*citing Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746 (2d Cir. 1998).).

Despite all of its uncertainties, inaccuracies, and unsubstantiated statements regarding facts immaterial to Batallure's good faith, the Silk testimony is relied upon by Plaintiff for support of its principal allegation: that Batallure is a willful trademark infringer that recklessly disregarded its attorney's advice and risked infringement. The Silk testimony neither indicates

[5] It is clear from Silk's testimony that the statements made by Silk were his interpretation of what happened ("I mean we were spending more than double what we spent to form it…" (Silk Tr. 25:18-19.)) – not a reiteration of what Mr. Ghusson stated to Silk.

that Batallure acted with reckless disregard, nor creates issues of material fact that question whether Batallure may have acted with reckless disregard. Even if all of Silk's testimony was accurate, it still would not add up to a finding of reckless disregard by Batallure.

Lastly, Plaintiff contends that Batallure's continued use of the VENUSTAS mark after receipt of Plaintiff's cease and desist letter evidences Batallure's bad faith. The argument that a defendant's continued use of a mark subsequent to receiving a cease and desist letter indicates bad faith has been deemed a "legal fiction" by the leading trademark scholar. *See* 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:120, 23-370 (4th ed., 2008) ("McCarthy"). "[A]fter a warning from plaintiff, defendant's attempt in good faith to obtain a judicial determination of trademark rights should be no indication of evil intent or bad faith." *Id.* (*citing Mushroom Makers, Inc. v. R.G. Barry Corp.*, 441 F. Supp. 1220 (S.D.N.Y. 1977), *aff'd*, 580 F.2d 44 (2d. Cir. 1978), *cert denied*, 439 U.S. 1116 (1979)); *see also*, *Parenting Unlimited, Inc.*, 743 F. Supp. at 229 (citing *Essence Communications v. Singh Indus.*, 703 F.Supp. 261, 269 (S.D.N.Y.1988) ("[D]efendants' continued use of the mark after learning of plaintiff's prior registration in the magazine field and in the face of plaintiff's vehement protests is not evidence of bad faith. A defendant's mere knowledge of a potential problem with its mark does not necessarily connote bad faith.").[6] Accordingly, this fact is irrelevant to Batallure's good faith use of the VENUSTAS mark.

[6] Plaintiff's reliance on *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996) in clearly misplaced. *See Int'l Star Class Yacht Racing Ass'n.*, 80 F.3d at 749 ("In order to recover an accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith"), after first remand, 146 F.3d 66 (2d Cir. 1998) (error to take judicial notice from an unrelated case of prevailing trademark search procedures in 1993), on second remand, 1999 WL 108739 (S.D.N.Y. 1999) (evidence found insufficient to support a finding of bad faith infringement) ("failure to conduct a trademark search does not, in itself, support finding of bad faith" (*citing Sunenblick v. Harrell*, 895 F. Supp. 616, 633 (S.D.N.Y. 1995) *aff'd*, 101 F.3d 684 (2d Cir.), *cert. denied*, 519 U.S. 964 (1996).).

### C. The Undisputed Material Facts Evidence Batallure's Good Faith

The Undisputed Material Facts in this litigation, as set forth and agreed upon by Batallure and Plaintiff in their respective Rule 56.1 Statements, evidence Batallure's good faith adoption and use of the VENUSTAS mark; they are as follows:

> Around the early Spring of 2006, Sam Ghusson of Batallure asked his assistant at Victoria Secret Beauty, Mina Coccia, to provide him with a list of proposed names that she thought would be good trade names for a company in the beauty industry. Coccia provided Ghusson with a list of names that meant "beauty" in different languages. One of the proposed names on Coccia's list was "Venustas", which Ghusson believed meant "beauty, elegance, [and/or] loveliness" in Latin; other proposed names were "Bella" and "Amore". Robin Burns of Batallure thought up a few proposed names of her own, in addition to those on Coccia's list, for example, "The Pulse" and "Opus". Batallure asked their attorney at that time, Mr. Allen Silk to advise them on the availability of several proposed names, including "The Pulse" and "Venustas International". While waiting for Mr. Silk's legal opinion regarding proposed name availability, Ghusson and Burns formed "RBSG Enterprises, LLC" (the letters comprise each of their initials). An estimate or "quote" of the costs of a trademark search was prepared by Mr. Silk's paralegal, and an invoice stating that the amount owed to Mr. Silk's law firm, as a result of, among other things, "trademark search for name availability" was sent by Mr. Silk's firm to Batallure. Subsequent to being informed by Silk that it could use the name Venustas International, Batallure confirmed its decision to adopt it. Stark & Stark prepared and filed a Certificate of Amendment changing the name of the company to Venustas International, LLC. Ghusson and Burns were engaged by clients through personal relationships, i.e., through people whom they knew and/or knew of either Ms. Burns or Mr. Ghusson. One of these relationships was with an executive of Ann Taylor, who issued a press release touting its new relationship with Ms. Burns. At no point did Batallure produce any type of promotional material to solicit new business, or advertise its services using the VENUSTAS mark to seek clients. Lastly, as soon as ordered to do so by the Court, Venustas International changed its name to Batallure Beauty LLC and presently does business under that name only.[7]

These undisputed material facts lead to the conclusion that Batallure adopted and used the VENUSTAS name in good faith. They make clear that Batallure sought the advice of an attorney regarding several proposed marks it thought about adopting, and only picked

---

[7] *See* Batallure's Statement of Undisputed Material Facts, and Plaintiff's Response thereto Nos. 3 – 5; 8 -13; 14-17; 19-23. Plaintiff disputes the facts set forth in SOUMF No. 6 While the timing of the selection of proposed names is totally irrelevant to Batallure's good faith, a review of the Stark & Stark attorney time entry record (annexed as Ex. D to the McCallion Decl.), evidences that Mr. Silk was searching the availability of names for Batallure in January and February of 2006.

VENUSTAS from a list of several proposed words meaning beauty, after it had corresponded with counsel on the matter. Further, it is evident that at no time did Batallure have knowledge of Plaintiff, or Plaintiff's use of VENUSTAS as a mark—indeed, Plaintiff does not even allege that Batallure had any such knowledge, or otherwise set forth allegations that would support an argument that Batallure intended to capitalize on Plaintiff's reputation or goodwill, or for that matter, engaged in acts that amount to reckless disregard. *See*, Plaintiff's Statement of Additional Undisputed Facts, Nos. 1-16.

## III. WILLFULNESS IS REQUIRED FOR AN AWARD OF PROFITS IN THE SECOND CIRCUIT

Plaintiff requests this Court to adopt the reasoning of Judge Wood in *Nike Inc. v. Top Brand Co.*, 2005 U.S. Dist. LEXIS 42374 (S.D.N.Y. July 13, 2005), however, this Court has already declined to do so – "Second Circuit case law holds that, before a plaintiff can receive an accounting of a defendant's profits on this basis, the plaintiff must show willful conduct or bad faith on the part of the defendant in connection with the Lanham Act violation as well as "a general right to damages." *Johnson & Johnson Vision Care v. Ciba Vision Corp.*, 2006 U.S. Dist. LEXIS 51869 at *11 (S.D.N.Y. July 28, 2006)(Swain, J.) (*citing George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539-40 (2d Cir. 1992). Plaintiff appears to concede that *Basch*, rather than *Nike* is the precedential authority on this motion, when it conducts its own analysis of *Basch's* equitable factors. Pl. Opp. Mem. pp 16, 17.[8]

## IV. SUMMARY JUDGMENT IS APPROPRIATE AS THERE ARE NO ISSUES OF MATERIAL FACT REGARDING BATALLURE'S GOOD FAITH

The party moving for summary judgment, here, Batallure, bears the burden of establishing the absence of any genuine issue of material fact. Batallure has met its burden in

[8] We do not analyze the *Basch* factors again herein. As Batallure stated previously, even if this Court were to determine that a finding of willful deceptiveness is no longer an absolute prerequisite for an accounting and award of profits, the application of the undisputed material facts to the *Basch* factors establishes that, as a matter of law, Plaintiff is not entitled to recover Batallure's profits.

this regard. Neither the facts or allegations, nor the unsubstantiated testimony used by Plaintiff, conjures up alleged issues of material fact relating to Batallure's good faith that are relevant or material to this motion. Rather, all of the relevant, undisputed, material facts discovered in this litigation illustrate Batallure's good faith. As the Second Circuit requires a finding of willfulness to award a trademark infringement plaintiff an accounting and disgorgement of a defendant's profits (*George Basch,* 968 F.2d 1532 (2d Cir. 1992), no profit award is appropriate in this case.

Similarly, Plaintiff is not entitled to an award of costs or attorney's fees. While Plaintiff states that it is seeking an award of costs and attorney's fees, it provides no justification or legal support for such a request. Section 35 of the Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a)(emphasis added). Accordingly, in this Circuit, attorney's fees are awarded only in such exceptional cases as those evidencing bad faith or malicious intent. [9]

## V. CONCLUSION

Willful deceptiveness is a requirement for an award of an infringer's profits. Since Batallure is an innocent infringer, Plaintiff's pursuit of Batallure's profits is improper.[10] Accordingly, Batallure's motion for summary judgment—denying an award of profits, costs and attorney's fees to Plaintiff on the basis of *all* claims plead in this litigation—should be granted.

[9] *See, Polo Fashions, Inc. v. Extra Special Products, Inc.*, 208 U.S.P.Q. 421 (S.D.N.Y. 1980) ($30,000 awarded in case of malicious infringement); *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 511 F. Supp. 486 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 563 (2d Cir. 1982) (portion of fees awarded as are attributable to certain acts of defendant which were "exceptional" infringement), *U.S. Media Corp. v. Edde Entertainment Corp.*, 1998 WL 401532 at * 28 (S.D.N.Y. 1998) (lack of "persuasive" indication that defendant intended to deceive purchasers, or sought an unfair commercial advantage, made case not "exceptional for purposes of a fee award under the Lanham Act"), *Lon Tai Shing Co., Ltd. v. Koch+Lowy*, 1992 WL 18806 at *5 (S.D.N.Y. 1992) ("Awarding costs, including attorney's fees, is only proper where there is a finding of deliberate, and willful infringement and callous and reckless disregard.").

[10] For the reasons explained herein, Plaintiff's request for costs and fees is also improper and should not be awarded by the Court.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: June 26, 2008

By: ______________________________

David R. Francescani (DF 9701)
Kristen McCallion (KM 5593)
FISH & RICHARDSON P.C.
153 East 53rd Street, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

Attorneys for Defendant
VENUSTAS INTERNATIONAL, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing DEFENDANT VENUSTAS INTERNATIONAL, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT was served on counsel for Plaintiff by electronic mail, on this 26th day of June, 2008.

Joseph M. Heppt, Esq.
Law Offices of Joseph M. Heppt
260 Madison Avenue
21st Floor
New York, New York 10016

jmheppt@hepptlaw.com

Lisa Ng

30426314.doc